**IN THE UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SALVATORE CHIMENTI, DANIEL** | : | |
| **LEYVA, DAVID MALDONADO, and all** | : | |
| **others similarly situated,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| | : | |
| **PENNSYLVANIA DEPARTMENT** | : | **Civil No.** |
| **CORRECTIONS (DOC); JOHN** | : | |
| **WETZEL, Secretary of the (DOC);** | : | |
| **PAUL NOEL, Chief Medical Director,** | : | |
| **Pennsylvania DOC; CHRISTOPHER** | : | |
| **OPPMAN, Director, Bureau of Health** | : | |
| **Care Services, DOC; DR. KEPHART,** | : | |
| **Medical Director at SCI Smithfield, DOC;** | : | |
| **WILLIAM DREIBELBIS, Correctional** | : | |
| **Health Care Administrator, SCI** | : | |
| **Smithfield, DOC; DR. WEINER,** | : | |
| **Medical Director, SCI Graterford;** | : | |
| **JOSEPH C. KORSZNIAK, Correctional** | : | |
| **Health Care Administrator,** | : | |
| **SCI Graterford; CORRECT CARE** | : | |
| **SOLUTIONS (CCS); DR. NICHOLAS** | : | |
| **SCHARFF, Medical Director, CCS;** | : | |
| **ANDREW DANCHA, Regional Medical** | : | |
| **Director, CCS; DR. JOHN HOCHBERG,** | : | |
| **Assistant Medical Director, CCS;** | : | |
| **WEXFORD HEALTH SOURCES, INC.;** | : | |
| **DR. THOMAS LEHMAN, Medical** | : | |
| **Director, Wexford Health Source, Inc.** | : | |
| | | |
| **Defendants.** | | |

**CLASS ACTION COMPLAINT**

**INTRODUCTION**

1.      The Pennsylvania Department of Corrections (DOC), by policy and practice,

systemically denies necessary medical care for inmates diagnosed with Hepatitis C viral

infections, thereby placing them at substantial and unnecessary risk for severe illness, injury and death.  Plaintiffs bring this action on behalf of themselves and a class of similarly-situated plaintiffs, pursuant to 42 U.S.C. § 1983 and state laws against the DOC, prison officials, and medical providers for depriving them of their rights guaranteed by the Eighth Amendment of the United States Constitution and Article I, § 13 of the Pennsylvania Constitution.

2.      Plaintiffs Salvatore Chimenti, Daniel Leyva, and David Maldonado are incarcerated in the Pennsylvania Department of Corrections with serious health complications stemming from their Hepatitis C viral infection.  The DOC and other Defendants have refused to provide medical treatment to Plaintiffs and others incarcerated in the DOC with Hepatitis C infections that is consistent with current and prevailing medical standards, as reflected in recommendations from the Center for Disease Control and Prevention (CDC) and public and private medical providers including the Federal Bureau of Prisons (BOP).  As a result, the DOC and other Defendants have denied Plaintiffs and others similarly situated access to necessary and proper medical care in violation of the Eighth Amendment and state law.

**JURISDICTION AND VENUE**

3.      Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and the Eighth Amendment of the United States Constitution, and 28 U.S.C. §§ 1331 and 1343.  The Court has supplemental jurisdiction under 28 U.S.C 1367(a) to adjudicate the Pennsylvania state law and constitutional claims.

4.      Venue is appropriate in this district pursuant to 28 U.S.C. 1391(g) since substantial events at issue in this litigation occurred in the Eastern District of Pennsylvania.

2

## PARTIES

5.      Plaintiff Salvatore Chimenti is an adult individual currently incarcerated at the Pennsylvania State Correctional Institution at Smithfield (SCI Smithfield).  Mr. Chimenti sues for injunctive and declaratory relief on behalf of himself and on behalf of a class of plaintiffs who are currently or will in the future be subject to Defendant DOC's discriminatory and unconstitutional policy for treating Hepatitis C infections.

