IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SALVATORE CHIMENTI, ET AL. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA  DEPARTMENT | : | |
| OF CORRECTIONS, ET AL. | : | NO.  15-3333 |

## MEMORANDUM

**Padova, J.**                                                              **March 21, 2016**

Plaintiffs have brought this class action lawsuit against the Pennsylvania Department of
Corrections (the "DOC"), two companies that have contracted to provide medical services for the
DOC, and officials and employees of both the DOC and the two companies, asserting claims
arising from the medical care provided to DOC inmates who have been diagnosed with Hepatitis
C.  Before the Court is a Motion to Dismiss brought by the DOC and officials and employees
thereof (the "DOC Defendants") and a Motion to Dismiss or Sever brought by the medical care
providers and their officials and employees (the "Medical Defendants").  For the following
reasons, each Motion is granted in part and denied in part.

## I.       FACTUAL BACKGROUND

The Complaint alleges the following facts.  Plaintiffs Salvatore Chimenti, Daniel Leyva,
and David Maldonado are all incarcerated in the DOC and all suffer from Hepatitis C viral
infections.  (Compl. ¶ 2.)   Chimenti is incarcerated at the Pennsylvania State Correctional
Institution at Smithfield ("SCI Smithfield").  (Id. ¶ 5.)  Leyva is incarcerated at the Pennsylvania
State Correctional Institution at Retreat ("SCI Retreat").  (Id. ¶ 6.)  Maldonado is incarcerated at
the Pennsylvania State Correctional Institution at Graterford ("SCI Graterford").  (Id. ¶ 7.)
Defendant Correct Care Solutions began providing health care services for DOC facilities on

September 1, 2014 and is the current health care provider for all DOC facilities.  (Id. ¶ 16.)
Defendant Wexford Health Sources, Inc. was the health care provider for all DOC facilities prior
to September 1, 2014.  (Id. ¶ 20.)

Hepatitis C is primarily spread through the transmission of blood from a person infected
with the disease to another person.  (Id. 26.)  Hepatitis C attacks the liver and causes hepatitis
(inflammation of the liver), "which can significantly impair the liver's ability to assist the body
in digesting essential nutrients, filter toxins from the blood, and prevent disease."  (Id. ¶ 22.)
Hepatitis C can be acute or chronic. (Id. ¶ 23.)  Acute Hepatitis C is a short-term illness that
occurs within the first six months of exposure to the virus and can lead to chronic Hepatitis C.
(Id.)  Chronic Hepatitis C is a "long-term illness[] that can last throughout a person's life" and is
"the leading cause of cirrhosis (irreversible scarring of liver tissue) and liver cancer and is the
most common cause of liver transplants."  (Id. ¶ 24.)  Chronic Hepatitis C can also lead to
chronic liver disease, liver fibrosis, and death.  (Id.)  Approximately twenty percent of the
"inmates under the supervision of the DOC are currently infected with Hepatitis C."  (Id. ¶ 30.)

In the past, the standard treatment for Hepatitis C infections, "which included the use of
interferon and ribavirin medications, failed to cure large numbers of patients and was associated
with painful and other adverse side-effects, including psychiatric and autoimmune disorders,
flulike symptoms, and gastrointestinal distress."  (Id. ¶ 32.)  Over the past few years, the Federal
Drug Administration ("FDA") has approved new direct-acting antiviral drugs ("DAAD") to treat
Hepatitis C infections.  (Id. ¶ 33.)  "In 2011, the FDA approved the use of protease inhibitors
called boceprevir . . . and telaprevir . . . and the standard of care developed into a 'triple therapy'
to include the combination of either boceprevir or telaprevir, plus ribavirin and interferon"  (Id. ¶
34.)  This new triple therapy improved results for many patients, but still led to "painful and

adverse side effects," and the treatment could last for as many as 48 weeks.  (Id.)  In 2013, the

FDA approved two new DAAD medications called simeprevir (brand name Olysio) and

sofosbuvir (brand name Sovaldi).  (Id. ¶ 35.)  The recommended treatment became a

combination of a "DAAD such as Sovaldi combined with ribavirin, or with interferon, depending

on the patient's other symptoms and medical diagnoses."  (Id.)  "In late 2014, the FDA approved

the use of Sovaldi in combination with Olysio for the treatment of Hepatitis C."  (Id. ¶ 36.)  "On

October 10, 2014, the FDA . . . approved Harvoni, a pill that is taken once a day and combines

sofosbuvir and ledipasvir."  (Id. ¶ 37.)  A patient who takes Harvoni does not need to take

interferon and/or ribavirin, the drugs "largely responsible for the adverse and difficult side-

effects of treating Hepatitis C."  (Id. ¶ 38.)  The new drugs, i.e., Solvaldi, Olysio, and Harvoni,

have few side effects, have greater efficacy than older treatments for Hepatitis C, and can be

taken for significantly less time (75% less) than prior Hepatitis C treatments.  (Id. ¶ 39.)  Use of

the latest DAAD medications is now the standard of care in the community for the treatment of

Hepatitis C infections.  (Id. ¶ 41.)  "The CDC has recommended these new treatment modules

and the Federal Bureau of Prisons (BOP), in 2014, adopted new Clinical Practice Guidelines that

incorporate these new DAAD treatment modules."  (Id.)

Defendants have not implemented these new treatment modules for the treatment of

Hepatitis C infections within the DOC.  (Id. ¶ 43.)  Rather, Defendants have "ceased providing

any treatment to inmates with Hepatitis C infections, including the combination therapy of

interferon and ribavirin, or the triple therapy of boceprevir/telaprevir with interferon and

ribavirin."  (Id. ¶ 44.)  Defendants have denied requests by the Plaintiffs and others for DAAD

medications to treat their Hepatitis C infections.  (Id. ¶ 45.)  Inmates who seek medical treatment

for their Hepatitis C infections have been informed that the "DOC/BHCS is revaluating [their]

treatment protocol for Hepatitis C given the new guidance issued by the American Association of Liver Diseases (AASLD) and the Infectious Diseases Society of American [sic] (IDSA)."[1]  (Id. ¶ 48 (first alteration in original).)   Consequently, Plaintiffs and others "have not received the necessary medical treatment for Hepatitis C, including the latest DAAD such as Solvaldi . . . , Olysio . . . , or Harvoni . . ." and "have a substantially increased risk of continued Hepatitis C infection, liver disease, liver cancer, cirrhosis, and death." (Id. ¶¶ 49-50.)

Chimenti was first diagnosed with Hepatitis C in 1991. (Id. ¶ 53.)  He has received different treatments from the DOC since that time, but has not been cured and currently suffers from "Stage 4 compensated cirrhosis with chronic liver failure." (Id. ¶¶ 54-60.)  Most recently, Chimenti was treated with the triple therapy at SCI Forest from June 2012 through May 2013. (Id. ¶ 59.)  While he initially responded positively to the triple therapy, he relapsed after six months, in November 2013.  (Id.)  In late 2013, he began requesting treatment with DAAD medications, but Defendants have denied that treatment, even though treatment of Hepatitis C with Solvadi and ribavirin has an over 90% cure rate.  (Id. ¶ 64.)  Chimenti has also asked to be treated with Harvoni, but, in November 2014, Defendant William Dreibelbis, a Correctional Health Care Administrator ("CHCA") at SCI Smithfield, informed Chimenti that "'PA DOC has not approved the use of [Harvoni] at this time.  Thus it is not offered at this facility.'" (Id. ¶¶ 13, 65 (alteration in original).)

Leyva was diagnosed with Hepatitis C in 2001 or 2002, while he was incarcerated at SCI Albion.  (Id. ¶ 72.)  He has been treated with interferon and ribavirin, but those drugs did not cure his infection.  (Id. ¶ 73.)  He has asked to be treated with the latest DAAD treatment, but was informed by his doctor that the treatment is too costly.  (Id. ¶ 75.)  Joseph Mataloni, the

---

[1] The Bureau of Health Care Services ("BHCS"), a bureau within the DOC, oversees the provision of medical care to DOC inmates.  (Id. ¶ 47.)

CHCA at SCI Retreat, informed Leyva that "'[t]he DOC is re-evaluating our treatment protocol for Hepatitis C given the new guidance issued by the American Association of Liver Diseases (AASLD) and the Infectious Diseases Society of America (IDSA).'"  (Id. ¶ 77.)  He was also informed by Christopher H. Oppman, Director of BHCS, that "DOC and BCHS are re-evaluating their treatment protocol."  (Id. ¶ 78.)

Maldonado was diagnosed with Hepatitis C in 1997.  (Id. ¶ 81.)  He was unsuccessfully treated with interferon and ribavirin in 2001.  (Id. ¶ 82.)  In June 2013, he was treated with the triple therapy of interferon, ribavirin and boceprevir.  (Id. ¶ 83.)  This treatment was initially successful, but failed after six months in December 2013.  (Id.)  He has asked to be treated with the latest DAAD treatment, but was informed by BHCS that a new protocol is being developed.  (Id. ¶ 84.)  Defendant Joseph C. Korszniak, the CHCA at SCI Graterford, informed Maldonado that Harvoni "'has not yet been approved for use by the DOC, BHCS.  When the protols [sic] are extablished [sic] and the drug is approved there will be an assessment done to determine who will qualify for the treatment.'"  (Id. ¶ 85 (alterations in original).)

