**IN THE UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SALVATORE CHIMENTI, DANIEL LEYVA, DAVID MALDONADO, and all others similarly situated,** | : <br> : <br> : <br> : |
| **Plaintiffs,** | : <br> : <br> : <br> : |
| **PENNSYLVANIA DEPARTMENT CORRECTIONS; JOHN WETZEL, Secretary, Pennsylvania Department of Corrections; PAUL NOEL, Chief Medical Director, Pennsylvania Department of Corrections; RICH WENHOLD, Infection Control Coordinator, Pennsylvania Department of Corrections; CORRECT CARE SOLUTIONS; DR. JAY COWAN, Medical Director, Correct Care Solutions; DR. JOHN KEPHART, Medical Director (former), SCI Smithfield; DR. JAMES FROMMER; Medical Director, SCI Smithfield, WEXFORD HEALTH SOURCES, INC.** | : **Civil Action No. 15-3333** <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |
| **Defendants.** | : |

**FIRST AMENDED
CLASS ACTION COMPLAINT**

**INTRODUCTION**

1.      The Pennsylvania Department of Corrections (DOC), by policy and practice, systemically denies necessary medical care for inmates diagnosed with Chronic Hepatitis C viral infections, thereby placing them at substantial and unnecessary risk for severe illness and death. Since 2014, with the approval by the Federal Drug Administration of "breakthrough" Direct Acting Anti-Virals ("DAAD"), a full cure is available for persons with Hepatitis C, with no adverse side-effects. Major medical associations, Medicare, the Veterans Administration, and

private health insurance companies provide DAAD to <u>all</u> persons with chronic Hepatitis C.  Yet, the DOC rations these drugs in an arbitrary manner, and refuses to provide DAAD treatment to over 98% of inmates with chronic Hepatitis C in the DOC.  The denial of these drugs is based solely on their costs, and without any medical justification.

2.      Plaintiffs Salvatore Chimenti, Daniel Leyva, and David Maldonado are incarcerated in the Pennsylvania Department of Corrections with serious health complications stemming from their Hepatitis C viral infections.  The Defendants have refused to provide necessary medical treatment to Plaintiffs and others incarcerated in the DOC with Hepatitis C infections that is mandated by prevailing community medical standards and the Constitutions and laws of the United States and Pennsylvania.  Plaintiffs bring this action on behalf of themselves and a class of similarly-situated plaintiffs, pursuant to 42 U.S.C. § 1983 and state laws against the DOC, prison officials, and medical providers for depriving them of their rights guaranteed by the Eighth Amendment of the United States Constitution, Article I, § 13 of the Pennsylvania Constitution, and Pennsylvania Law.

## JURISDICTION AND VENUE

3.      Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and the Eighth Amendment of the United States Constitution, and 28 U.S.C. §§ 1331 and 1343.  The Court has supplemental jurisdiction under 28 U.S.C 1367(a) to adjudicate the Pennsylvania state law and constitutional claims.

4.      Venue is appropriate in this district pursuant to 28 U.S.C. 1391(g) since substantial events at issue in this litigation occurred in the Eastern District of Pennsylvania.

**PARTIES**

5.      Plaintiff Salvatore Chimenti is an adult individual currently incarcerated at the Pennsylvania State Correctional Institution at Smithfield (SCI Smithfield).  Mr. Chimenti sues for injunctive and declaratory relief on behalf of himself and on behalf of a class of plaintiffs who are currently or will in the future be subject to Defendant DOC's discriminatory and unconstitutional policy for treating Hepatitis C infections.  Mr. Chimenti also seeks money damages for the longstanding violations of his right to medical care.

6.      Plaintiff Daniel Leyva is an adult individual currently incarcerated at the State Correctional Institution at Retreat (SCI Retreat).  He sues for injunctive and declaratory relief on behalf of himself and on behalf of a class of plaintiffs who are currently or will in the future be subject to Defendant DOC's discriminatory and unconstitutional policy for treating Hepatitis C infections.

