IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

SALVATORE CHIMENTI, DANIEL
LEYVA, DAVID MALDONADO, *and all
others similarly situated*,

      Plaintiffs,

      vs.

PENNSYLVANIA DEPARTMENT
CORRECTIONS, JOHN WETZEL, PAUL
NOEL, RICH WENHOLD, CORRECT CARE
SOLUTIONS, DR. JAY COWAN, DR. JOHN
KEPHART, DR. JAMES FROMMER,
WEXFORD HEALTH SOURCES, INC.

      Defendants.

*FILED ELECTRONICALLY*

CIV. ACTION NO. 2:15-cv-03333

### DEFENDANTS, WEXFORD HEALTH SOURCES, INC., CORRECT CARE SOLUTIONS, LLC, DR. JAY COWAN, DR. JOHN KEPHART, AND DR. JAMES FROMMER'S BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

## I.    STATEMENT OF THE CASE

On June 12, 2015, Plaintiffs, Salvatore Chimenti, Daniel Leyva, David Maldonando, and all others similarly situated, initiated a 42 U.S.C. § 1983 class action against the Pennsylvania Department of Corrections ("DOC") and others employed by or operating within the DOC. Specifically, Plaintiffs allege that they are being denied treatment with direct acting anti-viral drugs (DAADs) as a result of the DOC's Hepatitis C policy.

Plaintiffs filed an Amended Complaint on February 3, 2017, which incorporates the DOC's revised Hepatitis C policy, and serves to voluntarily dismiss certain Defendants, while adding new Defendants to this lawsuit.

Within their Amended Complaint, Plaintiffs aver that in November, 2016, the DOC formulated a Hepatitis C Protocol ("Protocol") that established a policy and practice for the treatment of inmates with Hepatitis C, and prioritized the administration of DAADs to inmates based upon the severity of their disease.  (ECF No. 50, ¶¶ 29-31).  As a result of this policy, Plaintiffs contend that they have been denied DAADs, thereby resulting in "substantially increased risk of continued Hepatitis C infection, liver disease, liver cancer, cirrhosis, extra-hepatic diseases and conditions, and death." [1]  (ECF No. 50, ¶ 32).  Plaintiffs further contend that, "[t]o the extent that DAAD treatment is not provided because of financial considerations, the practice is unconstitutional and otherwise in violation of the United States Constitution." (ECF No. 50, ¶ 33).

Moving Defendant, Wexford Health Sources, Inc., was under contract to provide medical services to inmates within the DOC from January 1, 2013 through August 31, 2014.  The DOC thereafter contracted with Correct Care Solutions, LLC, which has provided medical services to inmates since September 1, 2014.  Dr. James Frommer, Dr. Jay Cowan, and Dr. John Kephart were employed by one or both of the Medical Contractors.  These Defendants now move for the dismissal of Plaintiffs' Amended Complaint.

II.   **ARGUMENT**

A.   **PLAINTIFFS' EIGHTH AMENDMENT CLAIMS ASSERTED AGAINST CORRECT CARE SOLUTIONS, LLC AND WEXFORD HEALTH SOURCES, INC. MUST BE DISMISSED WHERE THE HEPATITIS C POLICY IS A POLICY CREATED AND MAINTAINED BY THE DOC, AND NOT MOVING DEFENDANTS.**

Within Count I of the Amended Complaint, Plaintiffs asserts liability as to Correct Care Solutions, LLC and Wexford Health Sources, Inc. based upon "the failure to provide adequate

---

[1] Lead Plaintiff, Salvatore Chimenti, acknowledges that he has begun receiving Hepatitis C treatment since the filing of his original Complaint in June, 2015.  (ECF No. 50, ¶ 54).

medical care" to inmates within the Pennsylvania Department of Corrections, in violation of the Eighth Amendment to the United States Constitution.  (ECF No. 50, Count I).

