**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SALVATORE CHIMENTI, et al.,** | : | |
| | : | **CIVIL ACTION No: 15 Civ. 3333** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **Judge John R. Padova** |
| | : | |
| **PENNSYLVANIA DEPARTMENT OF** | : | |
| **CORRECTIONS, et al.** | : | **(Filed via ECF)** |
| | : | |
| **Defendants.** | : | |

**PLAINTIFFS' JOINT OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS**

## I.     INTRODUCTION

Plaintiffs Salvatore Chimenti, David Maldonado, and Daniel Leyva filed this putative

class action in 2015 to remedy violations of their rights under the Eighth Amendment of the U.S.

Constitution and Pennsylvania state law stemming from Defendants' systemic failure to provide

necessary medical treatment to prisoners in the Pennsylvania Department of Corrections

("DOC") infected with Hepatitis C ("HCV"), and in particular, the denial of direct acting anti-

virals ("DAAD") that can cure HCV.

The defendants filed Motions to Dismiss for all claims, which this Court denied in part

and granted in part.  The Court sustained the core Eighth Amendment claim of deliberate

indifference to necessary medical care, and the state law claims of a constitutional denial of

necessary medical care and of medical negligence.  (*See* Docket No. 26: Ct. Op. of March 21,

2016, also at *Chimenti v. Pa. Dep't of Corr., Civil Action No. 15-3333, 2016 U.S. Dist. LEXIS

36682 (E.D. Pa. March 21, 2016).*

Thereafter, the DOC issued a new protocol ("Protocol," attached as Exhibit A) for the treatment of inmates with HCV, and the parties have engaged in discovery on both class certification and the merits issues.[1]  On February 1, 2017, plaintiffs filed an Amended Complaint that reflected factual developments reflected in discovery and which named as defendants the individuals with direct and personal involvement in HCV treatment and protocols.

In response, the defendants have filed Motions to Dismiss.  The DOC defendants argue that the adoption of a protocol eliminates any possible claim for relief even if, as specifically alleged by plaintiffs, the Protocol by its own terms and as implemented, continues to deny necessary medical care for serious HCV conditions to thousands of inmates in the DOC.  The DOC defendants concede, as they must, that under this Court's ruling on the first Motion to Dismiss, allegations of lack of treatment for Hepatitis C state both federal and state claims.  *See* Ct. Op. of March 21, 2016 at 7-11.  Nevertheless, they maintain that a Protocol that continues to deny treatment to over 98% of those inmates in need of such medical care defeats claims of deliberate indifference and medical negligence.  In advancing this argument, the DOC defendants not only ignore this Court's Opinion, but violate the cardinal principle under Rule 12(b)(6):  that all plausible factual allegations must be accepted as true, including here, the very factual allegations that this Court found sufficient in the original Complaint.

The private medical providers, Correct Care Solutions ("CCS") and Wexford Health Sources, Inc. ("Wexford") argue that under the Protocol, they have no responsibility for determining who received the Hepatitis C DAAD drug treatment.  In addition, several of the individual private provider defendants assert that they have not been involved in any past denial

---

[1] Written discovery is virtually completed, and depositions will be completed by the end of March 2017.

of medical care.  As discussed below, the private providers continue to shape and implement

Hepatitis C treatment and that they are responsible for denial of treatment to Mr. Chimenti.

## II.     STATEMENT OF FACTS

The Amended Complaint (largely tracking the relevant factual allegations of the original

Complaint) alleges the following facts:

By reason of official policy and practice, thousands of inmates incarcerated in the

Pennsylvania Department of Corrections who are infected with HCV are systematically being

denied medical treatment.  As a result of this policy, plaintiffs suffer from unnecessary pain,

serious medical complications, including liver failure, cancer, and ever-increasing risks of death.

Am. Compl. ¶¶ 1, 22, 30, 32.

HCV is a viral infection primarily spread through contact with infected blood that attacks

the liver and causes hepatitis, or liver inflammation.  *Id*. ¶ 17.  HCV can significantly impair the

liver's ability to assist the body in digesting essential nutrients, filtering toxins from the blood,

and preventing disease.  *Id.*  HCV is the leading cause of cirrhosis (irreversible scarring of liver

tissue) and liver cancer, and is the most common cause of liver transplants.  *Id.* ¶17-19.

Cirrhosis of the liver can cause symptoms such as swelling, increased likelihood of bruising,

jaundice, itching, nausea, and problems with concentration and memory.  *Id.* ¶ 19.  For persons

with HCV, each day without treatment increases the likelihood of cirrhosis, fibrosis, liver cancer,

the need for a liver transplant, complications from the disease, and death from liver failure due to

chronic HCV infection.  *Id.*  Liver transplants are painful, carry a risk of significant

complications, and are nearly impossible for prisoners to obtain.  *Id.* ¶ 21.

For many years, an effective and safe treatment for Hepatitis C infections was an elusive goal. *Id.* ¶ 23. The standard treatment, which included the use of interferon and ribavirin medications, failed to cure large numbers of patients and was associated with pain and other adverse side-effects, including psychiatric and autoimmune disorders, flulike symptoms, and gastrointestinal distress. *Id.* Over the past several years, the approval by the Federal Drug Administration of new "breakthrough" direct-acting antiviral drugs including Sovaldi, Olysio, and Harvoni has "revolutionized" the treatment module for HCV infections. *Id.* ¶ 24.