6.      Plaintiff Daniel Leyva is an adult individual currently incarcerated at the State Correctional Institution at Retreat (SCI Retreat).  He sues for injunctive and declaratory relief on behalf of himself and on behalf of a class of plaintiffs who are currently or will in the future be subject to Defendant DOC's discriminatory and unconstitutional policy for treating Hepatitis C infections.

7.      Plaintiff David Maldonado is an adult individual currently incarcerated at the State Correctional Institution at Graterford (SCI Graterford).  He sues for injunctive and declaratory relief on behalf of himself and on behalf of a class of plaintiffs who are currently or will in the future be subject to Defendant DOC's discriminatory and unconstitutional policy for treating Hepatitis C infections.

8.      Defendant Pennsylvania Department of Corrections (DOC) is an agency of the Commonwealth of Pennsylvania that operates SCI Smithfield, SCI Retreat, and SCI Graterford, among other correctional institutions.  The principal office for the DOC is located in Mechanicsburg, Pennsylvania.  The DOC is responsible for providing adequate medical health services to and creating policies that ensure appropriate medical treatment to Plaintiffs and those similarly situated.

9.      Defendant John Wetzel is the Secretary of the DOC. He is responsible for all the oversight, operation, and administration of the Commonwealth's correctional system, including providing appropriate medical treatment and the formulation of policies that ensure the provision of that treatment to Plaintiffs and those similarly situated. He is sued in his official and individual capacities. At all relevant times, Defendant Wetzel has acted and will continue to act under color of state law.

10.     On information and belief, Defendant Paul Noel is the Chief Medical Director of the DOC and has responsibility in overseeing the delivery of medical services in the DOC. Defendant Noel is sued in his individual and official capacities.  He has acted and will continue to act under color of state law.

11.     Defendant Christopher H. Oppman is the Director of the Bureau of Health Care Service of the DOC.  The Bureau of Health Care Services is responsible for supervising and monitoring the delivery of all medical and dental care services throughout the state correctional system, which must be provided at a level consistent with community standards.  Defendant Oppman is sued in his individual and official capacities.  At all relevant times, he has acted and will continue to act under color of state law.

12.     Defendant Kephart is the Medical Director at SCI Smithfield and is responsible for providing health care to inmates there, and an employee of Correct Care Solutions and/or Wexford Health. He is sued in his official and individual capacities. At all relevant times, Defendant Kephart has acted and will continue to act under color of state law.

13.     Defendant William Dreibelbis is a Correctional Health Care Administrator (CHCA) at SCI Smithfield, and an employee of the Department of Corrections. As CHCA, he is responsible for the oversight of health care at SCI Smithfield. Defendant Dreibelbis is sued in his

official and individual capacities. At all relevant times, he has acted and will continue to act under color of state law.

14.     Defendant Dr. Weiner is the Medical Director at SCI Graterford and is responsible for providing health care to inmates there and an employee of Correct Care Solutions and/or Wexford Health. He is sued in his official and individual capacities. At all relevant times, Defendant Weiner has acted and will continue to act under color of state law.

15.     Defendant Joseph C. Korszniak is a Correctional Health Care Administrator (CHCA) at SCI Graterford and an employee of the Department of Corrections. As CHCA, he is responsible for the oversight of health care at SCI Graterford. Defendant Korszniak is sued in his official and individual capacities. At all relevant times, he has acted and will continue to act under color of state law.

16.     Defendant Correct Care Solutions is the current health care provider for all DOC facilities.  The principal office for Correct Care Solutions is in Nashville, Tennessee, and, on information and belief, maintains an office in Pennsylvania.  Correct Care Solutions began providing health care services to the Pennsylvania DOC on September 1, 2014.  At all relevant time, Correct Care Solutions has acted and will act under the color of state law.

17.     On information and belief, Dr. Nicholas Scharff is the Medical Director for Correct Care Solutions in Pennsylvania, and in that capacity is responsible for providing adequate medical care of Plaintiffs and those similarly situated. Defendant Scharff is sued in his individual and official capacity, and at all relevant times has acted and will continue to act under color of state law.