Plaintiffs seek to represent a class of all persons currently incarcerated in a DOC facility who have at least twelve weeks remaining in their sentences and are currently diagnosed with Hepatitis C.  (Id. ¶ 90.)  They assert four claims for relief.  Count One asserts a claim pursuant to 42 U.S.C. § 1983 against the DOC Defendants, Correct Care Solutions, and employees of Correct Care Solutions for deliberate indifference to the serious medical needs of prisoners infected with Hepatitis C in violation of the Eighth Amendment to the United States Constitution.  Count Two asserts a claim against the DOC Defendants, Correct Care Solutions, and employees of Correct Care Solutions for deliberate indifference to the serious medical needs of prisoners infected with Hepatitis C in violation of Article I, Section 13 of the Pennsylvania

Constitution.  Count III asserts a claim against all Defendants for medical malpractice under Pennsylvania law.  Count IV asserts a claim against Wexford Health and Correct Care Solutions for medical malpractice and vicarious liability under Pennsylvania law.

## II.    THE DOC DEFENDANTS' MOTION TO DISMISS

The DOC Defendants seek dismissal of Count I of the Complaint as against four of the DOC Defendants named in that Count for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  They also seek dismissal of Counts II and III in their entireties pursuant to Rule 12(b)(6).  In addition, the DOC Defendants ask us to dismiss the Complaint in its entirety for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3).

### A.    Rule 12(b)(6)

When considering a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputely authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).  We take the factual allegations of the complaint as true and "construe the complaint in the light most favorable to the plaintiff." DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (citing Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011)).  Legal conclusions, however, receive no deference, as the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" Wood v. Moss, 134 S. Ct. 2056, 2065 n.5 (2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," which gives "'the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2), and Conley v. Gibson, 355 U.S. 41, 47 (1957)).  The complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'"  Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). ).  "A complaint that pleads facts 'merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief.'"  Connelly v. Lane Constr. Corp., 809 F.3d 780, 786-87 (3d Cir. 2016) (quoting Iqbal, 556 U.S. at 678).  "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  Id. at 786 (quoting Iqbal, 556 U.S. at 679).  In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "'to raise a right to relief above the speculative level.'"  W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 169 (3d Cir. 2013) (quoting Twombly, 550 U.S. at 555).

 B. Count I

Count I asserts an Eighth Amendment deliberate indifference claim pursuant to 42 U.S.C. § 1983 against twelve of the Defendants, including all six of the DOC Defendants:  the DOC; John Wetzel, the Secretary of the DOC; Paul Noel, Chief Medical Director of the DOC; Oppman; Dreibelbis; and Korszniak.  The DOC Defendants have moved to dismiss this Count as

against Wetzel, Noel, Dreibelbis, and Korszniak pursuant to Rule 12(b)(6) on the ground that the Complaint does not allege that these Defendants were personally involved in the alleged violation of Plaintiffs' rights.

Section 1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  "Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws.  It does not, by its own terms, create substantive rights."  Kaucher v. Cty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (footnote omitted) (citing Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979)).  Consequently, in order to state a claim for relief pursuant to § 1983, "a plaintiff must demonstrate the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." Id. (citing Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49–50 (1999), and Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

Count I alleges that the twelve named Defendants' "acts and omissions in failing to provide adequate medical care constitute a deliberate indifference to the serious medical needs of prisoners infected with Hepatitis C, thereby establishing a violation of the Eighth Amendment." (Compl. ¶ 99.)  The Eighth Amendment's right to be free from cruel and unusual punishment, which applies to the states via the Fourteenth Amendment, Estelle v. Gamble, 429 U.S. 97, 101-02 (citation omitted), "imposes duties on [prison] officials, who must . . . ensure that inmates receive adequate . . . medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"  Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468

U.S. 517, 526–27 (1984)).  To state a claim under the Eighth Amendment for denial of medical care, a plaintiff must plausibly allege that a defendant showed "deliberate indifference to serious medical needs of [a] prisoner[ ]."  Estelle, 429 U.S. at 104.  Courts have consistently held that "mere allegations of malpractice" are not sufficient to allege "deliberate indifference."  Id. at 106 n.14.

"Deliberate indifference can be shown by a prison official 'intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.'" Rhines v. Bledsoe, 388 F. App'x 225, 227 (3d Cir. 2010) (quoting Estelle, 429 U.S. at 104–05). "A medical need is serious if it 'has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'"  Id. (quoting Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987)).  Moreover, the medical need must be such that "'a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death.'"  Tsakonas v. Cicchi, 308 F. App'x 628, 632 (3d Cir. 2009) (quoting Colburn v. Upper Darby Twp., 946 F.2d 1017, 2023 (3d Cir. 1991)).

A prison official acts with deliberate indifference to a serious medical need "when he knows of and disregards an excessive risk to inmate health or safety."  Brown v. Thomas, 172 F. App'x 446, 450 (3d Cir. 2006) (citing Farmer, 511 U.S. at 837).  "The official must be aware of the facts from which an inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id. (citation omitted).  Given these prerequisites to a valid constitutional claim based on deliberate indifference, factual allegations suggesting only an "'ordinary lack of due care for the prisoner's interests or safety'" will not suffice to meet the

9

pleading requirements for deliberate indifference under the Eighth Amendment.  Farmer, 511 U.S. at 835 (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)).

The DOC Defendants argue that the Complaint fails to plead a cognizable § 1983 claim against Wetzel, Noel, Dreibelbis and Korszniak because it does not allege any facts that, if true, would establish that these Defendants were personally involved in denying medical treatment for the Plaintiffs' Hepatitis C infections.  "'A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (alteration in original) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)); see also Argueta v. U.S. Immigration & Customs Enf't, 643 F.3d 60, 72 (3d Cir. 2011) (quoting Rode, 845 F.2d at 1207) (same).  Thus, a conclusory allegation that defendants were "directly involved" in the violations of the plaintiff's rights is not sufficient to allege personal involvement.  Bush v. Dep't of Human Servs., 614 F. App'x 616, 620 (3d Cir. 2015) (affirming dismissal of § 1983 complaint against city officials where the only allegation of personal involvement was the conclusory allegation that officials "were all 'directly involved'" in the deprivation of plaintiff's rights).  See also Wright v. Warden, Forest SCI, 582 F. App'x 136, 137 (3d Cir. 2014) (affirming dismissal of § 1983 claim against prison officials where the allegations that those officials "had a 'statutory duty to enforce policies' and govern the 'conduct of their subordinates'" failed to suggest the requisite personal involvement); Gorrell v. Yost, 509 F. App'x 114, 118 (3d Cir. 2013) (determining that allegation that mailroom officers were "responsible for the daily operations of the mail room" was "insufficient to establish personal liability" with respect to plaintiff's claim regarding interference with his legal mail).

The DOC Defendants argue that Count I must be dismissed as against Wetzel and Noel because the Complaint does not allege that either of these Defendants had any personal involvement in treating Plaintiffs, denying Plaintiffs treatment for Hepatitis C, or developing the DOC's policies for treating Plaintiffs with Hepatitis C. However, the Complaint specifically alleges that Wetzel, as the Secretary of the DOC, "is responsible for all the oversight, operation, and administration of the Commonwealth's correctional system, including providing appropriate medical treatment and the formulation of policies that ensure the provision of that treatment to Plaintiffs." (Compl. ¶ 9.) We conclude that this allegation is sufficient to raise a reasonable inference of Wetzel's personal involvement in the DOC's policy of ceasing the provision of medical treatment to inmates with Hepatitis C and denying their requests for treatment with DAADs (id. ¶¶ 43-51), and we further conclude that the Complaint states a cognizable § 1983 claim against Wetzel for deliberate indifference to Plaintiffs' serious medical needs in violation of the Eighth Amendment. See Barros v. Wetzel, Civ. A. No. 14-1746, 2015 WL 5785746, at *2, *4 (M.D. Pa. Sept. 29, 2015) (denying motion to dismiss § 1983 claim against Wetzel for violation of plaintiff's First Amendment free exercise of religion rights where the complaint alleged that Wetzel's policy directive caused the infringement); Cook v. Corbett, Civ. A. No. 14–5895, 2015 WL 4111692, at *13 (E.D. Pa. July 8, 2015) (denying motion to dismiss § 1983 claim against Wetzel based on allegation that Wetzel maintained a policy that resulted in violation of plaintiff's First Amendment right to free exercise of religion); Stokes v. Riskus, Civ. A. No. 14-60, 2015 WL 1326200, at *4 (W.D. Pa. Mar. 24, 2015) (denying motion to dismiss § 1983 claim against Wetzel for violation of the plaintiff's Eighth Amendment right to be protected from assault by other inmates where the complaint alleged that Wetzel failed to develop a policy that would "protect inmates from assault while on protective custody");

Hampton v. Wetzel, Civ. A. No. 12-434, 2014 WL 1312013, at *14 (M.D. Pa. Mar. 31, 2014) (denying motion for summary judgment as to plaintiff's § 1983 claim against Wetzel for violation of plaintiff's Fourteenth Amendment right to equal protection where the record contained evidence that Wetzel "had a role in establishing and maintaining the policy or practice which allegedly resulted in differential treatment of [plaintiff]").  We therefore deny the DOC Defendants' Motion to Dismiss as to the claim asserted against Wetzel in Count I of the Complaint.