7.      Plaintiff David Maldonado is an adult individual currently incarcerated at the State Correctional Institution at Graterford (SCI Graterford).  He sues for injunctive and declaratory relief on behalf of himself and on behalf of a class of plaintiffs who are currently or will in the future be subject to Defendant DOC's discriminatory and unconstitutional policy for treating Hepatitis C infections.

8.      Defendant Pennsylvania Department of Corrections (DOC) is an agency of the Commonwealth of Pennsylvania that operates SCI Smithfield, SCI Retreat, and SCI Graterford, among other correctional institutions.  The DOC is responsible for providing adequate medical health services to and creating policies that ensure appropriate medical treatment to Plaintiffs and those similarly situated.

9.      Defendant John Wetzel is the Secretary of the DOC. He is responsible for all the oversight, operation, and administration of the Commonwealth's correctional system, including providing appropriate medical treatment and the formulation of policies that ensure the provision of that treatment to Plaintiffs and those similarly situated. He is sued in his individual and official capacities. At all relevant times, Defendant Wetzel has acted and will continue to act under color of state law.

10.     Defendant Paul Noel is the Chief Medical Director of the DOC and has responsibility in overseeing the delivery of medical services in the DOC, and in particular in providing medical treatment for inmates with Hepatitis C. Dr. Noel serves on the DOC Hepatitis C Treatment Committee that makes the final medical determination for inmates with Hepatitis C. Defendant Noel is sued in his individual and official capacities. He has acted and will continue to act under color of state law.

11.     Defendant Rich Wenhold is the Infection Control Coordinator at the DOC and serves on the DOC Hepatitis C Treatment Committee. He is sued in his official and individual capacities. He has acted and will continue to act under color of state law.

12.     Defendant Correct Care Solutions ("CCS") is the current health care provider for all DOC facilities. The principal office for Correct Care Solutions is in Nashville, Tennessee, with an office as well in Pennsylvania. Correct Care Solutions began providing health care services to the Pennsylvania DOC on September 1, 2014. At all relevant times, Correct Care Solutions has acted and will act under the color of state law.

13.     Defendant Jay Cowan is the statewide Medical Director for Defendant Correct Care Solutions, the medical provider/vendor for medical services within the DOC. Defendant

Cowan serves on the DOC Hepatitis C Treatment Committee, and has acted and will continue to act under color of state law.  He is sued in his individual and official capacities.

14.     Dr. John Kephart is a physician and was the Medical Director at SCI Smithfield during relevant time periods of treatment of the plaintiffs.  He is sued in his official and individual capacities, and acted under color of state law.

15.     Dr. James Frommer is a physician and is the Medical Director at SCI Smithfield during relevant time periods of treatment of the plaintiffs.  He is sued in his official and individual capacities and acted under color of state law.

16.     Defendant Wexford Health Sources Inc. was the previous health care provider for all DOC facilities.  The principal office for Wexford Health Sources is in Pittsburgh, Pennsylvania.  At all relevant time, Defendant Wexford Health Sources has acted and will act under the color of state law.

## FACTS

**The Hepatitis C Epidemic**

17.     Hepatitis C is a viral infection, primarily spread through contact with infected blood that attacks the liver and causes hepatitis, or liver inflammation, which can significantly impair the liver's ability to assist the body in digesting essential nutrients, filter toxins from the blood, and prevent disease.

18.     Hepatitis C infections are of multiple genotypes and can be of an acute or chronic nature.  An acute infection, a short-term illness, occurs within the first six months of exposure to the virus and, for most persons exposed to the virus, leads to chronic Hepatitis C infection.

19.     Chronic Hepatitis C infections are serious, long-term illnesses that can last throughout a person's life. Hepatitis C is the leading cause of cirrhosis (irreversible scarring of

liver tissue) and liver cancer and is the most common cause of liver transplants. Chronic Hepatitis C infection can cause serious chronic liver disease, liver fibrosis (scarring of liver tissue), and death, as well as extrahepatic conditions such as diabetes, heart disease, fatigue, depression, muscle and nerve damage, nausea, and problems with concentration and memory. For persons with chronic Hepatitis C, each day without treatment increases the likelihood of these conditions.