"In Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 689, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978), the United States Supreme Court held that although municipalities and other local governmental bodies are 'persons' within the meaning of section 1983, a municipality may not be held vicariously liable under section 1983 solely because of the existence of an employer-employee relationship with a tortfeasor."  Patterson v. Armstrong Cty. Children & Youth Servs., 141 F. Supp. 2d 512, 525 (W.D. Pa. 2001).  "Monell applies not only to municipalities, but also extends to private organizations faced with Section 1983 liability for actions under color of state law."  Kauffman v. Pa. Soc'y for the Prevention of Cruelty to Animals, 766 F. Supp. 2d 555, 561-62 (E.D. Pa. 2011); see also Regan v. Upper Darby Twp., 363 F. App'x 917, 922 (3d Cir. 2010) ("[A] city, municipality, or private entity that is a state actor may not be held vicariously liable under § 1983 for the actions of its agents because there is no *respondeat superior* theory of municipal liability."); Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).  Dempsey v. Bucknell Univ., 2012 U.S. Dist. LEXIS 62043, at *31 (M.D. Pa. 2012).

As such, liability of such entities may not rest on *respondeat superior*, but rather must be based upon a governmental policy, practice, or custom that caused the injury.  Monell, 486 U.S. at 690-94; see also Thomas v. Zinkel, 155 F. Supp. 2d 408, 412 (E.D. Pa. 2001).  Absent a showing that an employee committed the alleged unlawful act(s) at issue pursuant to a policy of her or his corporate employer, said employer cannot be held vicariously liable for its employee's purported misdeed(s) in a civil rights suit.  Hetzel v. Swartz, 909 F. Supp. 261, 264 (M.D. Pa. 1995).

Here, Plaintiffs are critical of the Hepatitis C protocol that was created, implemented, and maintained **by the DOC**.  Throughout the Complaint, Plaintiff acknowledges that "[t]he **DOC** has formulated a Hepatitis C medical care and treatment process **pursuant to the DOC Hepatitis C Protocol** ('Protocol'), issued in November, 2016" and that said "Protocol established final policy and practices for Hepatitis C treatment for inmates, and creates a rationing system for treatment of inmates with DAAD."   (ECF No. 50, ¶ 20)(emphasis added).   As "formulated and implemented," Plaintiffs contend that **the DOC's Protocol** "arbitrarily denies necessary, appropriate, and constitutionally mandated DAAD treatment to over 98% of inmates with Chronic Hepatitis C."  (ECF No. 50, ¶ 30).

While Plaintiff is critical of the DOC, Plaintiffs' Amended Complaint fails to state that Correct Care Solutions, LLC or Wexford Health Sources, Inc. were responsible for the development of the Protocol or any other policy that purportedly caused harm to inmates within the DOC.  Accordingly, Plaintiffs have failed to state a cause of action against Correct Care Solutions, LLC or Wexford Health Sources, Inc. under <u>Monell</u>, and Count I of their Amended Complaint must be dismissed as to these Defendants.

**B.     PLAINTIFFS' EIGHTH AMENDMENT CLAIMS ASSERTED AGAINST DR. JAY COWAN MUST BE DISMISSED WHERE PLAINTIFF HAS FAILED TO PLEAD THE PERSONAL INVOLVMENT OF THIS DEFENDANT.**

In amending their Complaint, Plaintiffs added as a Defendant Dr. Jay Cowan, who is identified by Plaintiffs as "the statewide Medical Director for Defendant Correct Care Solutions" who "serves on the DOC Hepatitis C Treatment Committee."  (ECF No. 50, ¶ 13).   No other mention is made of Dr. Cowan within the Complaint, nor have Plaintiffs suggested that Dr. Cowan assisted the DOC in creating or implementing the Hepatitis C policy that is the subject of Plaintiff's Complaint.  Thus, Plaintiffs have failed to adequately plead the personal involvement