These drugs have great efficacy in curing HCV and have no adverse side effects. *Id.* ¶ 25. The DAAD cure rates are over 90% for patients treated with Sovaldi and over 95% for those treated with Harvoni. *Id.* ¶ 24-26; *see also* Andrew Pollack, *Harvoni, a Hepatitis C Drug From Gilead, Wins F.D.A. Approval*, N.Y. Times, Oct. 10, 2014, *available at* http://www.nytimes.com/2014/10/11/business/harvoni-a-hepatitis-c-drug-from-gilead-wins-fda-approval.html?_r=0.

The standard of care in the community for <u>all</u> persons with HCV is treatment with DAADs (subject to a single exception for those with very short life expectancies). *Id.* ¶ 27. There are no alternative treatments recognized by medical experts, and the new treatment modules have been endorsed by the leading medical societies, including the American Association for the Study of Liver Diseases ("AASLD"), Infectious Diseases Society of America ("IDSA"), the Center for Disease Controls, Medicare, the Veterans Administration, and most private insurers and providers. *Id*. ¶ 27; *see also* Exhibit B: AASLD Recommendations at 1, 2. Defendants have failed, with deliberate indifference, to implement treatment policies or provide necessary medical treatment to almost all inmates with Hepatitis C infections, as they fail to provide medical care consistent with current medical and community standards. *Id.* ¶ 30.

Chronic Hepatitis C is diagnosed on a fibrosis level scale of F-0 to F-4, with levels F-0 and F-1 including persons with early stage chronic Hepatitis C, of whom over 70%, if not treated with DAAD, will progress to serious fibrosis and, of that group, 30% will develop cirrhosis of the liver.  *Id*. ¶ 31.  All persons with Chronic Hepatitis C risk liver cancer, liver failure, diabetes, heart failure, kidney disease, and serious physical and mental pain and suffering.  *Id*.

Defendants' rationing of DAAD forces Plaintiffs and the plaintiff class to endure chronic inflammatory disease, pain, fatigue, increased risks of cancer, liver failure, heart attacks, and death, before any DAAD treatment is provided.  *Id*. ¶¶ 1, 32.  Plaintiffs and all class members have a substantially increased risk of continued Hepatitis C infection, liver disease, liver cancer, cirrhosis, extra-hepatic diseases and conditions, and death.  *Id.*  There is no medical justification for a treatment module for HCV infection that does not provide DAAD to all inmates with chronic Hepatitis C, except for those with very short life expectancy or release dates less than three months from the start of DAAD treatment.  *Id*. ¶ 33.  Delays in treatment reduce the efficacy of treatment, as the "cure" provided by the DAAD eliminates the virus, but does not heal the liver, which can suffer irreversible damage, or alleviate all symptoms caused by damage to the liver or extra hepatic conditions.  *See* Exhibit B at 3, 11.

In sum, plaintiffs have alleged that there is no <u>medical</u> justification for a treatment module for Hepatitis C infection that does not utilize the most recently approved direct-acting antiviral drugs to all inmates with HCV.  By not providing necessary medical care, the DOC Defendants risk substantial harm to Plaintiffs and those similarly situated, including physical and emotional suffering, and death.

III.    **ARGUMENT**

   A.    Governing Legal Standards

In deciding a Rule 12(b)(6) motion to dismiss, the court must take all well-pleaded allegations as true and construe the complaint in the light most favorable to the plaintiff. *Colburn v. Upper Darby Township*, 838 F.2d 663, 665 (3d Cir. 1988); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when its factual content allows the court to draw a reasonable inference that the defendants are liable for the misconduct alleged.  556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

To be deemed adequate at the pleading stage, a complaint need not demonstrate that the plaintiff will prevail on the merits and need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting Fed. R. Civ. P. 8(a)), and "enough factual matter (taken as true) to suggest" the required elements of the claim, or to permit inferences to be drawn that these elements exist. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (*quoting Twombly*, 550 U.S. 544).

If a complaint is vulnerable to dismissal, the district court "must permit a curative amendment, unless an amendment would be inequitable or futile."  *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).  "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility."  *Id*.

As noted above, the Motions to Dismiss present three related grounds for dismissal. First, the DOC defendants argue primarily that the Amended Complaint fails to state Eighth Amendment claims.  Second, the DOC individual defendants argue that certain defendants are either immune from suit or have no role in Hepatitis C treatment.  Third, the private provider defendants join in the constitutional arguments and also claim that they have no role in Hepatitis C policy formulation or implementation.

      B.     <u>Plaintiffs State a Claim Pursuant to the Eighth Amendment of the United States Constitution</u>

As this Court has already ruled on virtually identical allegations, Plaintiffs have stated a claim under the Eighth Amendment for failure to provide necessary medical treatment for Hepatitis C:

> To state a claim under the Eighth Amendment for denial of medical care, a plaintiff must plausibly allege that a defendant showed "deliberate indifference to serious medical needs of [a] prisoner[ ]." *Estelle*, 429 U.S. at 104. . . . "Deliberate indifference can be shown by a prison official `intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.'"  *Rhines v. Bledsoe*, 388 F. App'x 225, 227 (3d Cir. 2010) (quoting *Estelle*, 429 U.S. at 104-05). "A medical need is serious if it `has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)). Moreover, the medical need must be such that "`a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death.'" *Tsakonas v. Cicchi*, 308 F. App'x 628, 632 (3d Cir. 2009) (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 2023 (3d Cir. 1991)).