18.     On information and belief, Defendant Andrew Dancha is the Regional Medical Director for Correct Care Solutions, and is responsible for overseeing the delivery of medical

5

services in DOC through Correct Care Solution's Central Region, including SCI Smithfield. Defendant Dancha is sued in his individual and official capacities, and at all relevant times has acted and will continue to act under color of state law.

19.     On information and belief, Defendant John Hochberg is the Assistant Medical Director for Correct Care Solutions' Regional Office, and is responsible for overseeing the delivery of medical services in DOC through Correct Care Solution's Central Region, including SCI Smithfield.  Defendant Hochberg is sued in his individual and official capacities, and at all relevant times has acted and will continue to act under color of state law.

20.     Defendant Wexford Health Sources Inc. was the previous health care provider for all DOC facilities.  The principal office for Wexford Health Sources is in Pittsburgh, Pennsylvania.  At all relevant time, Defendant Wexford Health Sources has acted and will act under the color of state law.

21.     Upon information and belief, Dr. Thomas Lehman was the Medical Director of Wexford Health Source.  He is sued in his individual capacity.  At all relevant time, Defendant Lehman has acted and will act under the color of state law.

**FACTS**

**The Hepatitis C Epidemic**

22.     Hepatitis C is a viral infection, primarily spread through contact with infected blood that attacks the liver and causes hepatitis, or liver inflammation, which can significantly impair the liver's ability to assist the body in digesting essential nutrients, filter toxins from the blood, and prevent disease.

23.     Hepatitis C infections are of multiple genotypes and can be of an acute or chronic nature.  An acute infection, a short-term illness, occurs within the first six (6) months of exposure to the virus and, for many people, it leads to chronic Hepatitis C infection.

24.     Chronic Hepatitis C infections are serious, long-term illnesses that can last throughout a person's life. Hepatitis C is the leading cause of cirrhosis (irreversible scarring of liver tissue) and liver cancer and is the most common cause of liver transplants. Chronic Hepatitis C infection can also cause serious chronic liver disease, liver fibrosis (scarring of liver tissue), and death.

25.     Cirrhosis of the liver can cause symptoms such as swelling, increased likelihood of bruising, jaundice, itching, nausea, and problems with concentration and memory.

26.     Hepatitis C infections occur upon transmission of blood from a person infected with Hepatitis C to another person. The major means of transmission are the sharing of equipment for injecting drugs; tattooing or piercing; through needle-stick injuries; being born to a mother with Hepatitis C; transfusion with infected blood or blood products; and by sexual contact with a person infected with Hepatitis C.

27.     Each day without treatment increases the likelihood of cirrhosis, fibrosis, liver cancer, the need for a liver transplant, complications from the disease, death from liver failure due to chronic Hepatitis C infection, and the risk of transmitting Hepatitis C to others.

28.     Liver transplants are painful, carry a risk of significant complications, and are nearly impossible for prisoners to obtain.  Transplants result in lower recovery rates than treatment with direct-acting antiviral drugs, and transplants are very costly.

29.     By not providing necessary medical care, Defendants' action threaten Plaintiffs and those similarly situated with death and other irreparable harm stemming from their Hepatitis

C infections. Plaintifsf and members of the proposed class have suffered and will continue to suffer grave and irreparable harm unless the Court orders Defendants to provide the safe and effective treatment with direct-acting antiviral drugs as described below.

30.     On information and belief, about 20 percent of inmates under the supervision of the DOC are currently infected with Hepatitis C.

31.     The CDC recommends that persons with an increased risk for Hepatitis C infection be tested. This includes, but is not limited to, persons born from 1945-1965; persons who have injected illegal drugs; persons who received blood, blood products, or transplants before 1992; persons with an HIV infection; persons born to a positive mother infected with hepatitis C; and any persons with known exposure to the virus.

**Standard of Care for Hepatitis C Infections**

32.     For many years, finding and establishing an effective and safe treatment for Hepatitis C infections was a highly elusive goal.  The standard treatment, which included the use of interferon and ribavirin medications, failed to cure large numbers of patients and was associated with painful and other adverse side-effects, including psychiatric and autoimmune disorders, flulike symptoms, and gastrointestinal distress.