In contrast to the Complaints' allegations regarding Wetzel, the only allegations concerning Noel state that he is "the Chief Medical Director of the DOC" and, as such, "has responsibility in overseeing the delivery of medical services in the DOC."  (Id. ¶ 10.)   The Complaint contains no other allegations suggesting that Noel was personally involved in the denial of medical care to Plaintiffs or was involved in the development of the DOC's policy with respect to medical treatment for Hepatitis C.  We therefore conclude that the Complaint does not sufficiently allege that Noel had personal involvement in the alleged violation of Plaintiffs' Eighth Amendment rights to plausibly state a § 1983 claim against him for deliberate indifference to Plaintiffs' serious medical needs in violation of the Eighth Amendment.  We thus grant the DOC Defendants' Motion to Dismiss as to the claim asserted against Noel in Count I of the Complaint.

The DOC Defendants also argue that Count I should be dismissed as against Dreibelbis and Korszniak because they are not physicians, do not develop medical policies, and do not personally deliver medical care.  Defendants further argue that Dreibelbis's and Korszniak's alleged denial of grievances with respect to medical issues does not raise an inference that they were deliberately indifferent to an inmate's medical needs.  Defendants rely on Fantone v.

Herbik, 528 F. App'x 123 (3d Cir. 2013), in which the United States Court of Appeals for the Third Circuit concluded that a prison administrator's denial of an inmate's grievance with respect to his medical care does not amount to deliberate indifference to his serious medical needs where there is no evidence that the administrator "had a reason to believe that the prison doctors were either mistreating or not treating [plaintiff], or that they inappropriately handled his grievances."  Id. at 128.

The Complaint alleges that Dreibelbis, as a CHCA, "is responsible for the oversight of health care at SCI Smithfield," that he personally failed "to have Mr. Chimenti seen or evaluated by a hepatologist or a gastroenterologist for proper treatment of his liver condition," and that he personally informed Mr. Chimenti that the "'PA DOC has not approved the use of [Harvoni] at this time.  Thus it is not offered at this facility.'"  (Compl. ¶¶ 13, 63, 65 (alteration in original).) The Complaint thus specifically alleges that Dreibelbis personally failed to have Mr. Chimenti treated by the appropriate medical specialist and that he informed Chimenti that he would not receive the medical care he sought, i.e., treatment with a DAAD, even though Dreibelbis knew that Chimenti was not being treated by an appropriate medical specialist.  Such allegations support a reasonable inference that Dreibelbis denied Chimenti's requests for medical care even though he "had a reason to believe that the prison doctors were . . . not treating [Chimenti]." Fantone, 528 F. App'x at 128.  We conclude, accordingly, that the Complaint sufficiently alleges that Dreibelbis was personally involved in the denial of medical treatment to Chimenti and was deliberately indifferent to Chimenti's serious medical needs to plausibly state a § 1983 claim against him for violation of the Eighth Amendment.  We therefore deny the DOC Defendants' Motion to Dismiss as to the claim asserted against Dreibelbis in Count I of the Complaint.

The Complaint alleges that Korszniak, as a CHCA, "is responsible for the oversight of health care at SCI Graterford" and that he personally rejected Mr. Maldonado's grievance regarding the denial of his request to be treated with Harvoni, stating that the "'drug [Harvoni] that you mention has not yet been approved for use by the DOC, BHCS. When the protols [*sic*] are established [*sic*] and the drug is approved there will be an assessment done to determine who will qualify for the treatment.'" (Id. ¶¶ 15, 85 (alterations in original).) We conclude that these allegations support a reasonable inference that Korszniak denied Maldonado medical care even though he "had a reason to believe that the prison doctors were . . . not treating [Maldonado]." Fantone, 528 F. App'x at 128. We conclude, accordingly, that the Complaint sufficiently alleges that Korszniak was personally involved in the denial of medical treatment to Maldonado and was deliberately indifferent to Maldonado's serious medical needs to state a plausible § 1983 claim against him for violation of the Eighth Amendment. We consequently deny the DOC Defendants' Motion to Dismiss as to the claim asserted against Korszniak in Count I of the Complaint.

In summary, the DOC Defendants' Motion to Dismiss is granted in part and denied in part with respect to Count I of the Complaint. The Motion is granted as to Noel and denied as to Wetzel, Dreibelbis and Korszniak.

C.      Count II

Count II of the Complaint asserts a claim against twelve Defendants, including all six of the DOC Defendants, for violation of Article I, § 13 of the Pennsylvania Constitution, which provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted." Pa. Const. Art. 1, § 13. "This language parallels the Eighth Amendment of the United States Constitution. Thus, the Pennsylvania prohibition is coextensive with the

14

Eighth and Fourteenth Amendments of the United States Constitution." Tejada v. Corr. Officer Dale, Civ. A. No. 14-5604, 2015 WL 5729273, at *4 (E.D. Pa. Sept. 30, 2015) (citing Commonwealth v. Cottam, 616 A.2d 988, 1003 (Pa. Super. Ct. 1992)).  Consequently, the same legal standard "'applies to claims brought under Article 1, Section 13 of the Pennsylvania Constitution'" as applies to claims brought pursuant to the Eighth Amendment.  Id. (citing Eliason v. Cty. of Lehigh, Civ. A. No. 08-5755, 2009 WL 2526199, at *4 (E.D. Pa. Aug. 14, 2009)).

The DOC Defendants argue that Count II should be dismissed to the extent that Plaintiffs seek monetary damages for any violation of the Pennsylvania Constitution.  Indeed, "[n]o Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution."  Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist., 442 F. App'x 681, 687 (3d Cir. 2011) (citing Jones v. City of Phila., 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006)).  However, Plaintiffs have unequivocally stated that they "only seek injunctive relief under the Pennsylvania Constitution."  (Pls.' Consolidated Response at 18.)  Accordingly, we deny the DOC Defendants' Motion to Dismiss insofar as it seeks dismissal of the damages claim in Count II of the Complaint because Plaintiffs do not seek damages in connection with Count II.

> D.    Count III

Count III of the Complaint asserts a claim against twelve Defendants, including five of the DOC Defendants (the DOC, Wetzel, Noel, Oppman, and Dreibelbis), for medical malpractice under Pennsylvania law.  Count III alleges that the DOC Defendants "had a duty to act in accordance with the standard of care required of medical professionals," that "they breached that duty in failing to provide the standard of care necessary for individuals infected with Hepatitis C,

and [that] Plaintiffs' injuries were the direct, legal and proximate result of Defendants['] negligence." (Compl. ¶ 103.)  The DOC Defendants seek the dismissal of Count III as against Defendant Wetzel on the ground that he has sovereign immunity as to this claim.  The DOC Defendants also ask us to dismiss this Count as to the four other named DOC Defendants on the ground that the Complaint does not allege sufficient facts to state a claim for negligence under Pennsylvania law.

1.   <u>Sovereign immunity</u>

"The doctrine of sovereign immunity, codified at 1 Pa.C.S. § 2310, protects the Commonwealth and its employees from . . . a suit for monetary damages unless the cause of action falls within one of several statutory exceptions . . . ." <u>Johnson v. Townsend</u>, 314 F. App'x 436, 439 (3d Cir. 2008); <u>see also</u> 1 Pa. Cons. Stat. Ann. § 2310 ("[I]t is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity.").  The General Assembly has waived sovereign immunity and consented to suit only with respect to claims for damages arising from: (1) "[v]ehicle liability;" (2) "[m]edical-professional liability;" (3) "[c]are, custody or control of personal property;" (4) "Commonwealth real estate, highways and sidewalks;" (5) "[p]otholes and other dangerous conditions;" (6) "[c]are, custody or control of animals;" (7) "[l]iquor store sales;" (8) "National Guard activities;" and (9) "[t]oxoids and vaccines." 42 Pa. Cons. Stat. Ann. § 8522(b). These exceptions to sovereign immunity are "strictly construed and narrowly interpreted." <u>Brown v. Blaine</u>, 833 A.2d 1166, 1173 (Pa. Commw. Ct. 2003) (citing <u>Bufford v. Pa. Dep't of Transp.</u>, 670 A.2d 751 (Pa. Commw. Ct. 1996)).  The DOC Defendants maintain that, while the General Assembly has

16

waived sovereign immunity as to suits for "medical-professional liability," that exception does not apply to Wetzel because he is not a medical professional.