20.     Hepatitis C is the leading infectious disease killer in the United States, killing nearly 20,000 persons annually of the more than five million persons with Hepatitis C (a death rate greater than the next sixty infectious diseases combined).

21.     Liver transplants are painful, carry a risk of significant complications, are nearly impossible for prisoners to obtain, and result in lower recovery rates than treatment with direct-acting antiviral drugs.

22.     By not providing necessary medical care, Defendants' cause immediate and substantial risks to Plaintiffs and those similarly situated with death and other irreparable harm stemming from their chronic Hepatitis C infections. Plaintiffs and members of the proposed class, which number more than 5,400 inmates, have suffered and will continue to suffer grave and irreparable harm unless the Court orders Defendants to provide the safe and effective treatment with direct-acting antiviral drugs as described below.

**Standard of Care for Hepatitis C Infections**

23.     For many years, finding and establishing an effective and safe treatment for Hepatitis C infections was a highly elusive goal.  The standard treatment, which included the use of interferon and ribavirin medications, failed to cure large numbers of patients and was

associated with painful and other adverse side-effects, including psychiatric and autoimmune disorders, flulike symptoms, and gastrointestinal distress.

24.     Over the past three years, the approval by the Federal Drug Administration (FDA) of new "breakthrough" DAAD, including Sovaldi, Olysio, and Harvoni, has revolutionized the treatment module for Hepatitis C infections.

25.     Sovaldi, Olysio, and Harvoni, properly administered, have no adverse side-effects and are highly effective in creating a sustained viral response and a full cure of Hepatitis C infection.

26.     The DAAD treatment modules have very high cure rates (over 90% of patients treated for Sovaldi and over 95% for Harvoni) and require a short treatment period of 8-12 weeks.

27.     The standard of care in the community for Hepatitis C infections—the use of the DAAD—is now well-established.  These new treatment modules have been recommended for treatment of all persons with Chronic Hepatitis C by the American Association for the Study of Liver Diseases ("AASLD"), Infectious Diseases Society of America ("IDSA"), the Center for Disease Control, Medicare, many medical systems, the Veterans Administration, and most private medical insurers.  No other treatments are recommended or in use for persons with Chronic Hepatitis C.

**Pennsylvania DOC Policy for Hepatitis C Infections**

28.     From 2013, when the FDA first approved the use of DAAD to the current date, Defendants failed to promulgate and implement treatment policies or provide medical treatment for all inmates with Chronic Hepatitis C infections consistent with medical and community

standards, and specifically the Defendants failed to authorize treatment with the effective DAAD for the vast majority of inmates with Chronic Hepatitis C.

29.     The DOC has formulated a Hepatitis C medical care and treatment process pursuant to the DOC Hepatitis C Protocol ("Protocol"), issued in November, 2016. The Protocol establishes final policy and practices for Hepatitis C treatment for inmates, and creates a rationing system for treatment of inmates with DAAD.

30.     As formulated and implemented, the Protocol arbitrarily denies necessary, appropriate, and constitutionally mandated DAAD treatment to over 98% of inmates with Chronic Hepatitis C, in direct conflict with community health standards. Plaintiffs and members of plaintiff class are thus denied drugs that would effectuate a full cure of their disease.

31.     Chronic Hepatitis C is diagnosed on a fibrosis level scale of F-0 to F-4, with levels F-0 and F-1 including persons with early stage chronic Hepatitis C, of whom over 70%, if not treated with DAAD, will progress to serious fibrosis and, of that group, 30% will develop cirrhosis of the liver. All persons with Chronic Hepatitis C risk liver cancer, liver failure, diabetes, heart failure, kidney disease, and serious physical and mental pain and suffering.