of Dr. Cowan in the alleged constitutional violation, and Count I of the Amended Complaint must be dismissed as to this Defendant.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." Baraka v. McGreevey, 481 F.3d 187, 210 (3d Cir.2007). Personal involvement in the alleged wrongdoing may be shown "through allegations of personal direction or of actual knowledge and acquiescence." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir.2005), *quoting* Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988). See Ruff v. Health Care Adm'r, 441 F. App'x 843, 846 (3d Cir.2011) (per curiam) ("[t]o be liable under § 1983, a defendant must have some personal involvement in the underlying unconstitutional conduct"). See also Kaucher v. County of Bucks, 455 F.3d 418, 432 n. 7 (3d Cir.2006), quoting Estate of Smith v. Marasco, 430 F.3d 140, 151 (3d Cir.2005) ("[i]n order to prevail on a § 1983 claim against multiple defendants, a plaintiff must show that each individual defendant violated his constitutional rights").  Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement.  Rode v. Dellarciprete, 845 F.2d 1195, 1208 (3d Cir. 1998).

Here, Plaintiff only states that Dr. Cowan serves on the DOC's Hepatitis C Treatment Committee without specifying the alleged  actions or inactions of this Defendant.  Therefore, it is unclear how Dr. Cowan was involved – if at all – in the creation and implementation of the DOC's Hepatitis C Protocol.

Moreover, to the extent Plaintiffs seek to hold Dr. Cowan liable based upon his failure to properly supervise the medical staff, this basis is not sufficient to establish liability for deliberate indifference. When a supervisory official is sued in a civil rights action, liability can only be

imposed if that official played an "affirmative part" in the complained-of misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986).  Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct."  Id. quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991).  The supervisor must be personally involved in the alleged misconduct.  Rode v. Dellarciprete, 845 F.2d 1958, 1207 (3d Cir. 1988).  Since there are no allegations establishing any involvement on the part of Dr. Cowan apart from his role as a supervisor, there is no basis upon which he may be found liable for deliberate indifference to Plaintiffs' serious medical needs.  Accordingly, dismissal of this Defendant is appropriate.

      **C.**      **PLAINTIFFS' EIGHTH AMENDMENT CLAIMS ASSERTED AGAINST DR. JAMES FROMMER AND DR. JOHN KEPHART MUST BE DISMISSED WHERE PLAINTIFF HAS FAILED TO PLEAD FACTS SUFFICIENT TO SUPPORT DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED.**

Within the Amended Complaint, Plaintiffs contend that Moving Defendants, Dr. James Frommer and Dr, John Kephart, were deliberately indifferent to the serious medical needs of lead Plaintiff, Salvatore Chimenti, by failing to provide him with proper medical care for his Hepatitis C.  At best, however, Plaintiff has alleged that – while he has received treatment for his medical condition – he is dissatisfied with the treatment offered to him.  As this is not sufficient to support an Eighth Amendment claim, Count I of Plaintiffs' Amended Complaint must be dismissed as a matter of law.

In order to state a claim against a correctional health care provider under 42 U.S.C. §1983, Plaintiff must prove "deliberate indifference to a serious medical need" on the part of the provider.  Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

Subjectively, prison officials must exhibit "deliberate indifference" to those needs. <u>Atkinson v. Taylor</u>, 316 F.3d 257, 272-73 (3d Cir. 2003). An allegation of mere negligence or medical malpractice does not rise to the level of an Eighth Amendment violation. <u>Estelle</u>, 429 U.S. at 105. Furthermore, under § 1983, a plaintiff must show that each and every defendant was 'personal[ly] involve[d]' in depriving him of his rights. <u>Evancho v. Fischer</u>, 423 F.3d 347,353 (3d Cir. 2005).

It is a "well-established rule that mere disagreements over medical judgment do not state Eighth Amendment claims." <u>White v. Napoleon</u>, 897 F.2d 103 (3d Cir. N.J. 1990). The United States District Court for the Eastern District of Pennsylvania has held, in a similar context: "The court will not allow plaintiff to substitute his desires and opinions for the professional judgment of prison officials, especially when the law of the circuit makes clear that considerable deference is to be afforded to the judgment of the correctional authorities." <u>Iseley v. Dragovich</u>, 236 F. Supp. 2d 472, 478 (E.D.Pa. 2002). "A court may not substitute its own judgment for diagnosis and treatment decisions made by prison medical staff members." <u>Inmates of Allegheny County Jail v. Pierce</u>, 612 F.2d 754, 762 (3d Cir. 1979); <u>Maynard v. New Jersey</u>, 719 F. Supp. 292, 295 (D.N.J. 1989).