Ct. Op. of March 21, 2016 at 9-10; *see also Beers-Capitol v. Whetzel*, 256 F.3d 120, 131 (3d Cir. 2001); *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004); *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987).

Other courts, recognizing that HCV causes serious medical conditions such as liver failure, cirrhosis, liver cancer, and death, have also ruled that this infectious disease must be treated.  *See Roe v. Elyea*, 631 F.3d 843, 858 (7th Cir. 2011) (finding that the right to treatment

for Hepatitis C is so well-established defendants are not entitled to qualified immunity); *Mumia Abu-Jamal v. Wetzel*, 3:16-CV-2000, 2017 U.S. Dist. LEXIS 368, at *30-31 (M.D. Pa. January 3, 2017) (finding the same Protocol at issue in this case violates Eighth Amendment); *Hilton v. Wright*, 928 F. Supp. 2d 530, 547 (N.D.N.Y. 2013); *Henry v. Maue*, Civil Action No. 06-1439, 2008 U.S. Dist. LEXIS 118627, at *7 (W.D. Pa. Dec. 10, 2008) (finding that Hepatitis C constitutes a serious medical need); *Christy v. Robinson*, 216 F. Supp. 2d 398, 413 (D.N.J. 2002) (same).[2]

The original Complaint alleged a lack of treatment for HCV arising from the DOC policy of "monitoring" HCV patients pending adoption of an HCV treatment protocol. As a result, medical treatment, except in the most extreme cases of liver failure, cancer, and imminent death, was not provided. As specifically alleged in the Amended Complaint, the current Protocol, both as written and as implemented, continues the same practice and policy of "monitoring" for the vast majority (over 98%) of inmates infected with HCV (*see* Am. Compl. ¶ 1), thus denying them the medical treatment necessary to treat their serious and worsening medical conditions.

HCV is a progressive disease that can cause a host of serious medical conditions, including those that result from damage to essential liver functions, and those that are extra-hepatic, that is harm caused by the virus, but not directly connected to liver functions. These conditions, which include heart attacks, diabetes, cancer, fatigue, joint pains, and depression, can manifest themselves even at early stages of the disease, and which, if not treated with DAAD,

---

[2] Defendant DOC quotes at length (*see* DOC Ds Br. at 6-8) this Court's opinion in *O'Leary v. Wexford Health Services, Inc.*, 2017 U.S. Dist. LEXIS 5911 (E.D. Pa. January 17, 2017). But that case stands for the unremarkable proposition that a prisoner who receives treatment, suffered no injuries from any delay in treatment, was treated by outside specialists, and was treated by a competent surgeon, though not of his choosing, fails to state a claim for deliberate indifference. There is no valid comparison between *O'Leary* and this class action case. We address below the cases string-cited by the defendants that are either inappropriate or otherwise not controlling.

become more pronounced as the disease progresses from Fibrosis Stage 0 ("F-0") to F-4. Significantly, symptoms can be manifest at any stage of the disease.  And, delay in treatment decreases the benefits provided by the DAAD.  *Mumia Abu-Jamal*, 2017 U.S. Dist. LEXIS 368 at *9 (Findings of Fact ¶ 17).

The current protocol demonstrates a level of indifference to the plaintiffs' medical needs that is at least equal to that existing at the time of the original complaint.  At that time, with the advent of the new DAAD, the DOC adopted a policy of "monitoring" with HCV, but providing no medical treatment to the more than 5,000 inmates who had been diagnosed with HCV.  This Court properly rejected the argument that monitoring was sufficient; therefore, it cannot plausibly be argued two years later, with universal agreement among Hepatitis C medical experts that DAAD treatments are both necessary and available for *all* persons with HCV, that the failure to provide this treatment does not amount to deliberate indifference.

Several lines of authority support this basic proposition.  First, the courts have recognized that a substantial risk of future harm to one's health in prison -- even before any illness or injury has been diagnosed -- states an Eighth Amendment claim where prison officials fail, with deliberate indifference, to address the conditions that risk future harm.  In *Helling v. McKinney*, 509 U.S. 25, 35 (1993), the Supreme Court held that an inmate stated a claim under the Eighth Amendment by alleging prison officials were deliberately indifferent in exposing him to levels of second-hand smoke that posed an unreasonable risk of serious damage to his future health.  The Court reasoned that "[i]t would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them." *Helling*, 509 U.S. at 33. Therefore, an inmate would not have to "wait[] for an attack of dysentery" before successfully seeking a remedy for unsafe drinking water. *Id.*