33.     Over the past three years, the approval by the Federal Drug Administration (FDA) of new direct-acting antiviral drugs (DAAD) has greatly improved the treatment module for Hepatitis C infections.

34.     In 2011, the FDA approved the use of protease inhibitors called boceprevir (under brand name Vicrtrelis) and telaprevir (under brand name Incivek), and the standard of care developed into a "triple therapy" to include the combination of either boceprevir or telaprevir, plus ribavirin and interferon.  The triple therapy improved results for many patients, but

continued to produce painful and adverse side effects, and the treatment duration could take 48 weeks to complete.

35.     In 2013, the FDA approved DAAD medications called simeprevir (under brand name Olysio) and sofosbuvir (under brand names Sovaldi). At this time, the recommended treatment was DAAD such as Solvadi combined with ribavirin, or with interferon, depending on the patient's other symptoms and medical diagnoses.

36.     In late 2014, the FDA approved the use of Sovaldi in combination with Olsyio for the treatment of Hepatitis C.

37.     On October 10, 2014, the FDA specifically approved Harvoni, a pill that is taken once a day and combines sofosbuvir and ledipasvir.

38.     Harvoni eliminates the need for the patient to take interferon and/or ribavirin, which were largely responsible for the adverse and difficult side-effects of treating Hepatitis C.

39.     Solvaldi (sofosbuvir), Olysio (simeprevir), and Harvoni have few side effects, greater efficacy, can reduce treatment durations by 75 percent, and are administered orally rather than by injections.

40.     The new treatment modules utilizing these newest DAAD have very high cure rates (over 90% of patients treated for Solvaldi and over 95% for Harvoni), have fewer and far less serious side-effects than the previous treatment modules, and involve a far shorter treatment time (12-24 weeks).

41.     The standard of care in the community for Hepatitis C infections—the use of the latest DAAD—is now well-established.  The CDC has recommended these new treatment modules and the Federal Bureau of Prisons (BOP), in 2014, adopted new Clinical Practice Guidelines that incorporate these new DAAD treatment modules.  Under the CDC and the BOP

9

guidelines, the recommended treatment depends further upon the particularized genotype, the acute or chronic status of the disease, and prior attempts to treat the patient's Hepatitis C infection.

42.     On information and belief, correctional systems in California, Illinois, Washington, Wisconsin, Oregon, and New York have also developed procedures to provide DAADs to individuals that fall within their guidelines, and have started prescribing these lifesaving medications to certain prisoners.

**Pennsylvania DOC Policy for Hepatitis C Infections**

43.     Defendants have not implemented treatment policies or provided medical treatment for Hepatitis C infections consistent with current medical and community standards and specifically have not authorized treatment with the effective direct-acting antiviral drugs.

44.     Upon information and belief, Defendants have ceased providing any treatment to inmates with Hepatitis C infections, including the combination therapy of interferon and ribavirin, or the triple therapy of boceprevir/telaprevir with interferon and ribavirin.

45.     Contrary to the proper and necessary medical procedures and the community standard of care, Defendants have denied requests by Plaintiffs Chimenti, Levya, Maldonado, and by other members of the class for the appropriate and medically necessary direct-acting antiviral treatment for their Hepatitis C infections.

46.     The DOC subcontracts its medical care to private medical care companies, but also employs medical care professionals, including correctional health care administrators, at each institution.

47.     Upon information and belief, the Bureau of Health Care Services (BHCS) is a bureau within the DOC that provides oversight of medical care services to DOC inmates.

48.     Individuals seeking medical treatment for their Hepatitis C infections have merely been informed that the "DOC/BHCS is revaluating [their] treatment protocol for Hepatitis C given the new guidance issued by the American Association of Liver Diseases (AASLD) and the Infectious Diseases Society of American (IDSA)."

49.     In the meanwhile, Plaintiffs and all class members have not received the necessary medical treatment for Hepatitis C, including the latest DAAD such as Solvaldi (sofosbuvir), Olysio (simeprevir) or Harvoni (sofosbuvir with ledipasvir).