Section 8522 specifies that the "medical-professional liability" exception to sovereign immunity applies to "[a]cts of health care employees of Commonwealth agency medical facilities or institutions or by a Commonwealth party who is a doctor, dentist, nurse or related health care personnel." 42 Pa. Cons. Stat. Ann. § 8522(b)(2). The Complaint does not allege that Wetzel is a "health care employee[] of [a] Commonwealth agency medical facilit[y] or institution[]." Id. The Complaint also contains no allegations that Wetzel is "a doctor, dentist, nurse or related health care personnel." Id. Plaintiffs argue that Wetzel should nonetheless be treated as a healthcare employee of the BOP because he "directly established the impermissibly restricted medical policy." (Pls.' Consolidated Response at 17.) However, Plaintiffs have cited no authority for the proposition that a Commonwealth official who is not a "healthcare employee[] of [a] Commonwealth agency medical facilit[y] or institution[]" and is not "a doctor, dentist, nurse or related health care personnel" should be treated as a healthcare employee simply because he participated in the establishment of a medical policy. Indeed, "it is well-settled that immunity is waived only for claims asserted against health care employees, and not to individuals who are not medical professionals." Green v. Fisher, Civ. A. No. 12-982, 2014 WL 65763, at *11 (M.D. Pa. Jan. 8, 2014) (dismissing medical care negligence claim against the warden, deputy warden, safety manager, maintenance manager, and food service manager of SCI Smithfield on sovereign immunity grounds because none of those defendants were health care employees (citing McCool v. Dep't of Corr., 984 A.2d 565, 570 (Pa. Commw. Ct. 2009))); see also Robus v. Pa. Dep't of Corr., Civ. A. No. 04-2175, 2006 WL 2060615, at *4 (E.D. Pa. July 20, 2006) (dismissing state law negligence claim for inadequate medical care asserted against the

17

superintendent of SCI Graterford on sovereign immunity grounds since the superintendent of the prison was not a health care employee).

We conclude that the Pennsylvania state law medical malpractice claim asserted against Wetzel in Count III is barred by sovereign immunity because Wetzel is an employee of the Commonwealth of Pennsylvania and no exceptions to sovereign immunity apply. See 1 Pa. Cons. Stat. Ann. § 2310; 42 Pa. Cons. Stat. Ann. § 8522. Consequently, we grant the DOC Defendants' Motion to Dismiss as to the claim asserted against Wetzel in Count III of the Complaint.

2.    Medical Malpractice

The Pennsylvania courts define medical malpractice "'as the unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services.'" Pomroy v. Hosp. of Univ. of Pa., 105 A.3d 740, 744-45 (Pa. Super. Ct. 2014) (quoting Toogood v. Owen J. Rogal, D.D.S., P.C., 824 A.2d 1140, 1145 (Pa. 2003)), appeal denied, 117 A.3d 298 (Pa. 2015). "[T]o state a prima facie cause of action [for medical malpractice], a plaintiff must demonstrate the elements of negligence: a duty owed by the physician to the patient, a breach of that duty by the physician, that the breach was the proximate cause of the harm suffered, and the damages suffered were a direct result of [the] harm." Stimmler v. Chestnut Hill Hosp., 981 A.2d 145, 154 (Pa. 2009) (quoting Quinby v. Plumsteadville Family Practice, 907 A.2d 1061, 1070-71) (Pa. 2006)). The DOC Defendants argue that Count III should be dismissed as against the DOC, Noel, Oppman, and Dreibelbis because the Complaint does not allege the manner in which the actions or omissions of each of these Defendants were substantial causes of any injury to the

Plaintiffs.  Specifically, they argue that the Complaint does not allege that Plaintiffs' inability to obtain the new DAAD treatments for their Hepatitis C has caused a specific, identifiable injury.

The Complaint alleges that Chimenti has "Stage 4 compensated cirrhosis with chronic liver failure" and "his Model for End-Stage Liver Disease ('MELD') score is 12."[2]  (Compl. ¶ 60.)   The Complaint further alleges that, in 2009, Dr. Abhinav Humar, the Chief Liver Transplant Specialist from the University of Pittsburgh Medical Center, "recommended that Mr. Chimenti be assessed with ultrasounds and CT scans of his liver every six months, and that if [his] 'MELD' score went above 10, that he be evaluated by a hepatologist for the possibility of a liver transplant."  (Id. ¶ 61.)   However, since November 2013, the Defendants[3] have denied Chimenti the treatment he needs to track and stop the effects of his Hepatitis C, including the regular ultrasounds and CT scans recommended by Dr. Humar.  (Id. ¶ 62.)  Moreover, Dreibelbis has failed to have Chimenti seen or evaluated by a hepatologist or a gastroenterologist for treatment of his liver condition.  (Id. ¶ 63.)   The Complaint further alleges that, as a result of Defendants' failure to provide Chimenti with access to DAADs and other medical services for treatment of his Hepatitis C, he "continues to suffer from chronic Hepatitis C infection and the related risks of liver failure and death, and physical and emotional pain and suffering."  (Id. ¶ 68.)   Furthermore, as a result of Chimenti's advanced cirrhosis, he urgently needs medical treatment, because once his liver decompensates, the only possible treatment will be a liver

---

[2]"The MELD score is a measure of mortality risk in patients with end-stage liver disease and is used as a disease severity index to help prioritize allocation of organs for transplant." (Compl. ¶ 60.)

[3]Drawing all inferences in favor of Plaintiffs, we infer that the Complaint's general allegations as to the actions of "Defendants" constitute an allegation that the referenced action or omission was taken by the DOC; by Noel who, as the Chief Medical Director of the DOC, is alleged to be responsible for overseeing the delivery of medical services in the DOC; and by Oppman who, as the Director of BHCS, is responsible for supervising and monitoring medical services in the DOC.  (See Compl. ¶¶ 10-11.)

transplant.  (Id. ¶ 69.)  Given these allegations, we conclude that the Complaint sufficiently alleges that the failure of the DOC, Noel, Oppman and Dreibelbis to provide Chimenti with the appropriate medical care for his Hepatitis C has injured him, as it alleges that because these Defendants denied Chimenti necessary medical care, he continues to suffer from Hepatitis C infection, risks liver failure and death, and may have to undergo a liver transplant.

The Complaint alleges that Leyva has high levels of the Hepatitis C virus, for which he has not been provided treatment with DAADs in spite of his specific requests for such treatment. (Id. ¶¶ 75-78.)  The Complaint further alleges that Oppman personally denied Leyva's request for such treatment.  (Id. ¶ 78.)  The Complaint also alleges that Leyva "currently experiences symptoms of Hepatitis C, including pain, fatigue," and jaundice and that he "requires immediate treatment to prevent any further liver damage."  (Id. ¶ 79.)  We conclude that the Complaint sufficiently alleges that Oppman's failure to provide Leyva with the appropriate medical care for his Hepatitis C has injured him, in that it alleges that because Oppman denied Leyva necessary medical care, he continues to suffer from symptoms of Hepatitis C, including pain, fatigue, and jaundice.

The Complaint alleges that Maldonado had a liver biopsy in 2013, which showed that he had liver fibrosis between stage 1 and stage 2.  (Id. ¶ 83.)  He has not received treatment for his Hepatitis C since December 2013, even though he has requested treatment with DAADs.  (Id. ¶¶ 83-86.)  The Complaint specifically alleges that Maldonado's request for DAAD treatment was denied because of a decision by the DOC and BHCS.  The Complaint further alleges that Maldonado needs immediate treatment to prevent any further liver damage or liver failure as a result of his Hepatitis C.  (Id. ¶ 87.)  We conclude that the Complaint sufficiently alleges that the DOC and Oppman, the Director of the BHCS, have failed to provide Maldonado with the

appropriate medical care for his Hepatitis C and that such failure has injured Maldonado, in that it alleges that because the DOC and BHCS denied Maldonado necessary medical care, he requires immediate treatment of his Hepatitis C to prevent further liver damage or liver failure.

We conclude that the Complaint alleges sufficient facts regarding the harm that all three Plaintiffs have suffered as a result of the actions of the DOC, Noel, Oppman, and Dreibelbis in denying Plaintiffs DAAD treatment to state a facially plausible claim for medical malpractice under Pennsylvania law.  We accordingly deny the DOC Defendants' Motion to Dismiss as to the medical malpractice claim asserted against the DOC, Noel, Oppman, and Dreibelbis in Count III of the Complaint.

In summary, the DOC Defendants' Motion to Dismiss is granted in part and denied in part with respect to Count III of the Complaint.  The Motion is granted as to Wetzel and denied as to the DOC, Noel, Oppman, and Dreibelbis.

E.     Improper Venue

The DOC Defendants argue that the Complaint should be dismissed for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406.[4]  "A defendant seeking to dismiss a case for improper venue under Rule 12(b)(3) bears the burden of demonstrating that venue is improper." Cont'l Materials, Inc. v. Robotex, Inc., Civ. A. No. 14-6941, 2015 WL 1782053, at *2 (E.D. Pa. Apr. 17, 2015) (citing Cargill Cocoa & Chocolate, Inc. v. Abco Labs., Inc., Civ. A. No. 13–6004, 2014 WL 4795028, at *2 (E.D. Pa. Sept. 26, 2014)).