32.     As a consequence, Plaintiffs and all class members with Hepatitis C infections have a substantially increased risk of continued Hepatitis C infection, liver disease, liver cancer, cirrhosis, extra-hepatic diseases and conditions, and death. Defendants' rationing of the DAAD forces Plaintiffs and the plaintiff class to endure chronic inflammatory disease, pain, fatigue, increased risks of cancer, liver failure, heart attacks, and death, before any DAAD treatment is provided.

33.     There is no medical justification for a treatment module for Hepatitis C infection that does not provide DAAD to all inmates with chronic Hepatitis C, except for those with very

short life expectancy or release dates less than three months from the start of DAAD treatment. To the extent that DAAD treatment is not provided because of financial considerations, the practice is unconstitutional and otherwise in violation of the United States Constitution, the Pennsylvania Constitution, and Pennsylvania state law as they deny necessary and appropriate medical care to Plaintiff and members of the class.

34.     In *Mumia Abu-Jamal v. Wetzel*, 3:16-CV-2000, 2017 U.S. Dist. LEXIS 368 (M.D. Pa. January 3, 2017), the court ruled that the Protocol in unconstitutional as written and applied, and stated:

> The Hepatitis C Protocol, in both how it is written and how it is implemented, bars those without vast fibrosis or cirrhosis from being approved for treatment with DAA medications.  As such, the Hepatitis C Protocol presents a conscious disregard of a known risk that inmates with fibrosis, like Plaintiff, will suffer from hepatitis C related complications, continued liver scarring and damage progressing into cirrhosis, and from cirrhosis related complications such as ascites, portal hypertension, hepatic encephalopathy, and esophageal varicies.
>
> The Hepatitis C Protocol deliberately delays treatment for Hepatitis C through the administration of DAA drugs such as Harvoni, Sovaldi, and Viekira Pak despite the knowledge of Defendants that sit on the Hepatitis C Treatment Committee: (1) that the aforesaid DAA medications will effect a cure of Hepatitis C in 90 to 95 percent of the cases that disease; and (2) that the substantial delay in treatment that is inherent in the current protocol is likely to reduce the efficacy of these medications and thereby prolong the suffering of those who have been diagnosed with chronic Hepatitis C and allow the progression of the disease to accelerate so that it presents a greater threat of cirrhosis, hepatocellular carcinoma, and death of the inmate with such disease.

*Id*. at *30-31 (internal numbering omitted)

**Plaintiff Salvatore Chimenti**

35.     Mr. Chimenti entered the DOC in 1983, and is currently incarcerated at SCI Smithfield.

36.     In 1991, while Mr. Chimenti was housed at SCI Huntingdon, the medical staff informed Mr. Chimenti that he had tested positive for Hepatitis C.

37.     Mr. Chimenti received interferon treatments from December 1, 1997 to March 18, 1998, but these treatments did not provide a cure for the disease.

38.     In May 1998, a gastrointestinal specialist, Michael F. Gaugler, D.O., recommended consideration of a treatment module for Mr. Chimenti of interferon in combination with ribavirin, and that treatment module was approved by the FDA in or about June 1998.

39.     The DOC took 18 months to develop a protocol from 1998 to 2000, and therefore, Mr. Chimenti did not begin the combination treatment with interferon and ribavirin (combined together and branded as Rebetron) until June 2000, but once again his condition did not improve with this six-month treatment.

40.     During this time while waiting for the Rebetron treatment for Hepatitis C, Mr. Chimenti's condition deteriorated from Stage 3 to Stage 4 cirrhosis, thus reducing his chance of responding positively to that treatment by 50 percent.

41.     In 2011, after FDA approved a triple therapy treatment using boceprevir or telaprevir in combination with interferon and ribavirin, Mr. Chimenti again sought to have his Hepatitis C treated.

42.     After waiting 10 months, Mr. Chimenti was treated with triple therapy at SCI Forest from June 2012 through May 2013.  He initially responded positively to the triple therapy, but relapsed six months later in November 2013.