The Seventh Circuit has noted, "the Eighth Amendment does not guarantee that an inmate receive specific treatment; it guarantees only 'reasonable measures to meet a substantial risk of serious harm.'" <u>DeBoer v. Luy</u>, 70 Fed. Appx. 880, 883 (7th Cir. 2003); <u>Forbes v. Edgar</u>, 112 F.3d 262, 266 (7th Cir. 1997). "The Eighth Amendment does not prohibit a prison doctor from exercising his own independent medical judgment regarding an appropriate medical treatment, and a prisoner's mere disagreement with a doctor's medical judgment concerning treatment does not support a claim of cruel and unusual punishment." <u>Id</u>. <u>Q.v. Snipes v. DeTella</u>,

95 F.3d 586, 592 (7th Cir. 1996) ("Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference ....").

According to the Amended Complaint, Salvatore Chimenti first began requesting treatment of his Hepatitis C infection with DAADs in late 2013; however, his requests were denied.  (ECF No. 50, ¶ 47).  He further states that in 2014 and 2015, "emails were exchanged" between various Defendants and prison officials, including Dr. Kephart, "discussing Mr. Chimenti's medical treatment, and deciding that Mr. Chimenti should merely be monitored and that there was no urgency in providing the latest DAAD medication treatment."  (ECF No. 50, ¶ 49).  Thereafter, in March, 2016, Mr. Chimenti had a meeting with various prison officials, including Dr. Frommer, at which time the medical personnel "agreed to recommend DAAD treatment and referral to a hepatologist"; however, "this recommendation and request was sent to [the DOC's] Central Office but denied."  (ECF No. 50, ¶ 52).  He was subsequently referred to a hepatologist in July 2016, and began receiving DAAD treatment in October 2016.  (ECF No. 50, ¶ 54).

At best, Plaintiffs have articulated a disagreement with the policy/criteria used by the Department of Corrections to determine when to begin specific treatment for Hepatitis C – a policy over which the Moving Defendants had no input or control.  Notwithstanding, the approach implemented by the Department of Corrections is no different than that utilized by medical professionals in the correctional setting.

When considering Eighth Amendment claims, like those advanced by Plaintiffs, based upon an alleged failure to treat an inmate's Hepatitis C, this Court is not required to write upon a blank slate. Quite the contrary, numerous courts have considered the application of the Eighth Amendment in this specific legal-medical context.  In particular, when considering inmate

Eighth Amendment claims brought by Pennsylvania state prisoners complaining about the Hepatitis C treatment afforded to them in prison, courts have often held in favor of defendants when the undisputed facts show that the inmates were treated in accordance with the Department of Corrections' Hepatitis C treatment protocol, finding that compliance with this treatment protocol either rebuts any claim of deliberate indifference to serious medical needs; Henry v. Maue, No. 06-1439, 2008 U.S. Dist. LEXIS 118627, 2008 WL 5188834 (W.D. Pa. Dec. 10, 2008), Lee v. Beard, No. 03-1026, 2008 U.S. Dist. LEXIS 21338, 2008 WL 744736 (M.D.Pa. March 18, 2008), or concluding that prison officials who complied with this protocol were entitled to qualified immunity from damages. Josey v. Beard, No. 06-265, 2009 U.S. Dist. LEXIS 54680, 2009 WL 1858250 (W.D.Pa. June 29, 2009).