Prison officials who expose inmates to these conditions are liable, notwithstanding the lack of current serious illness.  The same principle applies with respect to the medical treatment. *See Wilson v. Burks*, 423 Fed. Appx. 169, 174 (3d Cir. 2011) (holding that second hand smoke on housing block where plaintiff susceptible to risk of cancer could be an Eighth Amendment violation); *Atkinson v. Taylor*, 316 F.3d 257, 264-65 (3d Cir. 2003) (denying qualified immunity on ground that dangers of second hand smoke were clearly established); *see also McDonald v. Hardy*, 821 F.3d 882 (finding a claim in the failure to treat high cholesterol because "[c]ustodians are not excused from ensuring adequate treatment for inmates with chronic or degenerative conditions simply because any resulting harms may remain latent or have not yet reached the point of causing acute or life-threatening injuries"); *Powell v. Lennon*, 914 F.2d 1459, 1464 (11th Cir. 1990) (holding that prison's refusal to limit prisoner's exposure to friable asbestos constituted deliberate indifference under the Eighth Amendment); *Lopez v. McGrath*, No. C 04-4782 MHP, 2007 U.S. Dist. LEXIS 39409, at *17 (N.D. Cal. May 30, 2007) (finding little trouble in concluding that "evidence of a serious exposure to MRSA would satisfy the first prong of a deliberate indifference claim").

Second, deliberate indifference can be established even where some "treatment" or medical oversight is provided, particularly where, as here, what is offered as treatment does not conform to established community medical practice standards.  *See, e.g., Keller v. County of Bucks*, 209 Fed. App'x 201 (3d Cir. 2006) (affirming verdict of Eighth Amendment violation for failing to properly treat MRSA infections even though plaintiff was seen by medical staff and was provided with antibiotics); *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990) (explaining that a doctor who "insisted on continuing courses of treatment that the doctor knew were painful, ineffective or entailed substantial risk of serious harm to the prisoners" rises to the level of

deliberate indifference); *Inmates of Allegheny County Jail*, 612 F. 2d 754 (3d Cir. 1979) (a

choice between treatments must be informed by "sound professional judgment"); *Petties v.*

*Carter*, 836 F.3d 722, 730 (7th Cir. 2016) (*en banc*) (rejecting argument that plaintiff complained

only of a "difference of opinion" regarding treatment where standard of care required a specific

mode of treatment; choice by prison of "easier and less efficacious treatment" not sufficient if

not in accord with sound medical judgment); *Roe v. Elyea*, 631 F.3d 843, 857-858 (7th Cir. 2011)

("[A] successful plaintiff need not 'show that he was literally ignored' in his demands for

medical treatment, and a defendant's showing that a plaintiff received 'some' treatment does not

resolve the issue conclusively if the treatment was 'blatantly inappropriate.'"); *McDonald v.*

*Hardy*, 821 F.3d 882, 891 (7th Cir. 2016) (treating high cholesterol condition by medications

only and not providing a proper diet violated Eighth Amendment, where diet is integral part of

treatment of high cholesterol "disagreement" over treatment is not a defense to claim);

*McElligott v. Foley*, 182 F.3d 1248, 1252-54 (11th Cir. 1999) (finding that a jury could find

deliberate indifference where a doctor and nurse repeatedly provided Tylenol and Pepto-Bismol

to address a prisoner's serious stomach pain and vomiting which was ultimately diagnosed as

cancer); *Stewart v. Wenerowicz*, Civil A No. 12-4046, 2015 U.S. Dist. LEXIS 114307, *43, 2015

WL 5092865 (E.D. Pa. Aug. 27, 2015) (explaining that treatment decision made on non-medical

basis, such as costs of treatment, can violate Eighth Amendment).

This case is not one that can be characterized as a mere dispute between the inmate and

medical provider as to the correct choice between competing treatments. As the Amended

Complaint explicitly alleges, there are *no* other medically recognized treatments for HCV; to the

contrary, DAAD are the only recognized treatments and the DOC defendants are denying this

treatment to over 98% of those with HCV. Indeed, the DOC defendants have effectively

conceded that the Amended Complaint accurately alleges a lack of any *medical* justification for this policy when they state that their "policy is to treat all inmates with HCV," but that **use of "DAADs is prioritized on medical need**." *See* DOC Ds Br. at 9 (emphasis added). The defendants cannot have it both ways: claiming on the one hand that *all HCV infected inmates will be treated*, but on the other "prioritizing" the *only recognized treatment* for HCV.[3] As the Amended Complaint makes clear, there is no other treatment for HCV, and "monitoring" of the condition is simply a form of non-treatment.

Third, deliberate indifference can be proven by delay in treatment that has caused either pain and suffering or worsening medical conditions. *See, e.g., McDonald v. Hardy*, 821 F.3d 882, 889 (explaining that the failure to treat high cholesterol is actionable before actual heart attack occurs and that "chronic or degenerative conditions that cause harm that may escalate and have significant future repercussions" must be treated); *Dixon v. County of Cook*, 819 F.3d 343, 350 (7th Cir. 2016) (finding that delay in treatment that caused continued pain is actionable even if not cause of death one month later, and that non-prescription pain medication not sufficient to treat intense pain caused by tumor); *Rivera v. Gupta*, 836 F.3d 839, 842 (7th Cir. 2016) (stating that numbness and pain due to burns must be treated even if they are part of "normal" healing process); *Roe v. Elyea*, 631 F.3d 843, 861-63 (7th Cir. 2011) (upholding jury finding that denial of Hepatitis C treatment was unconstitutional). Here, plaintiffs specifically allege that delay in treatment causes both continual suffering and a worsening of the infectious condition.