50.     As a consequence of this policy, Plaintiffs and all class members with Hepatitis C infections have a substantially increased risk of continued Hepatitis C infection, liver disease, liver cancer, cirrhosis, and death.

51.     There is no medical justification for a treatment module for Hepatitis C infection that does not utilize the direct-acting antiviral drugs such as simeprevir (Olysio) and sofosbuvir (Solvaldi) or sofosbuvir with ledipasvir (combined as Harvoni).  To the extent that the direct-acting antiviral treatment has not been instituted because of financial considerations, such concerns are unconstitutional and are otherwise in violation of the United States Constitution, the Pennsylvania Constitution, and Pennsylvania state law as they deny necessary and appropriate medical care to Plaintiff and members of the class.

**Plaintiff Salvatore Chimenti**

52.     Mr. Chimenti entered the DOC in 1983, and is currently incarcerated at SCI Smithfield.

53.     In 1991, while Mr. Chimenti was housed at SCI Huntingdon, the medical staff informed Mr. Chimenti that he had tested positive for Hepatitis C.

54.     Mr. Chimenti received interferon treatments from December 1, 1997 to March 18, 1998, but these treatments did not provide a cure for the disease.

55.     In May 1998, a gastrointestinal specialist, Michael F. Gaugler, D.O., recommended consideration of  a treatment module for Mr. Chimenti of interferon in combination with ribavirin, and that treatment module was approved by the FDA in or about June 1998.

56.     The DOC took 18 months to develop a protocol from 1998 to 2000, and therefore, Mr. Chimenti did not begin the combination treatment with interferon and ribavirin (combined together and branded as Rebetron) until June 2000, but once again his condition did not improve with this six-month treatment.

57.     During this time while waiting for the Rebetron treatment for Hepatitis C, Mr. Chimenti's condition deteriorated from Stage 3 to Stage 4 cirrhosis, thus reducing his chance of responding positively to that treatment by 50 percent.

58.     In 2011, after FDA approved a triple therapy treatment using boceprevir or telaprevir in combination with interferon and ribavirin, Mr. Chimenti again sought to have his Hepatitis C treated.

59.     After waiting 10 months, Mr. Chimenti was treated with triple therapy at SCI Forest from June 2012 through May 2013.  He initially responded positively to the triple therapy, but relapsed six months later in November 2013.

60.     Mr. Chimenti now suffers from Stage 4 compensated cirrhosis with chronic liver failure.  His Model for End-Stage Liver Disease ("MELD") score is 12.  The MELD score is a measure of mortality risk in patients with end-stage liver disease and is used as a disease severity index to help prioritize allocation of organs for transplant.

61.     In 2009, Dr. Abhinav Humar, Chief Liver Transplant Specialist from the University of Pittsburgh Medical Center was appointed by U.S. District Court Judge Vanaskie to provide a report on Mr. Chimenti's medical condition.  Dr. Humar recommended that Mr. Chimenti be assessed with ultrasounds and CT scans of his liver every six months, and that if Mr. Chimenti's "MELD" score went above 10, that he be evaluated by a hepatologist for the possibility of a liver transplant.

62.     Since November 2013, Defendants, including Dr. Kephart, have denied the necessary treatment to track and halt the deleterious effects of Hepatitis C, including regular ultrasounds and CT scans, which are medically necessary for individuals with Stage 4 cirrhosis.

63.     Defendants, including Defendants Dancha, Dreibelbis, Kephart, Correct Care Solutions, Wexford Health Source, and Lehman, failed with deliberate indifference to have Mr. Chimenti seen or evaluated by a hepatologist or  a gastroenterologist for proper treatment of his liver condition.

64.     In late 2013, Mr. Chimenti began requesting treatment of his Hepatitis C infection with direct-acting antiviral drugs, but he has been denied this treatment by Defendants, even though the standard of community care at that time required that Mr. Chimenti be prescribed Solvadi with ribavirin, which has an over 90% cure rate.