---

[4]Although the DOC Defendants do not specifically rely on 28 U.S.C. § 1406, the Third Circuit  has made it clear that § 1406 governs the venue issue raised in their Motion to Dismiss. See Jumara v. State Farm Ins. Co., 55 F.3d 873, 878 (3d Cir. 1995) ("In federal court, venue questions are governed either by 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406.  Section 1404(a) provides for the transfer of a case where both the original and the requested venue are proper. Section 1406, on the other hand, applies where the original venue is improper and provides for either transfer or dismissal of the case.").

When we decide a motion to dismiss for improper venue, we accept the allegations of the Complaint as true, "'although the parties may submit affidavits in support of their positions,' and [we] must 'draw all reasonable inferences and resolve all factual conflicts in the plaintiff[']s favor.'" Id. (second alteration in original) (quoting Giuliano v. CDSI I Holding Co., Civ. A. No. 13–2776, 2014 WL 1032704, at *1 (E.D. Pa. Mar. 17, 2014)).

Plaintiffs maintain that venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).[5]  We "undertake a two-part inquiry" of the DOC Defendants' challenge to venue under § 1391(b)(2). Lannett Co. v. Asherman, Civ. A. No. 13-2006, 2014 WL 716699, at *3 (E.D. Pa. Feb. 24, 2014). "First, we 'identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims.'" Id. (quoting Chester v. Beard, Civ. A. No. 07–4742, 2008 WL 2310946, at *7 (E.D. Pa. June 2, 2008)). "'The test for determining venue is not the defendant's contacts with a particular district, but rather the location of those events or omissions giving rise to the claim . . . .'" Id. (alteration in original) (quoting Cottman Transmissions Sys. v. Martino, 36 F.3d 291, 294 (3d Cir. 1994)). "Second, we 'determine whether a substantial part of those acts or omissions . . . material to [those] claims . . . have occurred in the district in question.'" Id. (alterations in original) (quoting Chester, 2008 WL 2310946, at *7).

Section 1391(b) provides that "[a] civil action may be brought in -- . . . (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . .

---

[5]The Complaint alleges that venue is proper in this district pursuant to 28 U.S.C. § 1391(g), which clearly does not apply in this case. Plaintiffs argue, in their Response to the Motion to Dismiss, that venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(2). We assume, accordingly, that the reference to § 1391(g) in the Complaint was a typographical error and that Plaintiffs intended to allege venue pursuant to § 1391(b)(2). The DOC Defendants, in their Memorandum, address the propriety of venue in this district solely with respect to § 1391(b)(2).

.”  28 U.S.C. § 1391(b).  The Complaint alleges that venue is appropriate in this district because "substantial events at issue in this litigation occurred in the Eastern District of Pennsylvania." (Compl. ¶ 4.)  Plaintiffs' claims arise from the medical care given to the Plaintiffs and the Defendants' failure to approve the Plaintiffs' requests for treatment with DAAD medications. Plaintiffs maintain that a substantial part of the events giving rise to their claims occurred in this district because one Plaintiff, Maldonado, resides in this district and was denied medical care in this district.  The Complaint alleges that Maldonado is incarcerated in this district and that decisions regarding the medical care for his Hepatitis C infection, including the decision to deny treatment with DAAD medications, were made by individuals employed by the DOC who are also located in this district.  (Id. ¶¶ 7, 14, 15, 84-85.)  Defendants have submitted no evidence regarding the location of Maldonado's medical care or where decisions were made regarding Maldonado's medical care.  Drawing all inferences in favor of the Plaintiffs, we therefore conclude that a substantial part of the events or omissions giving rise to Plaintiffs' claims thus occurred in this district.

The DOC Defendants argue that venue is, however, improper in this district because the formulation of the DOC's policy relating to the treatment of Hepatitis C occurred at the Central Office of the BOP, which is located in the Middle District of Pennsylvania.  Defendants rely on our decision in Chester, in which we stated that, in cases "where plaintiffs challenge state-wide policies, and not merely the actions of state officials in a single county, venue is proper pursuant to Section 1391(b)(2) in the district where those policies are developed."  Chester, 2008 WL 2310946, at *8 (citing Stanton-Negley Drug Co. v. Pa. Dep't of Public Welfare, Civ. A. No. 07-1309, 2008 WL 1881894, at *5 (W.D. Pa. Apr. 24, 2008); Perkins v. Snyder, Civ. A. No. 94-4785, 1994 WL 530045, at *2-3 (E.D. Pa. Sept. 2, 1994); Leroy v. Great W. United Corp., 443

U.S. 173, 185-86 (1979)).   We further concluded in <u>Chester</u> that, under the circumstances presented in that case, the district in which the policy was developed was the only proper venue. <u>Id.</u> <u>Chester</u>, unlike the instant case, involved the constitutionality of the DOC's lethal injection protocol.  <u>Id.</u> at *1-3.  The <u>Chester</u> defendants argued that venue was improper in the Eastern District of Pennsylvania because that protocol was developed solely in the Middle District of Pennsylvania and they submitted evidence (the declaration of the then-Secretary of the DOC) that all of "Pennsylvania's [d]epartmental procedures and policies related to execution by lethal injection are formulated and promulgated solely at DOC headquarters in Camp Hill, Cumberland County, Pennsylvania and [t]he only institution at which those procedures are utilized is SCI-Rockview[,] located in Bellefonte, Centre County, Pennsylvania."  <u>Id.</u> at *7 (internal quotation omitted).  Both Camp Hill and Bellefonte are located in the Middle District of Pennsylvania.  <u>Id.</u> The <u>Chester</u> plaintiffs did not assert that the DOC's lethal injection policies or protocols were developed or carried out in the Eastern District of Pennsylvania.  They asserted only that they were incarcerated and had sought habeas relief in the Eastern District.  <u>Id.</u>  Because the record in that case contained no allegations or evidence that the DOC's lethal injection protocols were developed or carried out in the Eastern District of Pennsylvania, we determined that the Eastern District was "not 'a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.'"  <u>Id.</u> at *8 (quoting 28 U.S.C. § 1391(b)(2)).

The Complaint in this case, unlike the Complaint in <u>Chester</u>, alleges that decisions pursuant to the policy in question were made and carried out in this district, and the Defendants have submitted no evidence to the contrary.  Indeed, the DOC Defendants have supplied no evidence whatsoever in support of their position that their policy regarding the treatment of Hepatitis C was formulated in the Middle District of Pennsylvania.  We thus conclude that the

DOC Defendants have failed to satisfy their burden of demonstrating that venue is improper in this district.  Drawing all inferences in favor of the Plaintiffs, we further conclude that venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(2).  We therefore deny the DOC Defendants' Motion to Dismiss to the extent that it seeks dismissal of the Complaint for improper venue pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406.

F.      Request to Transfer

The DOC Defendants ask, in the alternative, that we transfer this action to the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1404.  Section 1404 provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  "The district court has broad discretion in deciding a motion for transfer of venue."  Synthes, Inc. v. Knapp, 978 F. Supp. 2d 450, 458 (E.D. Pa. 2013) (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)). "'The burden of establishing the need for transfer [under § 1404(a)] . . . rests with the movant.'" Thompson v. Glob. Mktg. Research Servs., Inc., Civ. A. No. 15-3576, 2016 WL 233702, at *3 (E.D. Pa. Jan. 20, 2016) (alteration in original) (quoting Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995)).  "[T]he Third Circuit has explicitly stated that defendants have the burden of proof to support their motion to transfer with any affidavits, depositions, stipulations, or other documents containing facts that would tend to establish the necessary elements for a transfer under 28 U.S.C. § 1404(a)."  Argro v. Marriott Int'l, Inc., Civ. A. No. 13-5507, 2014 WL 2572804, at *2 (E.D. Pa. June 6, 2014) (referring to Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756-57 (3d Cir. 1973) (quotation omitted)); see also Plum Tree, 488 F.2d at 756-57 (determining that defendants failed to satisfy their burden of proof with respect to their motion to

transfer because they failed to support their motion "with any affidavits, depositions, stipulations, or other documents containing facts that would tend to establish the necessary elements for a transfer under 28 U.S.C. § 1404(a)").

Our first obligation under § 1404 is to determine whether this action could have been brought in the Middle District of Pennsylvania, the proposed transferee district.  See 28 U.S.C. § 1404(a).  None of the parties argues that venue would not be appropriate in the Middle District of Pennsylvania and we therefore accept as undisputed that this action could have been brought in that district.   "Once it is determined that a case could have been brought in the proposed transferee district, a court must weigh a variety of private and public factors to determine whether the matter should be transferred under 28 U.S.C. § 1404(a)."  Swill Beverages, LLC v. U.S. Distilled Prods. Co., Civ. A. No. 15-5181, 2015 WL 9191470, at *1 (E.D. Pa. Dec. 17, 2015).

> The private [factors] include:  "plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses -- but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)."

> The public [factors] include:  "[T]he enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases."