43.     Mr. Chimenti now suffers from Stage 4 compensated cirrhosis with chronic liver failure.  His Model for End-Stage Liver Disease ("MELD") score is 12.  The MELD score is a measure of mortality risk in patients with end-stage liver disease and is used as a disease severity index to help prioritize allocation of organs for transplant.

44.     In 2009, Dr. Abhinav Humar, Chief Liver Transplant Specialist from the
University of Pittsburgh Medical Center was appointed by U.S. District Court Judge Vanaskie to
provide a report on Mr. Chimenti's medical condition.  Dr. Humar recommended that Mr.
Chimenti be assessed with ultrasounds and CT scans of his liver every six months, and that if
Mr. Chimenti's "MELD" score went above 10, that he be evaluated by a hepatologist for the
possibility of a liver transplant.

45.     Since November 2013, Defendants, including Dr. Kephart, Dr. Frommer, and Dr.
Noel, continually denied and delayed the necessary treatment to track and halt the deleterious
effects of Hepatitis C, including regular ultrasounds and CT scans, which are medically
necessary for individuals with Stage 4 cirrhosis, and the provision of DAAD.

46.     Defendants, including Kephart, Frommer, Noel, Correct Care Solutions, and
Wexford Health Source, failed with deliberate indifference to have Mr. Chimenti seen or
evaluated by a hepatologist or a gastroenterologist for proper treatment of his liver condition.

47.     In late 2013, Mr. Chimenti began requesting treatment of his Hepatitis C infection
with direct-acting antiviral drugs, but he has been denied and delayed this treatment by
Defendants, even though the standard of community care at that time required that Mr. Chimenti
be prescribed Sovadi with ribavirin, which has an over 90% cure rate.

48.     In November 2014, CHCA Dreibelbis informed Mr. Chimenti that the "PA DOC
has not approved the use of [Harvoni] at this time.  Thus it is not offered at this facility."

49.     In late 2014 and early 2015, emails were exchanged between Dr. Noel, Dr. Dean
Rieger (Deputy Chief Clinical Officer of CCS), and Dr. Kephart (with others sometimes copied
on the email, including Dr. Hochberg, Mr. Dreibelbis, and Mr. Oppman), discussing Mr.

Chimenti's medical treatment, and deciding that Mr. Chimenti should merely be monitored and that there was no urgency in providing the latest DAAD medication treatment.

50.     In Dr. Kephart's role as the former Medical Director and in Dr. Frommer's current role as the Medical Director at SCI Smithfield, they each review(ed) and approve(d) all requests for referrals to outside providers and outside medical treatment for Mr. Chimenti, and receive(d) and/or review(ed) many or all reports from those outside medical providers, including those related to Mr. Chimenti's Hepatitis C, cirrhosis, and related conditions.

51.     In the fall of 2015, a mass was discovered in Chimenti's liver.  Defendants, and in particular Defendant Dr. Frommer, insisted that Mr. Chimenti undergo a liver biopsy before providing any further treatment or referring Mr. Chimenti to a hepatologist (and/or a transplant hepatologist), even though a biopsy is no longer recommended as part of the standard of care due to the risk of bleeding and seeding.  While Mr. Chimenti initially declined the biopsy due to the noted risks of such biopsy, he ultimately consented to a liver biopsy.  However, subsequently two separate radiologists on two occasions, in fact, determined that a liver biopsy would be too dangerous for Mr. Chimenti, due to the location of the mass.  The standard of care provides that a patient can and should be evaluated for both DAAD and the possibility of liver cancer at the same time.

52.     In approximately March 2016, Mr. Chimenti had a meeting with numerous medical staff, including Dr. Frommer, Mr. Dreibelbis, Dr. Dolphin, J. Hartman (RNS), and Mega Pfiel (PAC), regarding his Hepatitis C and related medical conditions.  At that time, the medical personnel agreed to recommend DAAD treatment and referral to a hepatologist (specifically a transplant hepatologist), and upon information and belief, this recommendation and request was sent to Central Office but denied.