Thus, where as here, it is undisputed that an inmate's Hepatitis C has been carefully monitored by prison medical staff and the Department of Corrections abides by its protocol in accessing treatment plans, it is well-settled that prison officials are entitled to judgment in their favor as a matter of law on inmate Eighth Amendment claims. As the United States Court of Appeals for the Third Circuit explained when affirming a summary judgment in another Hepatitis C case:

> The standard for evaluating a prisoner's deliberate indifference claim is highly deferential to the medical practitioners' professional judgment. "Courts will 'disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment.'" Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir.1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir.1977)). A prisoner does not have the right "to choose a specific form of medical treatment." Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000). Lasko's deliberate indifference claim hinges on the premise that defendants refused to treat him for hepatitis C for eighteen months after he arrived at FCI-Schuylkill. As the District Court pointed out, however, Lasko's medical treatment, including extensive evaluations assessing the

> appropriate course of treatment for his hepatitis C condition, commenced immediately upon entering the facility. Defendants did not approve Lasko to begin an interferon and ribavirin regimen until he had undergone physical and psychological examinations, extensive laboratory testing, and several counseling sessions, but this approach is entirely consistent with the BOP Guidelines for hepatitis C treatment. Lasko has not adduced any evidence that Dr. Hendershot-or any of the other defendants-failed to treat Lasko's chronic hepatitis C condition. The District Court did not err in granting summary judgment on Lasko's Eighth Amendment claim.

Lasko v. Watts, 373 F.App'x 196, 203 (3d Cir. 2010).

Since the FDA approved direct acting anti-viral drugs, such as Harvoni, there has been significant case law throughout the country affirming the prioritization process utilized within the correctional setting. Recently, the United States District Court for the District of Maryland granted defendants' summary judgment motion in Smith v. Corizon, Inc., holding:

> The fact that Smith's request to receive Harvoni treatment has been denied simply does not reflect deliberate indifference on the part of Wexford. He was repeatedly seen by prison nurses, PAs and physicians for his chronic conditions, including HCV. . . Smith's grievances with the medical decisions made regarding what particular treatments are necessary in light of the symptoms presented are reflective of his frustration, but "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged.

Similar recent decisions include: New v. Shelton, 2015 U.S. Dist. LEXIS 103745 (D. Or., Aug. 7, 2015) (because Harvoni was denied based upon reasonable medical judgment and because plaintiff offered no evidence to suggest that there was any other motivation for the decision, his deliberate indifference claim failed); Johnson v. Frakes, 2016 U.S. Dist. 102495 (failure to provide plaintiff with Harvoni did not constitute deliberate indifference, and rather was seen as the exercise by defendants of their professional judgment); Bernier v. Obama, 2016 U.S. Dist. LEXIS 112829 (D. D.C., Aug. 24, 2016) (finding the Federal Bureau of Prison's priority criteria for treatment of patients with Hepatitis C did not violate the Eighth Amendment); King v.

Calderwood, 2016 U.S. Dist. LEXIS 123993 (D. Nev., Sept. 12, 2016) (failure to provide inmate with Harvoni amounted to a disagreement regarding the appropriate course of treatment, which is not sufficient to support an Eighth Amendment claim);   Taylor v. Rubenstein, 2016 U.S. Dist. LEXIS 182530 (N.D. W.Va., Dec. 1, 2016) (failure to provide inmate with Harvoni did not amount to deliberate indifference where plaintiff was being seen on Chronic Care Clinic every six months for his Hepatitis C); Insley v. Graham, 2016 U.S. Dist. LEXIS 169640 (D. Md., Dec. 8, 2016) (delay of treatment with Harvoni was not unconstitutional where delay was occasioned by a careful consideration of how best to treat the prison population without expending public funds irresponsibly); Gonzales v. Corizon Health Care Providers, 2017 U.S. Dist. LEXIS 8379 (D. N.M., Jan. 18, 2017) ("the decision by prison officials to monitor a prisoner's Hepatitis C based on a protocol does not rise to the level of deliberate indifference to a prisoner's serious medical needs in violation of the Eighth Amendment."); Burling v. Jones, 2017 U.S. Dist. LEXIS (S.D. Tx., Jan. 25, 2017) (plaintiff failed to prove deliberate indifference for the alleged delay in prescribing Harvoni, where the records showed that plaintiff was seen on numerous occasions by the medical department and his Hepatitis C was being closely monitored); Perotti v. O'Boyle, 2017 U.S. Dist. LEXIS 11793 (N.D. Ohio, Jan. 26, 2017 (where plaintiff did not meet the criteria for treatment with Harvoni, his claims amounted to nothing more than a difference of opinion over the preferred course of treatment, which does not state a claim for relief); Burnett v. Bishop, 2017 U.S. Dist. LEXIS 13617 (D. Md., Jan. 31, 2017) (failure to provide inmate with Harvoni epitomized a mere disagreement with his medical care); Lester v. Clarke, 2017 U.S. Dist. LEXIS 12819 (W.D. Va., Jan. 31, 2017) (finding that plaintiff's allegations showed nothing more than a disagreement with his treating medical providers as to the manner in which his Hepatitis C should be treated).