---

[3] Indeed, the defendants' claim that they are properly "prioritizing" use of DAAD is a false reading of the Amended Complaint. Plaintiffs have alleged that the Protocol establishes a "rationing" regime. *See* Am. Compl. ¶¶ 1, 32. Prioritizing suggests that the drugs are not available in sufficient amounts; rationing is withholding medical care even though the drugs are available.

Fourth, there is no defense based on an undifferentiated claim of "financial burden."  In the leading case in the Third Circuit, *Monmouth County Correctional Institution Inmates v. Monmouth County*, 834 F.2d 326 (3d Cir. 1987), the Court struck down a policy that required abortions.  The Court ruled that the "use of ineffectual treatments to cut costs" constitutes deliberate indifference.  *Id.* at 347.  To the very limited degree that costs may be considered (e.g., where there is a choice between equally effective treatments), the court must still consider all of the facts and circumstances, a determination that cannot be done on a motion to dismiss.  *See Leavitt v. CMS, Inc.*, 645 F.3d 484, 498-99 (1ˢᵗ Cir. 2011) (explaining that failure to treat HIV condition is improper if done to save money); *McGowan v. Hulick*, 612 F.3d 636, 640-41 (7ᵗʰ Cir. 2010) (reviewing delay in dental surgery and explaining that the facts would be important in the analysis); *Stewart*, 2015 U.S. Dist. LEXIS 114307 at *43, 2015 WL 5092865 (citing cases where courts held that costs were not a proper basis for denial of treatment).

In the one case involving a challenge to the denial of DAAD to an inmate with HCV that was decided on a full record, the court ruled that the DOC Protocol at issue in this case, as written and as implemented, was unconstitutional.  *See Mumia Abu-Jamal v. Wetzel*, 2017 U.S. Dist. LEXIS 368 (M.D. Pa. January 3, 2017).  The court's ruling, though based on the specific facts of a single patient's condition, is relevant to the issues on this motion to dismiss:

> The Hepatitis C Protocol, in both how it is written and how it is implemented, bars those without vast fibrosis or cirrhosis from being approved for treatment with DAA medications.  As such, the Hepatitis C Protocol presents a conscious disregard of a known risk that inmates with fibrosis, like Plaintiff, will suffer from hepatitis C related complications, continued liver scarring and damage progressing into cirrhosis, and from cirrhosis related complications such as ascites, portal hypertension, hepatic encephalopathy, and esophageal varicies.
>
> The Hepatitis C Protocol deliberately delays treatment for Hepatitis C through the administration of DAA drugs such as Harvoni, Sovaldi, and Viekira Pak despite the knowledge of Defendants that sit on the Hepatitis C Treatment committee: (1) that the aforesaid DAA medications will effect a cure of Hepatitis C in 90 to 95 percent of the

cases that disease; and (2) that the substantial delay in treatment that is inherent in the current protocol is likely to reduce the efficacy of these medications and thereby prolong the suffering of those who have been diagnosed with chronic Hepatitis C and allow the progression of this disease to accelerate so that it presents a greater threat of cirrhosis, hepatocellular carcinoma, and death of the inmate with such disease.

*Id.* at *30-31 (internal numbering omitted).

The DOC does not assert any *medical* justification for anything less than universal treatment with DAAD.  To the extent the defendants' denial of DAAD to all HCV inmates is based on "administrative" or "financial" burdens, the Court will soon have a full record upon which to decide these issues.

In a final attempt to salvage their arguments, defendants string-cite a number of district court rulings rejecting claims of an unconstitutional denial of DAAD for inmates with HCV.  *See* DOC Ds Br. at 12-14; CCS/Wexford Ds Br. at 10-12.  But these cases, almost all of which were filed *pro se* (with all of the expected poorly framed pleadings and arguments and, in several cases, with leave to amend), are plainly distinguishable in:  (1) not naming proper defendants or defendants who had any actual knowledge of condition*, see, e.g., Lester v. Clarke*, 2017 U.S. Dist. LEXIS 12819 (W.D. Va. Jan. 31, 2017); *Gonzales v. Corizon Health Care*, 2017 U.S. Dist. LEXIS 8379 (D.N.M Jan. 18, 2017); *Smith v. Corizon*, 2015 U.S. Dist. LEXIS 169699 (D. Md. Dec. 17, 2015); (2) failing to present sufficient facts to show a denial of necessary treatment, *see, e.g., Lester*, 2017 U.S. Dist. LEXIS 12819 (plaintiff was a "no-show" at sick call); *Burnett v. Bishop*, 2017 U.S. Dist. LEXIS 13617 (D. Md. Jan. 31, 2017) (plaintiff's genotype precluded treatment); *Watford v. N.J. State Prison*, 2017 U.S. Dist. LEXIS 4650 (D.N.J. Jan. 12, 2017) (plaintiff was on schedule to receive drug treatment and complaint dismissed without prejudice); *Insley v. Graham*, 2016 U.S. Dist. LEXIS 169640 (D. Md. Dec. 8, 2016) (plaintiff currently receiving Harvoni); *Fitch v. Blades*, 2016 U.S. Dist. LEXIS 183197 (D. Idaho Oct. 27, 2016) (no