65.     In November 2014, CHCA Dreibelbis informed Mr. Chimenti that the "PA DOC has not approved the use of [Harvoni] at this time.  Thus it is not offered at this facility."

66.     Despite Mr. Chimenti having stage 4 cirrhosis, the most advanced stage, he has yet to be referred to a hepatologist for a full evaluation since he has been returned to SCI Smithfield.

67.     Mr. Chimenti has fully grieved the denial of his request for this form of medical treatment, as well as the lack of any treatment for his Hepatitis C or cirrhosis.

68.     As a result of Defendants' denial of the necessary medical treatment, Mr. Chimenti continues to suffer from chronic Hepatitis C infection and the related risks of liver failure and death, and physical and emotional pain and suffering.

69.     Due to Mr. Chimenti's advanced cirrhosis and the deterioration of his liver, medical treatment for his Hepatitis C is urgently needed. Once Mr. Chimenti's liver decompensates, the only treatment for him would be a liver transplant.

70.     The refusal, with deliberate indifference, of Defendants to provide Mr. Chimenti and other class members with Hepatitis C infections with access to the necessary and appropriate DAAD and other medical services for the treatment of their Hepatitis C infections constitutes a violation of the Eight Amendment, the Pennsylvania Constitution, and Pennsylvania state law.

**Plaintiff Daniel Leyva**

71.     Plaintiff Daniel Leyva is currently incarcerated at SCI Retreat.

72.     Mr. Leyva was diagnosed with Hepatitis C in 2001 or 2002 while he was incarcerated at SCI Albion.

73.     Previously he had been treated with interferon and ribavirin, but it was unsuccessful in treating his Hepatitis C infection.

74.     Mr. Leyva has Hepatitis genotype 1 and recent lab results show that he has elevated or high levels of the Hepatitis C virus.

75.     Mr. Leyva requested to be provided the latest direct-acting antiviral drug treatment, but the doctor informed him that it cost too much.

76.     Mr. Leyva filed a grievance requesting to be provided with the latest direct-acting antiviral drug treatment and fully exhausted his administrative remedies.

77.     In the DOC response, Joseph Mataloni, Corrections Health Care Administrator at SCI Retreat, wrote, "The DOC is re-evaluating our treatment protocol for Hepatitis C given the new guidance issued by the American Association of Liver Diseases (AASLD) and the Infectious Diseases Society of America (IDSA)."

78.     Mr. Leyva also received a response from Christopher H. Oppman, Director, Bureau of Health Care Services, who also informed him that the DOC and BCHS are re-evaluating their treatment protocol.

79.     Mr. Leyva currently experiences symptoms of Hepatitis C, including pain, fatigue, and his eyes are jaundiced and requires immediate treatment to prevent any further liver damage.

**Plaintiff David Maldonado**

80.     Plaintiff David Maldonado has been incarcerated in the DOC since 1980, and has been incarcerated at SCI Graterford since 1995.

81.     Mr. Maldonado was diagnosed with Hepatitis C in 1997.

82.     Mr. Maldonado was treated with interferon and ribavirin in 2001, but the treatment was unsuccessful.

83.     After undergoing a liver biopsy which revealed that Mr. Maldonado was between Stage 1 and Stage 2 liver fibrosis, Mr. Maldonado was transferred to SCI Forest in June 2013 to receive the triple therapy of interferon and ribavirin with boceprevir.  While there was some initial success in reducing Mr. Maldonado's viral load, the treatment failed after six months in December 2013. Mr. Maldonado returned to SCI Graterford in February 2014.

84.     Mr. Maldonado has requested the direct-acting antiviral drug treatment from the medical staff and Medical Director Weiner, but was informed by the Bureau of Health Care Services that a new protocol was being developed.

85.     Defendant Korszniak, CHCA at SCI Graterford, responded to Mr. Maldonado's grievance that, "The drug [Harvoni] that you mention has not yet been approved for use by the DOC, BHCS.  When the protols [*sic*] are established [*sic*] and the drug is approved there will be an assessment done to determine who will qualify for the treatment."