Thompson, 2016 WL 233702, at *3 (third alteration in original) (quoting Jumara, 55 F.3d at 879-80).

We first address the private factors.  The record before us shows that Plaintiffs' forum preference is the Eastern District of Pennsylvania and the DOC Defendants' preference is the

26

Middle District of Pennsylvania. The Third Circuit has instructed that, when we rule on a motion brought pursuant to § 1404, "'the plaintiff's choice of venue should not be lightly disturbed.'" Buckeye Pennsauken Terminal LLC v. Dominique Trading Corp., -- F. Supp. 3d --, 2015 WL 9267386, at *3 (E.D. Pa. Dec. 21, 2015) (quoting Jumara, 55 F.3d at 879). "While not dispositive, Plaintiff's choice of forum is entitled to significant weight." AT&T Corp. v. PA, Inc., 935 F. Supp. 584, 593 (E.D. Pa. 1996) (citing Jumara, 55 F.3d at 879). Therefore, we conclude that the first two private factors, i.e., the parties' preferences, when considered together weigh against transferring this action to the Middle District of Pennsylvania.

The DOC Defendants argue that the next two factors support transfer because Plaintiffs' claims arose in the Middle District of Pennsylvania and trial of this action would be more convenient for the parties in the Middle District. Specifically, Defendants argue that the formulation of the DOC policy relating to the treatment of Hepatitis C took place in the Middle District of Pennsylvania and that several Defendants and two Plaintiffs are located in that district. Defendants also contend, in their Brief, that the fifth and final private factor – the location of records – weighs in favor of transfer because records with respect to the formulation of the DOC's policy are located in the Middle District. Defendants make no argument with respect to the fourth private factor, the location of witnesses.

Defendants, however, have submitted no "affidavits, depositions, stipulations, or other documents containing facts that would tend to establish the necessary elements for a transfer under 28 U.S.C. § 1404(a)." Argro, 2014 WL 2572804, at *2 (quotation omitted). In the absence of such evidence, we base our analysis of where Plaintiffs' claims arose and the location of the parties, witnesses and records on the allegations of the Complaint. As we discussed, supra, the Complaint alleges that Maldonado is incarcerated in this District and that decisions

27

were made about his treatment for Hepatitis C by Defendants who are also located in this District.  (See Compl. ¶¶ 7, 14, 15, 84-85.) The Complaint also alleges that Maldonado has received treatment for his Hepatitis C in the Western District of Pennsylvania and that his appeal of his grievance with respect to his medical treatment was denied in the Middle District of Pennsylvania.  (Id. ¶¶ 83, 86.)  The Complaint alleges that Chimenti is incarcerated in the Middle District of Pennsylvania, that individuals located in the Middle District of Pennsylvania have made decisions about his medical care, and that he has been treated for his Hepatitis C in the Western District of Pennsylvania.  (Id. ¶¶ 52, 59, 61, 63.)  The Complaint further alleges that Leyva is incarcerated in the Middle District of Pennsylvania, that he was first diagnosed with Hepatitis C while he was incarcerated in the Western District of Pennsylvania, and that decisions regarding his medical care have been made in the Middle District of Pennsylvania.  (Id. ¶¶ 71-72. 77-78.)

We find, based on these allegations, that Plaintiffs' claims arose in both the Eastern and Middle Districts of Pennsylvania.  We conclude that this private factor thus does not favor or disfavor transferring this action to the Middle District of Pennsylvania.  We further find, based on the allegations of the Complaint, that there are witnesses who may know of facts relevant to Plaintiffs' claims who are located in the Eastern, Middle and Western Districts of Pennsylvania. This private factor is thus neutral, not only because witnesses are located in all three districts in this state, but also because the DOC Defendants do not assert that the witnesses who are located outside of this district would be unavailable for trial here.  We also infer from the allegations of the Complaint that there are records of Plaintiffs' medical treatment that are relevant to their claims that are located in all three districts, and Defendants do not argue that any of the records relevant to Plaintiffs' claims, including those relating to the formation of the DOC's policy,

cannot be produced in this district.  We thus conclude that this private factor also does not weigh in favor of transferring this action to the Middle District of Pennsylvania.  We conclude, based upon Defendants' assertions, the allegations of the Complaint, and the inferences we may draw from those allegations, and in the absence of any evidence submitted by Defendants in support of their request for transfer, that the private factors as a whole do not support transfer of this action to the Middle District of Pennsylvania.

The DOC Defendants make no argument regarding the public factors.  We nonetheless observe any judgment of this Court should be equally enforceable in the Middle District of Pennsylvania, that we have significant local interest in deciding the controversy since one of the Plaintiffs is located in this District, and that we are also aware of no practical considerations that would make trial in this district less easy, expeditious, or inexpensive than trial in the Middle District.  Moreover, because the DOC Defendants request an intra-state transfer, both the original and transferee courts are equally familiar with the applicable state law and there are no applicable differences in public policy.  Accordingly, we conclude that the public factors also do not weigh in favor of transferring this action to the Middle District of Pennsylvania.  We further conclude that the DOC Defendants have not satisfied their burden of establishing the need to transfer this action under § 1404(a).  See Thompson, 2016 WL 233702, at *3.  We thus deny the DOC Defendants' request that we transfer this action to the Middle District of Pennsylvania pursuant to § 1404(a).

## III.     THE MEDICAL DEFENDANTS' MOTION TO DISMISS AND SEVER

Defendants Correct Care Solutions, Dr. Kephart, Dr. Weiner, Andrew Dancha, Dr. John Hochberg, Dr. Nicholas Scharff, Wexford Health Sources, Inc., and Dr. Thomas Lehman, i.e., the Medical Defendants, seek dismissal of all of the claims asserted against them pursuant to

Rule 12(b)(6) on the ground that the Complaint does not satisfy the pleading standard applicable to civil rights claims.  They also move to dismiss the claims against them on the ground that the Complaint does not allege facts that would establish that any of them had personal involvement in the violations of Plaintiffs' Eighth Amendment rights. The Medical Defendants further move for severance of the Plaintiffs' claims on the ground that their claims cannot be joined in the same action pursuant to Federal Rule of Civil Procedure 20.

      A.     The Motion to Dismiss[6]

            1.     The appropriate pleading standard

The Medical Defendants argue that the Complaint should be dismissed in its entirety because it fails to plead Plaintiffs' claims against them with the requisite factual specificity.  The Medical Defendants contend that civil rights complaints must be pled with "a higher degree of specificity."  Agresta v. City of Philadelphia, 694 F. Supp. 117, 119-20 (E.D. Pa. 1988) (citing Hall v. Pennsylvania State Police, 570 F.2d 86, 89 (3d Cir. 1978)).  The Medical Defendants are, however, incorrect.  There are no special pleading standards for civil rights complaints.  See Evancho v. Fisher, 423 F.3d 347, 351-52 (3d Cir. 2005) (stating that the heightened pleading standard for civil rights complaints, which was required prior to 1993, no longer applies because, in 1993, the Supreme Court "held that a federal court may not" require a "'heightened pleading standard -- more stringent than the usual pleading requirement of Rule 8(a) . . . in civil rights cases . . . .'" (quoting Leatherman v. Tarrant Cty. Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993))).  We therefore deny the Medical Defendants' Motion to Dismiss as to

---

[6]The Medical Defendants Motion to Dismiss purports to seek dismissal of the entire Complaint, but only includes arguments and legal authority concerning § 1983.  As Count I is the only Count asserting a claim pursuant to § 1983, we construe the Motion as seeking only dismissal of Count I.

their argument that the Complaint should be dismissed because it fails to satisfy a heightened pleading standard.

> 2.     <u>Vicarious liability as to the individual Medical Defendants</u>

The Medical Defendants have also moved to dismiss Count I of the Complaint as against Kephart, Weiner, Dancha, Hochberg, Scharff and Lehman, on the ground that the Complaint alleges only that they were vicariously liable for the violations of Plaintiffs' rights and does not allege that they each had personal involvement in any such violations. The Medical Defendants are correct that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."[7]  <u>Iqbal</u>, 556 U.S. at 676.  However, <u>Iqbal</u> did not "abolish[] supervisory liability in its entirety." <u>Barkes v. First Corr. Med., Inc.</u>, 766 F.3d 307, 319 (3d Cir. 2014), <u>overruled on other grounds sub nom.</u> <u>Taylor v. Barkes</u>, -- U.S. --, 135 S. Ct. 2042 (2015). Supervisors "may be liable for unconstitutional acts undertaken by subordinates" in two ways. <u>Id.</u> at 316. "First, liability may attach if they, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" <u>Id.</u> (alteration in original) (quoting <u>A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.</u>, 374 F.3d 572, 586 (3d Cir. 2004)). "Second, 'a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct.'" <u>Id.</u> (quoting <u>A.M.</u>, 372 F.3d at 586). The Third Circuit has further explained that, in the first situation, "a state official, by virtue of his or her *own* deliberate indifference to *known* deficiencies in a government policy or procedure, has allowed to develop an environment in

---

[7]The Medical Defendants do not deny that Kephart, Weiner, Dancha, Hochberg, Scharff, and Lehman are all state actors for purposes of § 1983 liability.

which there is an unreasonable risk that a constitutional injury will occur, and that such an injury *does* occur." Id. at 320. "Liability in such a situation is, as Iqbal requires, imposed not vicariously but based on the supervisor's own misconduct, because to exhibit deliberate indifference to such a situation is a culpable mental state under the Eighth Amendment." Id. (citing Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011)).