53.     As Defendants delayed and denied providing DAAD to Mr. Chimenti, he suffered from symptoms of chronic Hepatitis C, cirrhosis, and a failing liver, including but not limited to hypertension, jaundice, confusion, bad odor, and poor laboratory test results measuring bilirubin, enzyme, and platelet levels.

54.     Despite Mr. Chimenti having stage 4 cirrhosis, the most advanced stage, it was not until in or around July 2016 that he was referred to a hepatologist for an evaluation since he had been returned to SCI Smithfield from SCI Forest in 2013, and it was not until October 2016 that he finally received the DAAD treatment.

55.     Mr. Chimenti has fully grieved the denial of his request for this form of medical treatment, as well as the lack of any treatment for his Hepatitis C or cirrhosis.

56.     As a result of Defendants' denial and continual delay of the necessary medical treatment, Mr. Chimenti continued to suffer from chronic Hepatitis C infection, advanced cirrhosis, and the related risks of liver failure and death, and physical and emotional pain and suffering.

57.     Furthermore, his liver continued to deteriorate and a mass developed in his liver during the time period of the denial and delay of necessary medical treatment for his Hepatitis C, and is still at risk for needing a liver transplant.

58.     The refusal, with deliberate indifference, of Defendants to provide Mr. Chimenti and other class members with Hepatitis C infections with access to the necessary and appropriate DAAD and other medical services for the treatment of their Hepatitis C infections constitutes a violation of the Eight Amendment, the Pennsylvania Constitution, and Pennsylvania state law.

**Plaintiff Daniel Leyva**

59.     Plaintiff Daniel Leyva is currently incarcerated at SCI Retreat.

60.     Mr. Leyva was diagnosed with Hepatitis C in 2001 or 2002 while he was incarcerated at SCI Albion.

61.     Previously he had been treated with interferon and ribavirin, but it was unsuccessful in treating his Hepatitis C infection.

62.     Mr. Leyva has Hepatitis genotype 1 and recent lab results show that he has elevated or high levels of the Hepatitis C virus.

63.     Mr. Leyva requested to be provided the latest direct-acting antiviral drug treatment, but the doctor informed him that it cost too much.

64.     Mr. Leyva filed a grievance requesting to be provided with the latest direct-acting antiviral drug treatment and fully exhausted his administrative remedies.

65.     In the DOC response, Joseph Mataloni, Corrections Health Care Administrator at SCI Retreat, wrote, "The DOC is re-evaluating our treatment protocol for Hepatitis C given the new guidance issued by the American Association of Liver Diseases (AASLD) and the Infectious Diseases Society of America (IDSA)."

66.     Mr. Leyva also received a response from Christopher H. Oppman, Director, Bureau of Health Care Services, who also informed him that the DOC and BCHS are re-evaluating their treatment protocol.

67.     Mr. Leyva currently experiences symptoms of Hepatitis C, including pain, fatigue, and his eyes are jaundiced and requires immediate treatment to prevent any further liver damage.

68.     Mr. Leyva still has not received DAAD or proper medical treatment for his

chronic Hepatitis C.

**Plaintiff David Maldonado**

69.     Plaintiff David Maldonado has been incarcerated in the DOC since 1980, and has

been incarcerated at SCI Graterford since 1995.

70.     Mr. Maldonado was diagnosed with Hepatitis C in 1997.

71.     Mr. Maldonado was treated with interferon and ribavirin in 2001, but the

treatment was unsuccessful.

72.     After undergoing a liver biopsy which revealed that Mr. Maldonado was between

Stage 1 and Stage 2 liver fibrosis, Mr. Maldonado was transferred to SCI Forest in June 2013 to

receive the triple therapy of interferon and ribavirin with boceprevir.  While there was some

initial success in reducing Mr. Maldonado's viral load, the treatment failed after six months in

December 2013. Mr. Maldonado returned to SCI Graterford in February 2014.