11

Ultimately, the right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*."  Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977).

> Where, as here, medically trained professionals have assessed the prisoner's medical condition and determined that costly resources, such as Harvoni, are not urgently required, but are in fact required by those who are more ill, deliberate indifference is not the cause for the delay in treatment.  Rather, delay in treatment is occasioned by a careful consideration of how best to treat the prison population without expending public funds irresponsibly.

Insley v. Graham, 2016 U.S. Dist. LEXIS 169640 (D. Md., Dec. 8, 2016).

In the instant action, Plaintiffs have acknowledged in their Complaint that the medical Defendants were closely monitoring Mr. Chimenti's condition, and once Mr. Chimenti qualified for treatment under the DOC's Protocol, he was provided with Harvoni.  Accordingly, Plaintiffs' claims against Dr. Frommer and Dr. Kephart represent nothing more than a disagreement with the DOC's Hepatitis C policy criteria, which is not actionable, and Count I of the Amended Complaint must be dismissed as a matter of law as it pertains to Moving Defendants.

**D.     PLAINTIFFS' DEMAND FOR INJUNCTIVE RELIEF AS TO WEXFORD HEALTH SOURCES, INC. AND DR. JOHN KEPHART MUST BE DISMISSED WHERE THESE DEFENDANTS NO LONGER PROVIDE MEDICAL CARE TO INMATES WITHIN THE DOC.**

Within the Amended Complaint, Plaintiffs seek injunctive relief in the form of treatment with DAADs.  Wexford Health Sources, Inc., however, no longer maintains the medical contract with the Pennsylvania Department of Corrections, and Dr. John Kephart is no longer employed within any DOC facility.  Therefore, even if this Court deems injunctive relief prudent, these Defendants are not in a position to ensure that such relief is provided to Plaintiffs.

12

The adjudicatory power of a federal court depends upon the "continuing existence of a live and acute controversy." Steffel v. Thompson, 415 U.S. 452, 459 (1974). A federal court may entertain "only actual, ongoing cases or controversies." Burkey v. Marberry, 556 F.3d 142, 147 (3d Cir.2009) (*quoting* Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990)). Where a plaintiff seeks injunctive relief for prison conditions that he is no longer subject to, there is no longer a live controversy and a court cannot grant that injunctive relief. See Abdul-Akbar v. Watson, 4 F.3d 195, 206 (3d Cir.1993); Fortes v. Harding, 19 F. Supp.2d 323, 326 (M.D.Pa.1998).

In the instant matter, neither Wexford Health Sources, Inc. nor Dr. John  Kephart are currently providing medical services within the Pennsylvania Department of Corrections and, therefore, the claim for injunctive relief against these Defendants is no longer "actual, ongoing cases or controversies."  Because Plaintiffs fail to state a claim upon which relief may be granted, this claim for injunctive relief as to Wexford Health Sources, Inc. and Dr. John Kephart must be dismissed pursuant to 28 U.S.C. §1915A(b)(1).