claim that DAAD is the only proper treatment); (3) failing to show deliberate indifference given the circumstances of the case, *see, e.g., Burnett,* 2017 U.S. Dist. LEXIS 13617; *Watford,* 2017 U.S. Dist. LEXIS 4650*; Insley,* 2016 U.S. Dist. LEXIS 169640*; Allah v. Thomas*, 2016 U.S. Dist. LEXIS 76962 (E.D. Pa. June 14, 2016) (plaintiff due for parole before treatment could be concluded), (4) failure to exhaust administrative remedies, *see, e.g., Banks v. Gore*, 2016 U.S. Dist. LEXIS 73468 (E.D. Va. June 3, 2016), or (5) complaining of improper treatment aside from denial of DAAD, *see, e.g., Insley,* 2016 U.S. Dist. LEXIS 169640*; Burling v. Jones*, 2017 U.S. Dist. LEXIS 9989 (S.D. Tex. Jan. 24, 2017).

In sum, the defendants have provided no grounds for dismissal of the Eighth Amendment claim for equitable relief. This Court's prior ruling is indistinguishable on the facts and the law and the motion should be denied.

C. The DOC Defendants are not Entitled to Qualified Immunity on the Damage Claim of Plaintiff Chimenti

The DOC defendants make a half-hearted argument that the single damage claim in this case (that of plaintiff Chimenti) for the long term denial of necessary medical care for his HCV condition should be dismissed even if he states a valid Eighth Amendment claim. Defendants allege that because Mr. Chimenti was finally provided DAAD (after many years of seeking proper care for his HCV condition), he cannot state a claim for deliberate indifference. This argument fails. First, as we have already shown, defenses based on supposed "disagreement" as to proper treatment and high costs of treatment are not valid in many circumstances, and in any event often need a fully developed record for resolution. *See Mumia Abu-Jamal*, 2017 U.S. Dist. LEXIS 368. Moreover, in this case, the fact that Mr. Chimenti was finally provided DAAD does not begin to come to terms with the detailed allegations in the Amended Complaint as to the years-long denial of necessary care before the advent of DAAD, and then the several year delay

after DAADs were available for treatment.  Exacerbating the delays were defendants' insistence that Plaintiff Chimenti undergo a dangerous biopsy before authorizing him to be seen by a hepatologist, even after one radiologist already deemed the procedure to be too dangerous.[4]

Second, once the high level of culpability reflected in the deliberate indifference standard is established, there is almost never a situation where a medical or correctional defendant is entitled to qualified immunity on the ground that she did not have reason to know that the denial of treatment was impermissible. *See, e.g, Beers-Capitol v. Whetzel*, 256 F.3d 448 (3d Cir. 2001) (explaining that no qualified immunity once deliberate indifference is established); *see also Barton v. Taber*, 820 F.3d 958, 962-63, 968 (8th Cir. 2016) (denying qualified immunity where no medical care was provided to unresponsive detainee); *Dixon v. County of* Cook, 819 F.3d 343, 350 (7th Cir. 2016) (holding that failure to properly treat pain from tumor can constitute constitutional claim); *Valderamma v. Rousseau*, 780 F.3d 1108, 1112 (11th Cir. 2015) (finding that in a case of the denial of care to inmate with serious injuries, the fact that there was no prior case on point was not a basis for denying qualified immunity); *Goebert v. Lee*, 510 F.3d 1312, 1331 (11th Cir. 2007) (denying qualified immunity where treatment was denied to pregnant inmate); *Quigley v. Thai*, 707 F.3d 675, 685 (6th Cir. 2013) (denying qualified immunity to prison psychiatrist for prescribing dangerous combination of medication son ground that the principle that a doctor cannot consciously expose a patient to an excessive risk of serious harm "is enshrined in our caselaw"); *Al-Turki v. Robinson*, 762 F.3d 1188, 1191-92, 1195 (10th Cir. 2014) (denying nurse qualified immunity for ignoring diabetic plaintiff's complaints of severe

---

[4] Furthermore, Plaintiff Chimenti's Eighth Amendment claim is for proper medical treatment, not just the provision of DAADs.  Despite the treatment by DAADS, and because of the delay, Plaintiff Chimenti will continue to suffer from stage 4 cirrhosis, and will still require proper medical treatment for the effects of Hepatitis C and the damage to his liver.

abdominal pain even though pain turned out to be symptom of non-serious kidney stone; fact that nurse ignored what could have been sign of serious complications of diabetes enough to violate clearly established right); *Thomas v. Cook County Sheriff's Department*, 588 F.3d 445, 463 (7th Cir. 2009) (sustaining damage award against individuals and City for failure to properly treat inmate who died of meningitis); *Gibson v. Moskowitz*, 523 F.3d 657, 668 (6th Cir. 2008) (upholding damage award for wrongful death of inmate who dies of dehydration after being kept in extremely hot room while on psychiatric medications).

Third, and more particularized to the facts alleging denial of DAAD, there is no authority for the proposition advanced by the defendants that a long and inexcusable delay in treatment that causes significant worsening of the disease and substantial pain and suffering can be remedied by treatment years later. To the contrary, the courts have ruled that delayed treatment is unconstitutional. *See supra* at p. 12.