86.     In response to Mr. Maldonado's appeal of his grievance to the Central Office, he was informed, "The DOC/BHCS is re-evaluating our treatment protocol for Hepatitis C given the new guidance issued by the American Association of Liver Diseases and the Infectious Diseases Society of America."

87.     Mr. Maldonado's fibrosis requires immediate treatment to prevent any further liver damage or liver failure.

88.     Mr. Maldonado filed grievances requesting to be provided proper medical treatment for Hepatitis C, including the latest direct-acting antiviral drug treatment, and has fully exhausted his administrative remedies.

## CLASS ACTION ALLEGATIONS

89.     Plaintiffs bring this suit as a class action on behalf of himself and all others similarly situated (the "Class") pursuant to Rules 23(a) and 23(b)(2).

90.     Plaintiffs seek to represent the following class on claims for declaratory and injunctive relief:

> All persons who are currently incarcerated in a Pennsylvania Department of Corrections facility who have at least twelve (12) weeks or more remaining to serve on their sentences and are either currently diagnosed with Hepatitis C

infection and/or are determined to have Hepatitis C infection after a blood test administered by the Pennsylvania Department of Corrections.

91.     As a result of Defendants' deliberate indifference to the serious medical needs of the Class, members of the Class are or will be subjected to cruel and unusual punishment and deprived of their federal and state constitutional and statutory rights. Plaintiffs seek declaratory and injunctive relief to remedy Defendants' illegal and unconstitutional actions, policies, and practices.

92.     The requirements of Rules 23(a) and 23(b)(2) are satisfied by this class action.

93.     The information as to the size of the Class and the identity of the inmates who are in the Class is in the exclusive control of Defendants. On information and belief, the class encompasses thousands of inmates in the Pennsylvania DOC, who are geographically dispersed throughout the Commonwealth of Pennsylvania. The number of persons who are members of the Class described above are so numerous that joinder of all members in one action is impracticable.

94.     Questions of law and fact that are common to the entire Class predominate over individual questions because the actions of Defendants complained of herein were generally applicable to the entire class. These legal and factual questions include, but are not limited to:

        a.  Whether the treatment regimens utilizing the direct acting antiviral drugs are the proper, necessary and standard course of treatment in the medical community;

        b.  Whether denial of treatment regimens utilizing the direct-acting antiviral drugs to the Class will cause injury to the Class members, including unnecessary pain and suffering, chronic illness, and death;

    c.   Whether Defendants' Hepatitis C current treatment policy, which denies necessary pharmaceutical treatment for inmates with Hepatitis C infections by following outdated and ineffective treatment regimens or not providing any treatment regimens at all, violates the Eighth Amendment to the U.S. Constitution and Article I § 13 of the Pennsylvania Constitution.

95.    Plaintiffs' claims are typical of the members of the Class because Plaintiffs and all Class Members were injured by the same wrongful policy and practices of Defendants as described in this Complaint. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the Class members, and are based on the same legal theories.

96.    Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have no interests that are contrary to or in conflict with those of the Class they seek to represent. Plaintiffs are represented by competent and skilled counsel whose interests are fully aligned with the interests of the Class.

97.    Relief concerning Plaintiffs' rights under the laws herein alleged and with respect to the Class would be proper. Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with regard to Class Members as a whole and certification of the Class under Rule 23(b)(2) proper.

## CLAIMS

### COUNT I
### Deprivation of Eighth Amendment Right to Medical Care

(against Defendants DOC, Wetzel, Noel, Oppman, Kephart, Dreibelbis, Weiner, Korszniak, Correct Care Solutions, Scharff, Dancha, and Hochberg).

18

98.     Plaintiffs incorporate paragraphs 1 through 96 of this Complaint as if fully set forth herein.

99.     Defendants' acts and omissions in failing to provide adequate medical care constitute a deliberate indifference to the serious medical needs of prisoners infected with Hepatitis C, thereby establishing a violation of the Eighth Amendment to the United States Constitution.