As we discussed supra, violation of the Eighth Amendment by deliberate indifference to a prisoner's serious medical needs "can be shown by [defendant] 'intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.'" Rhines, 388 F. App'x at 227 (quoting Estelle, 429 U.S. at 104–05). "A medical need is serious if it 'has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Lanzaro, 834 F.2d at 347). Moreover, the medical need must be such that "a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death." Tsakonas, 308 F. App'x at 632.

The Complaint alleges that Kephart "is the Medical Director at SCI Smithfield and is responsible for providing health care to inmates there." (Compl. ¶ 12.) The Complaint further alleges that, even though Dr. Humar recommended that Chimenti "be assessed with ultrasounds and CT scans of his liver every six months," Kephart denied Chimenti "the necessary treatment to track and halt the deleterious effects of Hepatitis C, including regular ultrasounds and CT scans, which are medically necessary for individuals with Stage 4 cirrhosis." (Id. ¶¶ 61-62.) The Complaint also alleges that, even though Chimenti has a MELD score of 12, and Dr. Humar recommended that he be evaluated by a hepatologist regarding the need for a liver transplant if his MELD score exceeded 10, Kephart has failed "to have Mr. Chimenti seen or evaluated by a hepatologist . . . for proper treatment of his liver condition." (Id. ¶¶ 60-61, 63.) In light of these

allegations, we conclude that the Complaint plausibly alleges that Kephart personally denied Chimenti access to medical care for his serious medical needs.  Accordingly, we further conclude that the Complaint alleges sufficient facts to state a claim that Kephart personally participated in violating Chimenti's Eighth Amendment rights by acting with deliberate indifference to Chimenti's serious medical needs.  We thus deny the Medical Defendants' Motion to Dismiss Count I of the Complaint as to Kephart.

The Complaint alleges that "Weiner is the Medical Director at SCI Graterford and is responsible for providing health care to inmates there."  (Id. ¶ 14.)  The Complaint further alleges that Maldonado, who has been diagnosed with liver fibrosis between Stage 1 and Stage 2, and who requires immediate treatment of that condition to prevent further liver damage or liver failure, asked Weiner for DAAD treatment and his request was denied.  (Id. ¶¶ 83-84, 87.) Construing these allegations in the light most favorable Plaintiffs, we conclude that the Complaint alleges that Weiner personally denied Maldonado access to necessary medical treatment for his serious medical needs.  Accordingly, we further conclude that the Complaint alleges sufficient facts to state a claim that Weiner personally participated in violating Maldonado's Eighth Amendment rights by acting with deliberate indifference to Maldonado's serious medical needs.  We accordingly deny the Medical Defendants' Motion to Dismiss Count I of the Complaint as to Weiner.

The Complaint alleges that Dancha "is the Regional Medical Director for Correct Care Solutions, and is responsible for overseeing the delivery of medical services in DOC through Correct Care Solution's Central Region, including SCI Smithfield."  (Id. ¶ 18.)  The Complaint alleges that Lehman "was the Medical Director of Wexford Health Source[,]" which was the medical provider for the DOC prior to Correct Care Solutions.  (Id. ¶¶ 20-21.)  The Complaint

further alleges that both Dancha and Lehman "failed with deliberate indifference to have Mr.

Chimenti seen or evaluated by a hepatologist or a gastroenterologist for proper treatment of his

liver condition."   (Id. ¶ 63.)   However, the Complaint does not allege that either Dancha or

Lehman had any personal role in the delivery of medical care at SCI Smithfield, were personally

aware of Chimenti's medical condition, or that either Dancha or Lehman   "'intentionally

den[ied] or delay[ed] [Chimenti's] access to medical care or intentionally interfer[ed] with the

treatment once prescribed.'" Rhines, 338 F. App'x at 227 (quoting Estelle, 429 U.S. at 104–05).

We conclude that the Complaint does not allege that either Dancha or Lehman "participated in

violating [Chimenti's] rights, directed others to violate them, or, as the person in charge, had

knowledge of and acquiesced' in [a] subordinate's unconstitutional conduct.'" Barkes, 766 F.3d

at 319 (quoting A.M., 372 F.3d at 586); see also Lopez v. Corr. Med. Servs., Inc., 499 F. App'x

142, 146 (3d Cir. 2012) (stating that "we have found deliberate indifference to a prisoner's

serious medical needs only where a prison official knows of a prisoner's need for medical

treatment but intentionally refuses to provide it, delays necessary medical treatment for a non-

medical reason, or prevents a prisoner from receiving needed medical treatment" (citing Rouse v.

Plantier, 182 F.3d 192, 197 (3d Cir. 1999))).   The Complaint also does not allege that either

Dancha or Lehman had any involvement in establishing or maintaining any policies, practices, or

customs regarding the treatment of Hepatitis C in the DOC inmate population.   Consequently, we

conclude that the Complaint does not allege that Dancha and Lehman were personally involved

in "'establish[ing] and maintain[ing] a policy, practice or custom which directly caused [the]

constitutional harm.'"   Barkes, 766 F.3d at 319 (third alteration in original) (quoting A.M., 372

F.3d at 586).   We further conclude, accordingly, that the Complaint does not allege sufficient

facts to plausibly state § 1983 claims against Dancha and Lehman for violating Chimenti's

Eighth Amendment rights by acting with deliberate indifference to Chimenti's serious medical needs.  We thus grant the Medical Defendants' Motion to Dismiss Count I of the Complaint as to Dancha and Lehman.

The Complaint alleges that Hochberg "is the Assistant Medical Director for Correct Care Solutions' Regional Office, and is responsible for overseeing the delivery of medical services in DOC through Correct Care Solution's Central Region."  (Compl. ¶ 19.)  The Complaint alleges that Scharff "is the Medical Director for Correct Care Solutions in Pennsylvania, and in that capacity is responsible for providing adequate medical care of Plaintiffs and those similarly situated."  (Id. ¶ 17.)  The Complaint does not allege that either Hochberg or Scharff were personally aware of the medical conditions of any of the Plaintiffs or that either of them had any personal involvement in the medical treatment of, or denial of treatment to, any of the Plaintiffs.  The Complaint also does not allege that either Hochberg or Scharff had any involvement in establishing or maintaining any policies, practices, or customs regarding the treatment of Hepatitis C in the DOC inmate population.  We conclude, accordingly, that the Complaint does not allege sufficient facts to state a plausible § 1983 claim against either Hochberg or Scharff for violating the Eighth Amendment rights of any of the Plaintiffs by acting with deliberate indifference to the serious medical needs of any of the Plaintiffs.  See Lopez, 499 F. App'x at 146 (citing Rouse, 182 F.3d at 197); see also Barkes, 766 F.3d at 319 (quoting A.M., 372 F.3d at 586).  We consequently grant the Medical Defendants' Motion to Dismiss Count I of the Complaint as to Hochberg and Scharff.

> 3.     Vicarious Liability as to Correct Care Solutions and Wexford Health
>         Sources, Inc.

The Medical Defendants have also moved to dismiss Count I of the Complaint as against the corporate Medical Defendants, Correct Care Solutions and Wexford Health Sources, Inc., on

the ground that the Complaint alleges only that they were vicariously liable for the violation of Plaintiffs' rights and does not allege that these corporations maintained policies that directly caused Plaintiffs' injuries.    However, contrary to the Medical Defendants apparent understanding, Wexford Health Sources, Inc. is not named as a Defendant in Count I of the Complaint.[8]   As we cannot dismiss a claim that does not exist, we deny the Motion to Dismiss Count I of the Complaint as to Wexford Health Sources, Inc., and we analyze the Medical Defendants' argument only as to Correct Care Solutions.

It is well settled that a municipal entity cannot be sued under § 1983 for the constitutional torts of its employees. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).  This rule has been extended to private corporations operating under a contract with the state.  See Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).  Indeed, the Third Circuit has made it clear that a private company that provides medical services to inmates at state facilities "'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'"   Sims v. Wexford Health Sources, -- F. App'x --, 2015 WL 9267942, at *2 (3d Cir. 2015) (quoting Natale, 318 F.3d at 583).  Therefore, in order to state a § 1983 claim against Correct Care Solutions, the Complaint must allege "facts to state a claim that [Correct Care Solutions] had a policy, custom, or practice, and that the policy, custom, or practice caused the constitutional violation at issue."   Id. (citing Natale, 318 F.3d at 583-84).   See also Stankowski v. Farley, 251 F. App'x 743, 748 (3d Cir. 2007) (stating that a private corporation providing medical care inside a prison may not be held liable for the "constitutional violations committed by its employees, unless [it] has adopted a policy, practice or custom that caused the constitutional violations alleged." (citing Monell, 436 U.S. at 690; Woodward v. Corr. Med.