73.     Mr. Maldonado requested the direct-acting antiviral drug treatment from the

medical staff and Medical Director Weiner, but was informed by the Bureau of Health Care

Services that a new protocol was being developed.

74.     Joseph Korszniak, CHCA at SCI Graterford, responded to Mr. Maldonado's

grievance that, "The drug [Harvoni] that you mention has not yet been approved for use by the

DOC, BHCS.  When the protols [*sic*] are extablished [*sic*] and the drug is approved there will be

an assessment done to determine who will qualify for the treatment."

75.     In response to Mr. Maldonado's appeal of his grievance to the Central Office, he

was informed, "The DOC/BHCS is re-evaluating our treatment protocol for Hepatitis C given the

new guidance issued by the American Association of Liver Diseases and the Infectious Diseases Society of America."

76.     Mr. Maldonado continues to suffer from elevated liver enzyme levels beyond the normal range,

77.     Mr. Maldonado's fibrosis requires immediate treatment to prevent any further liver damage or liver failure.

78.     Mr. Maldonado filed grievances requesting to be provided proper medical treatment for Hepatitis C, including the latest direct-acting antiviral drug treatment, and has fully exhausted his administrative remedies.

79.     Mr. Leyva still has not received DAAD or proper medical treatment for his chronic Hepatitis C.

## CLASS ACTION ALLEGATIONS

80.     Plaintiffs bring this suit as a class action on behalf of himself and all others similarly situated (the "Class") pursuant to Rules 23(a) and 23(b)(2).

81.     Plaintiffs seek to represent the following class on claims for declaratory and injunctive relief:

> All persons who are currently incarcerated in a Pennsylvania Department of Corrections facility with a diagnosed condition of Chronic Hepatitis C, and who have at least twelve (12) weeks or more remaining to serve on their sentences, and who have a life expectancy of over one year.

82.     As a result of Defendants' deliberate indifference to the serious medical needs of the Class, members of the Class are or will be subjected to cruel and unusual punishment and deprived of their federal and state constitutional and statutory rights. Plaintiffs seek declaratory and injunctive relief to remedy Defendants' illegal and unconstitutional actions, policies, and practices.

83.    The requirements of Rules 23(a) and 23(b)(2) are satisfied by this class action.

84.    The class includes no fewer than 5,400 inmates in the Pennsylvania DOC, who are geographically dispersed throughout the Commonwealth of Pennsylvania. The number of persons who are members of the Class described above are so numerous that joinder of all members in one action is impracticable.

85.    Questions of law and fact that are common to the entire Class predominate over individual questions because the actions of Defendants complained of herein were generally applicable to the entire class. These legal and factual questions include, but are not limited to:

    a.    Whether the treatment regimens utilizing DAAD are the proper, necessary and standard course of treatment in the medical community;

    b.    Whether denial of treatment regimens utilizing DAAD drugs to the Class will cause injury to the Class members, including unnecessary pain and suffering, chronic illness, and death; and

    c.    Whether Defendants' Hepatitis C current treatment policy, which denies necessary DAAD treatment for many inmates with Chronic Hepatitis C infections violates the Eighth Amendment to the U.S. Constitution and Article I § 13 of the Pennsylvania Constitution.

86.    Plaintiffs' claims are typical of the members of the Class because Plaintiffs and all Class Members were injured by the same wrongful policy and practices of Defendants as described in this Complaint. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the Class members, and are based on the same legal theories.

87.     Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have no interests that are contrary to or in conflict with those of the Class they seek to represent. Plaintiffs are represented by competent and skilled counsel whose interests are fully aligned with the interests of the Class.

88.     Relief concerning Plaintiffs' rights under the laws herein alleged and with respect to the Class would be proper. Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with regard to Class Members as a whole and certification of the Class under Rule 23(b)(2) proper.