> **E.**  **COUNT II OF PLAINTIFFS' AMENDED COMPLAINT MUST BE DISMISSED BECAUSE PENNSYLVANIA COURTS DO NOT RECOGNIZE A CAUSE OF ACTION FOR MONETARY DAMAGES FOR ALLEGED VIOLATION OF THE PENNSYLVANIA CONSTITUTION.**

To the extent that Plaintiffs are seeking monetary relief, Count II of Plaintiff's Amended Complaint must be dismissed inasmuch as Pennsylvania courts do not recognize a cause of action for monetary damages for alleged violations under the Pennsylvania Constitution. Collura v. City of Phila., 590 F. App'x 180,186 (3d Cir. 2014) (*quoting* Jones v. City of Phila, 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006), *appeal denied*, 909 A.2d 1291 (Pa. 2006); Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist., 442 F. App'x 681, 687 (3d Cir. 2011) ("[n]o

Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution," *citing* Jones v. Phila., 890 A.2d at 1208)); see Bell v. Township of Concord, 759 F. Supp. 2d 621, 630 (E.D.Pa. 2011); Heckensweiler v. McLaughlin, 517 F.Supp.2d 707, 717 (E.D.Pa. 2007); Weaver v. Franklin Cty., 918 A. 2d 194, 202 n. 9 (Pa. Cmwlth. 2007) (no private cause of action for money damages is available for violation of Articles I and VI of the Pennsylvania Constitution); R.H.S. v. Allegheny Cty. Dept. of Human Serv., 936 A.2d 1218, 1226 (Pa.Cmwlth. 2007); Jones v. Phila., 890 A.2d at 1209 (holding that "neither statutory authority, nor appellate case law has authorized the award of monetary damages for a violation of the Pennsylvania Constitution" and declining to recognize a cause of action for money damages for alleged violation of Article 1, § 8); see also Robbins v. Cumberland Cty. Children & Youth Serv., 802 A.2d 1239 (Pa. Cmwlth. 2002) (acknowledging lack of case law recognizing a cause of action for money damages for alleged violations of Article 1, § 1, relating to the right to inherent rights of mankind).

Therefore, Count II of Plaintiff's Amended Complaint is insufficient as a matter of law, and all claims under the Pennsylvania Constitution which seek monetary relief must be dismissed with prejudice.

## III.    CONCLUSION

Based upon the foregoing, Moving Defendants ask that this Honorable Court dismiss Plaintiff's Amended Complaint with prejudice.

Respectfully submitted,

WEBER GALLAGHER SIMPSON STAPLETON
FIRES & NEWBY LLP

BY: _____

Samuel H. Foreman, Esquire
sforeman@wglaw.com
PA77096

Caitlin J. Goodrich, Esquire
cgoodrich@wglaw.com
PA209256

WEBER GALLAGHER SIMPSON
STAPLETON FIRES & NEWBY, LLP
4 PPG Place, 5th Floor
Pittsburgh, PA 15222
(412) 281-4541
(412) 281-4547 FAX

15

## <u>CERTIFICATE OF SERVICE</u>

I, Samuel H. Foreman, Esquire, hereby certify that on this date a true and correct copy of the foregoing **<u>BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT</u>** was sent by VIA ECF/CM to the following:

David Rudovsky, Esquire
Kairys, Rudovsky, Messing & Feinberg LLP
718 Arch Street, Suite 501S
Philadelphia, PA 19106

Su Ming Yeh, Esquire
Angus Love, Esquire
Pennsylvania Institutional Law Project
718 Arch Street, Suite 304S
Philadelphia, PA 19106

Stephen Brown, Esquire
Christine Levin, Esquire
Ethan Solove, Esquire
Dechert LLP
Circa Centre
2929 Arch Street
Philadelphia, PA 19104

Vincent R. Mazeski
Assistant Counsel
Pa. Department of Corrections
Office of Chief Counsel
1920 Technology Parkway
Mechanicsburg, PA 17050


<u>        /S/ Samuel H. Foreman        </u>
Samuel H. Foreman, Esquire


Dated:    <u>    February 21, 2017    </u>