D. Specific DOC Defendants

**1. DOC Defendant Wenhold**

Plaintiffs alleged that DOC Defendant Rich Wenhold is currently personally involved in the denial of direct-acting antiviral medications to Plaintiffs and the plaintiff class. Defendant Wenhold is one of three members of the DOC Hepatitis C Treatment Committee, which as alleged in the Amended Complaint (based on discovery), is the Committee charged with making the final determinations of which inmates will receive DAAD as treatment for HCV. Am. Compl. ¶ 10. *See also* Exhibit A at p. 20-10. In that capacity he would be a final policymaker for HCV medical treatment. *See Mumia Abu-Jamal*, 2017 U.S. LEXIS 368, at *17. However, recent discovery has revealed that Mr. Wenhold's role is purely administrative in nature and he

does not participate in deciding which inmates will received DAAD treatment.  On that basis, we agree to his dismissal.

### 2.      The DOC

Plaintiffs agree that the DOC has Eleventh Amendment immunity from suit under § 1983 and should be dismissed.

### 3.      Secretary Wetzel

Plaintiffs agree that defendant Wetzel is not a medical provider and therefore is not subject to suit under a state law negligence theory.  However, he can be sued for equitable relief under the Pennsylvania Constitution.  As the Third Circuit ruled in *Pocono Mt. Charter School v. Pocono Mt. School District*, 442 Fed App'x 681, 688 (3d Cir. 2011):

> Although monetary relief is barred for claims under the Pennsylvania Constitution, equitable remedies are available.  *See Moeller v. Bradford County*, 444 F.Supp.2d 316, 320-21 (N.D. Pa. 2006)("[i]t is well settled that individual plaintiffs may bring suit for injunctive relief under the Pennsylvania Constitution); *Jones*, 890 A.2d at 1216 ("[O]ther remedies, such as declaratory or injunctive relief . . . are . . . remedies under the Pennsylvania Constitution.").  On remand, the District Court must consider whether plaintiffs have states a valid claim for injunctive relief under Article I, § 3 or Article 1, § 26 of the Pennsylvania Constitution.  (Footnotes omitted).

Therefore, the injunctive relief claim should remain.

### E.      Correct Care Solutions and Wexford Health Are Liable Under Federal and State Law

Correct Care Solutions and Wexford Health were named as defendants under Section 1983 for their refusal to provide medical treatment for prisoners infected with Hepatitis C.  As medical providers under contract with the state, they act under color or law and are fully liable for denial of necessary medical treatment.  *See Natale v. Camden County Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003); *supra* at pp. 6-14.

At this juncture, defendant Wexford is no longer the medical provider and therefore no claim is made against this defendant as to equitable relief.  However, defendant Wexford is a proper defendant for purposes of plaintiff Chimenti's federal and state claims for <u>damages</u> for denial of proper medical treatment.  CCS and Wexford can be held vicariously liable under the supplemental state medical malpractice claims.  40 Pa. Stat. Ann., § 1303.516.  *See* 40 Pa. Stat. Ann. § 1303.516 (vicarious liability).

Defendant Correct Care Solutions is also liable to Mr. Chimenti and, because it continues to play a role in the policy making and implementation process of Hepatitis C treatment, it is liable as well under federal and state law for equitable relief.  As alleged in the Amended Complaint, and as supplemented by the recent deposition of Defendant Noel, as Medical Director of CCS, defendant Cowan participated in the deliberations regarding the Protocol and for close to a year engaged directly in individual care determinations regarding treatment with DAAD.  Further, the open position of the Hepatitis C Committee will be filled by an official from CCS.  As the Medical Director of CCS for the implementation of the DOC medical contract, which, CCS provides medical care on a statewide basis, defendant Cowan (and his successor on the Committee) are final policymakers and therefore, CCS is a proper defendant. *See supra* at pp. 6-14.

## 5.    Individual Defendants Kephart, Cowan and Frommer

Individual defendants Kephart, Cowan, and Frommer are proper defendants.  First, defendant Cowan is liable because of his personal and direct participation in the adoption and implementation of the protocol that denies necessary treatment to inmates with Hepatitis C. Those who know of the need for treatment of serious health conditions are liable for constitutional deprivations if they deny such treatment by practice or policy or if they acquiesce

in the deprivation. *See Monmouth County Correctional Inst. Inmates*, 834 F.2d at 346. Liability is properly alleged here as defendant Cowan, currently the statewide Medical Director for defendant Correct Care Solutions (Am. Cmplt. ¶ 13), participated in the deliberations regarding the Protocol, and for a period of time served on the Hepatitis C Treatment Committee where he participated in decisions as to which inmates would receive DAAD.[5]

Defendant Kephart denied critical medical treatment for Plaintiff Chimenti through the delay and denial of regular ultrasounds and CT scans that are vital in tracking the progress of Hepatitis C, which can be a basis for an Eighth Amendment violation. *See Tillery v. Owens*, 719 F. Supp. 1256, 1308 (W.D. Pa. 1989), *aff'd*, 907 F.2d 418 (3d Cir. 1990) (explaining that the failure to inquire into essential facts necessary to make a professional judgment may constitute an Eighth Amendment claim). Dr. Kephart was also involved in email discussions between Defendant Noel and Dean Rieger (Deputy Chief Clinical Officer of CCS) in determining whether or not to provide the DAAD to Plaintiff Chimenti. Therefore, he had a role in whether or not Plaintiff Chimenti was being properly considered for DAAD treatment.