## COUNT II
## Deprivation of Right Not to Undergo Cruel and Unusual Punishment Under the Pennsylvania Constitution

(against Defendants DOC, Wetzel, Noel, Oppman, Kephart, Dreibelbis, Weiner, Korszniak, Correct Care Solutions, Scharff, Dancha, and Hochberg).

100.    Plaintiffs incorporate paragraphs 1 through 96 of this Complaint as if fully set forth herein.

101.    Defendants' acts and omissions in failing to provide adequate medical care constitute a deliberate indifference to the serious medical needs of prisoners infected with Hepatitis C thereby establishing a violation of Article I, § 13 of the Pennsylvania Constitution and its prohibition against the infliction of cruel punishments.

## COUNT III
## Negligence – Medical Malpractice

(against Defendants DOC, Wetzel, Noel, Oppman, Kephart, Dreibelbis, Wexford Health, Lehman, Correct Care Solutions, Scharff, Dancha, and Hochberg).

102.    Plaintiff Chimenti incorporates paragraphs 1 through 96 of this Complaint as if fully set herein.

103.    At all relevant times, the individual Defendants and corporate Defendants had a duty to act in accordance with the standard of care required of medical care professionals and to act as a reasonable corporation would under the same or similar circumstances, they breached

19

that duty in failing to provide the standard of care necessary for individuals infected with Hepatitis C, and Plaintiffs' injuries were the direct, legal and proximate result of Defendants negligence.

## COUNT IV
### Negligence – Medical Malpractice and Vicarious Liability
(against Defendants Wexford Health and Correct Care Solutions)

104.   Plaintiff Chimenti incorporates paragraphs 1 through 96 of this Complaint as if fully set herein.

105.   Defendants Wexford Health and Correct Care Solutions are vicariously liable for the negligent acts commissions, or omissions of its employees and/or agents, who at all times relevant hereto acted on behalf of defendants Wexford Health and Correct Care Solutions and within the scope of their employment, under the doctrines of respondeat superior and ostensible agency.

## RELIEF

WHEREFORE Plaintiffs Salvatore Chimenti, Daniel Leyva, and David Maldonado respectfully requests the following relief:

106.   For the named plaintiffs and members of the plaintiff Class, a Declaratory Judgment that Defendant Pennsylvania Department of Corrections current policy for Hepatitis C treatment violates the Eighth Amendment of the United States Constitution, and Article I § 13 of the Pennsylvania Constitution;

107.   For the named plaintiffs and members of the plaintiff Class, injunctive relief ordering that Defendant Pennsylvania Department of Corrections (a) formulate and implement a Hepatitis C treatment policy that meets the community standards of care for patients with Hepatitis C, (b) that members of the Class be treated with medically necessary and the

appropriate direct-acting antiviral drugs based on individual medical testing and medical evaluation regarding each individual's Hepatitis C status, and (c) that members of the class receive ongoing monitoring and medical care per the standard of care for their individual level of liver fibrosis and cirrhosis, including but not limited to appropriate access to and evaluation by a hepatologist and assessment regarding their need for partial or full liver transplant.

108.    Compensatory damages for Salvatore Chimenti;

109.    Punitive damages for Salvatore Chimenti;

110.    Reasonable attorneys' fees and costs; and

111.    Such other relief the Court deems just and equitable.

Respectfully submitted,

/s/ David Rudovsky
David Rudovsky, PA Attorney No. 15168
Kairys, Rudovsky, Messing & Feinberg LLP
718 Arch Street, Suite 501S
Philadelphia, PA  19106
(215) 925-4400

/s/ Su Ming Yeh
Su Ming Yeh, PA Attorney No. 95111
Angus R. Love, PA Attorney No. 22392
Pennsylvania Institutional Law Project
718 Arch Street, Suite 304S
Philadelphia, PA 19106
(215) 925-2966

/s/ Stephen Brown
Stephen Brown, PA Attorney No. 27829
Christine Levin, PA Attorney No. 37807
Ethan Solove, PA Attorney No. 318965
Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
(215) 994-2404

Date: June 12, 2015