---

[8]Wexford Health Sources, Inc. is named as a Defendant only as to Count IV of the Complaint, which alleges a claim against it for medical malpractice.

Servs., 368 F.3d 917, 927 (7th Cir. 2004))); and see Ozoroski v. Maue, 460 F. App'x 94, 97-98 (3d Cir. 2012) ("To establish Eighth Amendment liability against a private employer . . . the prisoner must 'provide evidence that there was a relevant [corporate] policy or custom . . . that . . . caused the constitutional violation [he] allege[s]'" (second through fifth alterations in original) (quoting  Natale 318 F.3d at 584)).

The Complaint does not allege that Correct Care Solutions established a corporate policy or had a corporate practice or custom with respect to the provision of DAADs to inmates with Hepatitis C.  The Complaint also does not allege that any such policy, custom, or practice of Correct Care Solutions caused the violations of Plaintiffs' Eighth Amendment rights.   We therefore conclude that the Complaint does not allege sufficient facts to state a plausible § 1983 claim against Correct Care Solutions for deliberate indifference to Plaintiffs' serious medical needs in violation of the Eighth Amendment and we grant the Medical Defendants' Motion to Dismiss Count I of the Complaint as against Correct Care Solutions on this basis.

In summary, we deny the Medical Defendants' Motion to Dismiss Count I of the Complaint as to Kephart, Weiner, and Wexford Health Sources, Inc., and grant it as to Dancha, Hochberg, Scharff, Lehman and Correct Care Solutions.  Count I is thus dismissed as against Dancha, Hochberg, Scharff, Lehman and Correct Care Solutions.[9]  To the extent that the Medical Defendants may have intended to move to dismiss Counts II through IV of the Complaint pursuant to Rule 12(b)(6) because those counts allege only vicarious liability on the part of the Medical Defendants, we deny the Motion because the Medical Defendants have cited no authority to support the proposition that they cannot be held vicariously liable for violations of Article 1, § 13 of the Pennsylvania Constitution or for medical malpractice.

---

[9]We need not dismiss Count I as to Wexford Health Sources because, as explained supra, Wexford Health Sources is not named as a Defendant in that Count.

B.    <u>Motion to Sever</u>

The Medical Defendants also contend that we should sever Plaintiffs' claims from one another because they do not satisfy the requirements for permissive joinder pursuant to Federal Rule of Civil Procedure 20.  Rule 20 provides that "[p]ersons may join in one action as plaintiffs if:  (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action."  Fed. R. Civ. P. 20(a)(1).  Federal Rule of Civil Procedure 21 provides that, if parties have been misjoined, we "may at any time, on just terms, add or drop a party."  Fed. R. Civ. P. 21.  The Medical Defendants argue that Plaintiffs' claims must be severed because none of the elements required by Rule 20(a)(1) are present in this case since the three Plaintiffs have very different medical conditions, have been treated by different medical personnel, and do not claim that they were harmed as a result of their own participation in a joint enterprise.

"'A district court has broad discretion in deciding whether to sever a party pursuant to Federal Rule of Civil Procedure 21.'" <u>Cooper v. Fitzgerald</u>, 266 F.R.D. 86, 88 (E.D. Pa. 2010) (quoting <u>Boyer v. Johnson Matthey, Inc.</u>, Civ. A. No. 02–8382, 2004 WL 835082, at *1 (E.D. Pa. Apr. 16, 2004)).  "For courts applying Rule 20 and related rules, 'the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'"  <u>Hagan v. Rogers</u>, 570 F.3d 146, 153 (3d Cir. 2009) (quoting <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 724 (1966)).  "Rule 20 permits 'the joinder of a person who has some interest in an action . . ., even when that interest is not so strong as to require his joinder' under Rule 19."  <u>Id.</u> (alteration in original) (quoting <u>Field v. Volkswagenwerk AG</u>, 626 F.2d 293, 299 (3d Cir. 1980)).

38

"The first element of Rule 20(a), the 'same transaction' or transactional relatedness prong, refers to the similarity in the factual background of the relevant claims." Cooper, 266 F.R.D. at 88 (citing Coughlin v. Rogers, 130 F.3d 1348, 1350 (9th Cir. 1997)).   "'Courts generally apply a case-by-case approach when considering whether the facts of several claims constitute a single transaction or occurrence, or a series of transactions or occurrences.'" Id. (quoting Lopez v. City of Irvington, Civ. A. No. 05-5323, 2008 WL 565776, at *2 (D.N.J. Feb. 28, 2008)).  "Significantly, '[t]ransaction is a word of flexible meaning, which may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection, as upon their logical relationship.'" Id. (alteration in original) (quoting Al Daraji v. Monica, Civ. A. No. 07-1749, 2007 WL 2994608, at *8 (E.D. Pa. Oct. 21, 2007)).   "In determining whether a logical relationship exists between claims, the Third Circuit has stated that courts must engage in 'a detailed analysis . . . to determine whether the claims involve: (1) many of the same factual issues; (2) the same factual and legal issues; or (3) offshoots of the same basic controversy between the parties.'" Russell v. Chesapeake Appalachia, L.L.C., 305 F.R.D. 78, 81 (M.D. Pa. 2015) (alteration in original) (quoting Xerox Corp. v. SCM Corp., 576 F.2d 1057, 1059 (3d Cir. 1978)).

The Plaintiffs' claims in this case all involve the same alleged DOC policy and practice to "den[y] necessary medical care for inmates diagnosed with Hepatitis C viral infections, thereby placing them at substantial and unnecessary risk for severe illness, injury and death." (Compl. ¶ 1.)  The Complaint alleges that all three of the Plaintiffs, who are inmates in State Correctional Institutions run by the DOC, have Hepatitis C and suffer from "serious health complications" arising from their Hepatitis C infections.  (Id. ¶ 2.)  The Complaint further alleges that Correct Care Solutions is the current health care provider for all State Correctional

39

Institutions run by the DOC and that Wexford Health Sources, Inc. was the previous health care provider for those institutions.  (Id. ¶¶ 16, 20.)  The Complaint also alleges that, notwithstanding Plaintiffs' serious medical conditions, "the DOC and other Defendants have refused to provide medical treatment to Plaintiffs and others incarcerated in the DOC with Hepatitis C infections that is consistent with current and prevailing medical standards."  (Id. ¶ 2.)  Plaintiffs have brought claims arising from the Defendants' alleged denial of the appropriate medical treatment for their serious medical conditions for violation of their rights under the Eighth Amendment and the Pennsylvania Constitution and for medical malpractice.  We conclude that all three Plaintiffs' claims will involve many of the same factual and legal issues regarding the existence of the DOC's policy to deny medical care, whether said policy actually resulted in the denial of medical care to Plaintiffs and, if so, whether that denial of medical care amounted to medical malpractice and/or a violation of Plaintiffs' rights under the Eighth Amendment.  Consequently, a logical relationship exists between the claims raised by all three Plaintiffs such that the first prong of Rule 20(a)(1) is satisfied.  This relationship also satisfies the second prong of Rule 20(a)(1).  See Garcia v. Brock-Weinstein, Civ. A. No. 13-7487, 2014 WL 2957487, at *2 (E.D. Pa. July 1, 2014) ("'The thing which makes the relationship logical is some nucleus of operative facts or law -- the second prong of the 20(a) test.'"  (quoting Hanley v. First Investors Corp., 151 F.R.D. 76, 79 (E.D. Tex. 1993))).  We conclude, accordingly, that the Plaintiffs' claims satisfy the requirements for permissive joinder pursuant to Rule 20 and thus have not been misjoined in this lawsuit.  Consequently, we deny the Medical Defendants' Motion to Sever their claims.

## IV.   CONCLUSION

For the foregoing reasons, the Motions to Dismiss are granted in part and denied in part as follows.  The DOC Defendants' Motion to Dismiss as to Count I of the Complaint is granted

as to Noel and the § 1983 claim asserted in that Count is dismissed as to Noel.  The DOC Defendants' Motion to Dismiss as to Count I of the Complaint is denied as to Wetzel, Dreibelbis, and Korszniak.  The DOC Defendants' Motion to Dismiss as to Count II of the Complaint is denied.  The DOC Defendants' Motion to Dismiss as to Count III of the Complaint is granted as to Wetzel and denied as to the DOC, Noel, Oppman, and Dreibelbis.  The DOC Defendants' Motion to Dismiss is also denied as to their argument that venue is improper in this district and we further deny their request that we transfer this case to the Middle District of Pennsylvania.

The Medical Defendants' Motion to Dismiss as to Count I of the Complaint is granted as to Dancha, Hochberg, Scharff, Lehman and Correct Care Solutions and is denied as to Kephart, Weiner, and Wexford Health Source, Inc.  The Medical Defendants' Motion to Dismiss and Sever is denied in all other respects.

An appropriate order follows.


BY THE COURT:

/s/John R. Padova
_____
John R. Padova, J.