## CLAIMS

### COUNT I
### Deprivation of Eighth Amendment Right to Medical Care

89.     Plaintiffs incorporate paragraphs 1 through 88 of this Complaint as if fully set forth herein.

90.     Defendants' acts and omissions in failing to provide adequate medical care constitute a deliberate indifference to the serious medical needs of prisoners infected with Hepatitis C, thereby establishing a violation of the Eighth Amendment to the United States Constitution.

### COUNT II
### Deprivation of Right Not to Undergo Cruel and Unusual Punishment Under the Pennsylvania Constitution

91.     Plaintiffs incorporate paragraphs 1 through 88 of this Complaint as if fully set forth herein.

92.     Defendants' acts and omissions in failing to provide adequate medical care constitute a deliberate indifference to the serious medical needs of prisoners infected with

Hepatitis C thereby establishing a violation of Article I, § 13 of the Pennsylvania Constitution and its prohibition against the infliction of cruel punishments.

## COUNT III
### Negligence – Medical Malpractice

93.     Plaintiff Chimenti incorporates paragraphs 1 through 88 of this Complaint as if fully set herein.

94.     At all relevant times, the individual Defendants and corporate Defendants had a duty to act in accordance with the standard of care required of medical care professionals and to act as a reasonable corporation would under the same or similar circumstances, they breached that duty in failing to provide the standard of care necessary for individuals infected with Hepatitis C, and plaintiff Chimenti's injuries were the direct, legal and proximate result of Defendants negligence.

## COUNT IV
### Negligence – Medical Malpractice and Vicarious Liability

95.     Plaintiff Chimenti incorporates paragraphs 1 through 88 of this Complaint as if fully set herein.

96.     Defendant Correct Care Solutions and Wexford Health Sources are vicariously liable to plaintiff Chimenti for the negligent acts commissions, or omissions of its employees and/or agents, who at all times relevant hereto acted on behalf of Correct Care Solutions and/or Wexford Health Sources and within the scope of their employment, under the doctrines of respondeat superior and ostensible agency.

## RELIEF

WHEREFORE Plaintiffs Salvatore Chimenti, Daniel Leyva, and David
Maldonado respectfully requests the following relief:

97.       For the named plaintiffs and members of the plaintiff Class, a Declaratory
Judgment that Defendant Pennsylvania Department of Corrections current policy for Hepatitis C
treatment violates the Eighth Amendment of the United States Constitution, and Article I § 13 of
the Pennsylvania Constitution;

98.       For the named plaintiffs and members of the plaintiff Class, injunctive relief
ordering that Defendant Pennsylvania Department of Corrections (a) formulate and implement a
Hepatitis C treatment policy that meets the community standards of care for patients with
Hepatitis C, (b) that members of the Class be treated with medically necessary and the
appropriate direct-acting antiviral drugs based on individual medical testing and medical
evaluation regarding each individual's Hepatitis C status, and (c) that members of the class
receive ongoing monitoring and medical care per the standard of care for their individual level of
liver fibrosis and cirrhosis, including but not limited to appropriate access to and evaluation by a
hepatologist and assessment regarding their need for partial or full liver transplant.

99.       Compensatory damages for Salvatore Chimenti;

100.      Punitive damages for Salvatore Chimenti;

101.      Reasonable attorneys' fees and costs; and

102.      Such other relief the Court deems just and equitable.

Respectfully submitted,


 /s/ David Rudovsky
David Rudovsky, PA Attorney No. 15168
Kairys, Rudovsky, Messing & Feinberg LLP
718 Arch Street, Suite 501S
Philadelphia, PA  19106
(215) 925-4400


 /s/ Su Ming Yeh
Su Ming Yeh, PA Attorney No. 95111
Angus R. Love, PA Attorney No. 22392
Pennsylvania Institutional Law Project
718 Arch Street, Suite 304S
Philadelphia, PA 19106
(215) 925-2966


 /s/ Stephen Brown
Stephen Brown, PA Attorney No. 27829
Christine Levin, PA Attorney No. 37807
Rose Marie Wong, Attorney No. 320602
Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
(215) 994-2404

DATE:  February 1, 2017