The failure to make a timely referral to the appropriate medical personnel may constitute deliberate indifference. *Fisher v. Marks*, No. 84-3366, 1985 U.S. App. LEXIS 22098, at *6-7 (3d Cir. March 13, 1985) (unpublished); *see also LeMarbe v. Wineski*, 266 F.3d 429, 440 (6th Cir. 2001) (holding that the failure to make timely referral to a specialist was deliberate indifference). Here, Plaintiff alleges that Defendant Kephart also failed to refer Plaintiff Chimenti to a hepatologist or gastroenterologist, despite multiple requests by Plaintiff Chimenti.

---

[5] At a deposition of defendant Noel on February 24, 2017, it was learned that defendant Cowan no longer serves on the Committee, but that he continues to make treatment decisions, after the Committee has designated inmates for DAAD treatments. His deposition will be taken at the end of March 2017.

Am. Compl. ¶ 45, 46.  As medical director of SCI Smithfield where Plaintiff Chimenti has been housed, Defendant Kephart reviewed and approved all requests for any outside medical providers, including hepatologists, and had the duty to receive and review reports from any outside medical providers.  *Id*. ¶ 50.  These allegations are sufficient to state an Eighth Amendment claim.

Defendant Frommer similarly denied necessary medical treatment for Plaintiff Chimenti. Plaintiff Chimenti alleges that Dr. Frommer denied and delayed regular ultrasounds and CT scans, which are necessary for individuals with stage 4 cirrhosis.  Am. Compl. ¶ 45.  Dr. Frommer is the current medical director of SCI Smithfield, so similar to Defendant Kephart, he reviews and approves all requests for any outside medical providers, including hepatologists, and has the duty to receive and review reports from any outside medical providers.  *Id.* ¶ 50.  Yet he consistently failed to refer Plaintiff Chimenti to a hepatologist, which Plaintiff Chimenti continually requested.  *Id.* ¶ 46, 50, 51.  When a mass was discovered in Plaintiff Chimenti's liver, standard practice provides that both the mass and the Hepatitis C should be evaluated by a hepatologist at the same time, yet this did not occur.  *Id.*  Dr. Frommer insisted that Plaintiff Chimenti undergo a liver biopsy that posed significant health risks to Chimenti before he was to receive any further treatment, even though two radiologists, on two separate occasions, deemed the biopsy too dangerous. *Id. 50-51.*  Furthermore, Dr. Frommer had an opportunity in between the two attempted biopsies and two reports by the radiologists, to have retreated from his stance that Plaintiff required a biopsy before receiving further treatment.  *Id.*

Therefore, claims have been adequately stated against Defendants Cowan, Kephart, and Frommer.

## IV.    CONCLUSION

The Motions to Dismiss should be denied except as to defendants Wenhold and Wetzel

(on state law claims for damages only).

Respectfully submitted,

/s/ David Rudovsky
David Rudovsky, Attorney No. 15168

Kairys, Rudovsky, Messing & Feinberg LLP
718 Arch Street, Suite 501S
Philadelphia, PA  19106
(215) 925-4400

 /s/ Su Ming Yeh
Su Ming Yeh, PA Attorney No. 95111

 /s/ Angus R. Love
Angus R. Love, PA Attorney No. 22392

Pennsylvania Institutional Law Project
718 Arch Street, Suite 304S
Philadelphia, PA 19106
(215) 925-2966

 /s/ Stephen Brown
Stephen Brown, PA Attorney No. 27829

/s/ Christine Levin
Christine Levin, PA Attorney No. 37807

/s/ Rose Marie Wong
Rose Marie Wong, PA Attorney No. 320602

Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
(215) 994-2404

*Attorneys for Plaintiff*

DATE:  March 15, 2017

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SALVATORE CHIMENTI, et al., | : | |
| | : | CIVIL ACTION NO: 15 Civ. 3333 |
| Plaintiffs, | : | |
| | : | |
| v. | : | Judge John R. Padova |
| | : | |
| PENNSYLVANIA DEPARTMENT OF | : | |
| CORRECTIONS, et al. | : | (Filed via ECF) |
| | : | |
| Defendants. | : | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Plaintiffs' Joint Opposition to Defendants' Motions To Dismiss, filed by Su Ming Yeh, at the Clerk's Office for the United States District Court of the Eastern District of Pennsylvania was served via ECF upon the following on March 15, 2017:

Vincent Mazeski
Chief Counsel's Office
Pennsylvania Department of Corrections
1920 Technology Parkway
Mechanicsburg, PA
vmazeski@pa.gov
*Counsel for DOC Defendants*

Samuel Foreman
Caitlin Goodrich
Noah Katz
Weber Gallagher Simpson
Stapleton Fires & Newby, LLP
2 Gateway Center
Suite 1450
Pittsburgh, PA 15222
sforeman@wglaw.com
*Counsel for CCS and Wexford Defendants*

<u>      /s/ Su Ming Yeh      </u>
Attorney ID:  PA 95111
Pennsylvania Institutional Law Project
718 Arch Street, Suite 304 South
Philadelphia, PA 19106
smyeh@pailp.org

23