IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SALVATORE CHIMENTI, ET AL. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA DEPARTMENT | : | |
| OF CORRECTIONS, ET AL. | : | NO. 15-3333 |

## <u>MEMORANDUM</u>

**Padova, J.**                                                                                             **August 7, 2017**

Plaintiffs have brought this class action lawsuit against the Pennsylvania Department of Corrections (the "DOC") and officials and employees thereof (collectively the "DOC Defendants"), and two companies that have contracted to provide medical services for the DOC and officials and employees thereof (collectively the "Medical Defendants"), asserting claims regarding the medical care provided to DOC inmates who have been diagnosed with Hepatitis C. Before the Court are two Motions to Dismiss the Amended Complaint, one brought by the DOC Defendants and the other by the Medical Defendants. For the following reasons, each Motion is granted in part and denied in part.

## I.     FACTUAL BACKGROUND

The Amended Complaint alleges the following facts. Plaintiffs Salvatore Chimenti, Daniel Leyva, and David Maldonado are all incarcerated in DOC facilities and all suffer from Hepatitis C. (Am. Compl. ¶ 2.) Defendant John Wetzel is the Secretary of the DOC, Defendant Paul Noel is the Chief Medical Director of the DOC, and Defendant Rich Wenhold is the Infection Control Coordinator at the DOC; both Noel and Wenhold serve on the DOC's Hepatitis C Treatment Committee. (Id. ¶¶ 9-11.) Defendant Correct Care Solutions began providing health care services for DOC facilities on September 1, 2014, and is the current health care

provider for all DOC facilities. (Id. ¶ 12.) Defendant Jay Cowan is the statewide Medical Director for Correct Care Solutions and serves on the DOC's Hepatitis C Treatment Committee. (Id. ¶ 13.) Defendant Dr. John Kephart was the Medical Director at SCI Smithfield during relevant time periods. (Id. ¶ 14.) Defendant Dr. James Frommer is the current Medical Director at SCI Smithfield. (Id. ¶ 15.) Defendant Wexford Health Sources, Inc. was the health care provider for all DOC facilities prior to Correct Care Solutions. (Id. ¶ 16.)

A.    Hepatitis C and Its Treatments

Hepatitis C is a viral infection that is primarily spread through contact with infected blood. (Id. ¶ 17.) Hepatitis C attacks the liver and causes hepatitis (inflammation of the liver), "which can significantly impair the liver's ability to assist the body in digesting essential nutrients, filter toxins from the blood, and prevent disease." (Id.) Hepatitis C can be acute or chronic. (Id. ¶ 18.) Acute Hepatitis C is a short-term illness that occurs within the first six months of exposure to the virus and can lead to Chronic Hepatitis C. (Id.) Chronic Hepatitis C is a "long-term illness[] that can last throughout a person's life" and is "the leading cause of cirrhosis (irreversible scarring of liver tissue) and liver cancer and is the most common cause of liver transplants." (Id. ¶ 19.) Chronic Hepatitis C can also lead to "chronic liver disease, liver fibrosis (scarring of liver tissue)," liver cancer, liver failure, diabetes, heart failure, kidney disease, and death. (Id. ¶¶ 19, 31.) There are more than 5400 DOC inmates in the proposed class who have suffered and will continue to "suffer grave and irreparable harm unless the Court orders Defendants to provide [them with] safe and effective treatment with direct-acting antiviral drugs." (Id. ¶ 22.)

In the past, the standard treatment for Hepatitis C infections, "which included the use of interferon and ribavirin medications, failed to cure large numbers of patients and was associated

with painful and other adverse side-effects, including psychiatric and autoimmune disorders, flulike symptoms, and gastrointestinal distress." (Id. ¶ 23.) Over the past three years, the Federal Drug Administration ("FDA") has approved new direct-acting antiviral drugs ("DAADs"), including Sovaldi, Olysio, and Harvoni, to treat Hepatitis C infections. (Id. ¶ 24.) Sovaldi, Olysio, and Harvoni, when properly administered, "have no adverse side-effects and are highly effective in creating a sustained viral response and a full cure of Hepatitis C infection[s]." (Id. ¶ 25.) Treatment with DAADs for 8-12 weeks cures more than 90% of patients and has become the standard of care in the community for Hepatitis C. (Id. ¶¶ 26-27.) The following entities have recommended DAADs for the treatment of all persons with Chronic Hepatitis C: the American Association for the Study of Liver Diseases ("AASLD"), the Infectious Diseases Society of America ("IDSA"), the Center for Disease Control, Medicare, the Veterans Administration, and most private insurers. No other treatments are currently recommended for the treatment of Chronic Hepatitis C. (Id.)

From the time the FDA approved DAADs for the treatment of Hepatitis C in 2013 until November 2016, Defendants failed to develop treatment policies for the use of DAADs and also failed to provide treatment using DAADs to "the vast majority of inmates with Chronic Hepatitis C." (Id. ¶ 28.) In November 2016, the DOC issued a Hepatitis C Protocol that established the DOC's final policy and practices for the treatment of inmates with Hepatitis C and created a rationing system for the treatment of inmates using DAADs.[1] (Id. ¶ 29.) However, the Protocol "arbitrarily denies necessary, appropriate, and constitutionally mandated DAAD treatment to

---

[1] Plaintiffs attached a copy of the Hepatitis C Protocol as Exhibit A to their Joint Opposition to Defendants' Motions to Dismiss. We may consider this document in the context of the Motions to Dismiss because it is undisputedly authentic and Plaintiffs' claims rely on this document. See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

over 98% of inmates with Chronic Hepatitis C, in direct conflict with community health standards." (Id. ¶ 30.) Plaintiffs and members of the class have thus been denied treatment with drugs that would cure their Chronic Hepatitis C. (Id.)

"Chronic Hepatitis C is diagnosed on a fibrosis level scale of F-0 to F-4, with levels F-0 and F-1 including persons with early stage chronic Hepatitis C, of whom over 70%, if not treated with DAAD[s], will progress to serious fibrosis and, of that group, 30% will develop cirrhosis of the liver." (Id. ¶ 31.) Defendants' system of rationing of DAADs means that Plaintiffs and the members of the class they seek to represent will "endure chronic inflammatory disease, pain, fatigue, increased risks of cancer, liver failure, heart attacks, and death, before any DAAD treatment is provided." (Id. ¶ 32.) There is no medical justification for the failure to treat all inmates with Chronic Hepatitis C with DAADs, except for those inmates who have very short life expectancies or release dates less than three months from the start of treatment. (Id. ¶ 33.)

B.    The Plaintiffs

Chimenti has been incarcerated by the DOC since 1983 and is currently held at the State Correctional Institute ("SCI") at Smithfield ("SCI Smithfield"). (Id. ¶¶ 5, 35.) He was diagnosed with Hepatitis C in 1991. (Id. ¶ 36.) He has received different treatments from the DOC since that time, but has not been cured and currently suffers from "Stage 4 compensated cirrhosis with chronic liver failure." (Id. ¶¶ 37-43.) In 2009, the Chief Liver Transplant Specialist from the University of Pittsburgh Medical Center recommended that Chimenti be evaluated for a liver transplant if his Model for End-Stage Liver Disease ("MELD") score rose above 10. (Id. ¶ 44.) His MELD score is currently 12.[2] (Id. ¶ 43.)

_____

[2] "The MELD score is a measure of mortality risk in patients with end-stage liver disease and is used as a disease severity index to prioritize allocations of organs for transplant." (Am. Compl. ¶ 43)

In late 2013, Chimenti began requesting treatment with DAADs, but Defendants denied that treatment for approximately three years. (Id. ¶¶ 47-48, 54.) In late 2014 and early 2015, emails were exchanged between Dr. Noel, Dr. Dean Rieger (Deputy Chief Clinical Officer of Correct Care Solutions), and Dr. Kephart, discussing Chimenti's medical treatment. (Id. ¶ 49.) They decided that Chimenti should only be monitored and that there was no urgent need to treat him with DAADs. (Id.) "In the fall of 2015, a mass was discovered in Chimenti's liver." (Id. ¶ 51.) Defendants, particularly Dr. Frommer, "insisted that Chimenti undergo a liver biopsy before providing any further treatment or referring Mr. Chimenti to a hepatologist . . . even though a biopsy is . . . [not] part of the standard of care due to the risk of bleeding and seeding." (Id.) Chimenti ultimately consented to undergo the biopsy, although two different radiologists subsequently determined that a liver biopsy would be too dangerous due to the location of the mass. (Id.) In March 2016, Chimenti had a meeting with medical staff, including Dr. Frommer, regarding his Chronic Hepatitis C and related medical conditions. (Id. ¶ 52.) The medical staff agreed to recommend that Chimenti be treated with DAADs and referred to a transplant hepatologist. (Id.) However, this recommendation was denied by the DOC. (Id.) While Defendants delayed and denied his requests for treatment with DAADs, Chimenti suffered from the symptoms of Chronic Hepatitis C, including "cirrhosis, and a failing liver, . . . hypertension, jaundice, confusion, bad odor, and poor laboratory test results." (Id. ¶ 53.) Even though Chimenti had stage 4 cirrhosis (the most advanced stage), he was not referred to a hepatologist for an evaluation until July 2016 and was not treated with DAADs until October 2016. (Id. ¶ 54.) As a result of Defendants' denial and delay of necessary medical treatment, Chimenti continued to suffer from Chronic Hepatitis C, advanced cirrhosis, the risks of liver failure and death, and physical and emotional pain and suffering. (Id. ¶ 56.) Additionally, he suffered from

further deterioration of the condition of his liver during the time he was waiting to be treated with DAADs, to the point that a mass developed in his liver, and he may still need a liver transplant. Chimenti was finally treated with DAADs in October 2016. (Id. ¶ 57.)

Leyva was diagnosed with Hepatitis C in 2001 or 2002, while he was incarcerated at SCI Albion. (Id. ¶ 60.) He is presently incarcerated at SCI Retreat. (Id. ¶ 6.) He has been treated with interferon and ribavirin, but those drugs did not cure his infection. (Id. ¶ 61.) He has asked to be treated with DAADs, but was informed by his doctor that the treatment is too costly. (Id. ¶¶ 63, 65-66.) Leyva experiences pain, fatigue, and jaundice because of his Hepatitis C and requires treatment to prevent further liver damage. (Id. ¶ 67.) He has not yet received treatment with DAADs. (Id. ¶ 68.)

Maldonado has been incarcerated by the DOC since 1980 and was diagnosed with Hepatitis C in 1997. (Id. ¶¶ 69-70.) He is presently incarcerated at SCI Graterford). (Id. ¶ 7.) He was unsuccessfully treated for his Hepatitis C in 2001 and 2013. (Id. ¶¶ 71-72.) He has requested treatment with DAADs, but his request was denied on the ground that the DOC was developing a new protocol for treatment of Hepatitis C. (Id. ¶¶ 73-75.) As a result of his Chronic Hepatitis C, Maldonado suffers from elevated liver enzyme levels and also suffers from fibrosis that requires immediate treatment. (Id. ¶¶ 76-77.)

C.    The Putative Class

Plaintiffs seek to represent the following class:

> All persons who are currently incarcerated in a Pennsylvania Department of Corrections facility with a diagnosed condition of Chronic Hepatitis C, and who have at least twelve (12) weeks or more remaining to serve on their sentences, and who have a life expectancy of over one year.

(Id. ¶ 81.) The class includes 5400 inmates in the DOC who are geographically dispersed throughout Pennsylvania. (Id. ¶ 84.) Plaintiffs believe that the following issues are common to

the entire Class: (a) whether treatment with DAADs is the appropriate course of treatment; (b) whether denial of DAADs will injure class members; and (c) whether Defendants' Hepatitis C treatment policy violates the Eighth Amendment and Article I, Section 13 of the Pennsylvania Constitution. (Id. ¶ 85.)

Plaintiffs assert four claims for relief. Count I asserts a claim for violation of Plaintiffs' Eighth Amendment right to receive medical care; Count II asserts a claim for violation of Article I, Section 13 of the Pennsylvania Constitution; Count III asserts a claim for medical malpractice on behalf of Chimenti; and Count IV asserts a claim against Correct Care Solutions and Wexford for medical malpractice on behalf of Chimenti. Plaintiffs seek an injunction ordering the DOC to:

> (a) formulate and implement a Hepatitis C treatment policy that meets the community standards of care for patients with Hepatitis C, (b) that members of the Class be treated with medically necessary and the appropriate direct-acting antiviral drugs based on individual medical testing and medical evaluation regarding each individual's Hepatitis C status, and (c) that members of the class receive ongoing monitoring and medical care per the standard of care for their individual level of liver fibrosis and cirrhosis, including but not limited to appropriate access to and evaluation by a hepatologist and assessment regarding their need for partial or full liver transplant.

(Id. ¶ 98.) Plaintiffs also seek compensatory and punitive damages for Chimenti, reasonable attorney's fees and costs, and such other relief as the Court deems just and equitable. (Id. ¶¶ 99-102.)

The DOC Defendants have moved to dismiss all claims against the DOC and Rich Wenhold, to dismiss Count I in its entirety, to dismiss Count II to the extent that it requests an award of monetary damages for violation of Article I, Section 13 of the Pennsylvania Constitution, and to dismiss Count III to the extent that it asserts a claim for medical malpractice against Secretary Wetzel. The Medical Defendants have moved to dismiss Count I in its entirety

and Count II to the extent that it requests an award of monetary damages for Violation of Article I, Section 13 of the Pennsylvania Constitution. The Medical Defendants have not moved to dismiss Counts III and IV. We held a Hearing on the Motion to Dismiss on April 4, 2017. During that Hearing, Plaintiffs agreed to dismiss all of their claims against the DOC and Defendant Rich Wenhold, and those claims are, accordingly, dismissed. Plaintiffs also agreed to dismiss Count II to the extent that it seeks an award of monetary damages and agreed to limit this claim to a request for injunctive relief against Secretary Wetzel. We therefore dismiss Count II except to the extent that it seeks injunctive relief against Secretary Wetzel. Plaintiffs further agreed to dismiss Count III as against Secretary Wetzel and we therefore dismiss Count III as against Secretary Wetzel. During the April 4, 2017 Hearing, Plaintiffs also agreed to dismiss their claim for injunctive relief in Count I against Wexford and Dr. Kephart and agreed to dismiss their claim for injunctive relief against Dr. Frommer after he leaves his position as the Medical Director of SCI Smithfield. Consequently, we also dismiss Plaintiffs' request for injunctive relief in Count I against Wexford, Dr. Kephart, and Dr. Frommer (as of the date that he leaves his position at SCI Smithfield). We therefore analyze the Motions to Dismiss only as to the remaining claims asserted in Count I of the Amended Complaint.

## II.    LEGAL STANDARD

Both the DOC Defendants and the Medical Defendants have moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). When considering a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d

1192, 1196 (3d Cir. 1993)). We take the factual allegations of the complaint as true and "construe the complaint in the light most favorable to the plaintiff." Carpenters Health v. Management Resource Systems, Inc., 837 F.3d 378, 382 (3d Cir. 2016) (citing Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). Legal conclusions, however, receive no deference, as the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" Wood v. Moss, 134 S. Ct. 2056, 2065 n.5 (2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

A plaintiff's pleading obligation is to set forth "'a short and plain statement of the claim,'" which gives "'the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2), and Conley v. Gibson, 355 U.S. 41, 47 (1957)). The complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Connelly v. Lane Constr. Corp., 809 F.3d 780, 786-87 (quoting Iqbal, 556 U.S. at 679). In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "'to raise a right to relief above the speculative level.'" W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 169 (3d Cir. 2013) (quoting Twombly, 550 U.S. at 555).

## III.   DISCUSSION

Count I of the Amended Complaint asserts a claim against all Defendants pursuant to 42 U.S.C. § 1983 for violation of Plaintiffs' rights under the Eighth Amendment based on the denial of medical care for their Chronic Hepatitis C.   Section 1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  "Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws.  It does not, by its own terms, create substantive rights."  Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (footnote omitted) (citing Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979)).  Consequently, in order to state a claim for relief pursuant to § 1983, "a plaintiff must demonstrate the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States."  Id. (citing Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999), and Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

Count I alleges that the Defendants' "acts and omissions in failing to provide adequate medical care constitute a deliberate indifference to the serious medical needs of prisoners infected with Hepatitis C, thereby establishing a violation of the Eighth Amendment to the United States Constitution."  (Am. Compl. ¶ 90.)  The Eighth Amendment's right to be free from cruel and unusual punishment, which applies to the states via the Fourteenth Amendment, Robinson v. California, 370 U.S. 660, 666 (1962), "imposes duties on [prison] officials, who must . . . ensure that inmates receive . . . medical care, and must 'take reasonable measures to

guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting

Hudson v. Palmer, 468 U.S. 517, 526-27 (1984) (remaining citations omitted)). To state a claim

under the Eighth Amendment for denial of medical care, a plaintiff must plausibly allege that a

defendant showed "[1] deliberate indifference to [2] serious medical needs of [a] prisoner[ ]."

Estelle v. Gamble, 429 U.S. 97, 104 (1976) (quotation omitted). Courts have consistently held

that "mere allegations of malpractice" are not sufficient to allege "deliberate indifference." Id. at

106 n.14 (citations omitted).

"Deliberate indifference can be shown by a prison official 'intentionally denying or

delaying access to medical care or intentionally interfering with the treatment once prescribed.'"

Rhines v. Bledsoe, 388 F. App'x 225, 227 (3d Cir. 2010) (quoting Estelle, 429 U.S. at 104–05).

"A medical need is serious if it 'has been diagnosed by a physician as requiring treatment or one

that is so obvious that a lay person would easily recognize the necessity for a doctor's

attention.'" Id. (quoting Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d

Cir. 1987)). Moreover, "to be considered 'serious,'" the medical need must be such that "'a

failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or

death.'" Tsakonas v. Cicchi, 308 F. App'x 628, 632 (3d Cir. 2009) (quoting Colburn v. Upper

Darby Twp., 946 F.2d 1017, 2023 (3d Cir. 1991)).

A prison official acts with deliberate indifference to a serious medical need "when he

knows of and disregards an excessive risk to inmate health or safety." Brown v. Thomas, 172 F.

App'x 446, 450 (3d Cir. 2006) (citing Farmer, 511 U.S. at 837). "The official must be aware of

the facts from which an inference could be drawn that a substantial risk of serious harm exists,

and he must also draw the inference." Id. (citing Farmer, 511 U.S. at 837). Given these

prerequisites to a valid constitutional claim based on deliberate indifference, factual allegations

suggesting only an "'ordinary lack of due care for the prisoner's interests or safety'" will not suffice to meet the pleading requirements for deliberate indifference under the Eighth Amendment.  Farmer, 511 U.S. at 835 (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)).

A.    The Individual DOC Defendants

The individual DOC Defendants argue that Count I fails to state a claim against them upon which relief can be granted because the Amended Complaint does not allege facts that would establish that they were deliberately indifferent to the Plaintiffs' serious medical needs. They maintain that Count I is based on allegations that they considered cost in deciding which inmates with Hepatitis C would be treated with DAADs and that the inmates with Chronic Hepatitis C would receive treatment with DAADs if they were being treated outside of the prison system.  They further assert that the consideration of costs in deciding appropriate medical treatment cannot, as a matter of law, constitute deliberate indifference.  They also contend that allegations that they deviated from community standards of care amount to mere disagreements with Plaintiffs' medical treatments that do not rise to the level of deliberate indifference to Plaintiffs' serious medical needs.   The individual DOC Defendants also contend that the claim for monetary damages contained in Count I should be dismissed because they have qualified immunity with respect to such a claim.

1.    Costs

The Amended Complaint alleges that the DOC systematically denies treatment with DAADs to inmates with Chronic Hepatitis C.  (Am. Compl. ¶ 1.)  The Amended Complaint further alleges that, while "[m]ajor medical associations, Medicare, the Veterans Administration, and private health insurance companies provide DAAD[s] to all persons with Chronic Hepatitis C," the DOC "refuses to provide treatment with DAADs to more than 98% of inmates with

[C]hronic Hepatitis C" solely because of the cost of these drugs. (Id.) The individual DOC Defendants argue that the allegation that they have adopted a policy for treatment of inmates with Chronic Hepatitis C that rations DAADs and restricts treatment with those drugs solely because of the cost of those drugs[3] cannot support a plausible claim that they are deliberately indifferent to the Plaintiffs' serious medical needs because "the mere assertion that defendants considered cost in treating [plaintiffs' medical conditions] does not suffice to state a claim for deliberate indifference, as prisoners do not have a constitutional right to limitless medical care." Brown v. Beard, 445 F. App'x 453, 456 (3d Cir. 2011) (citing Reynolds v. Wagner, 128 F.3d 166, 175 (3d Cir. 1997) (concluding that allegation that prison officials and medical personnel refused plaintiff's request for hernia surgery due to budgetary concerns was insufficient to state a deliberate indifference claim where documents attached to the complaint showed that medical personnel believed that the hernia was reducible without surgery); see also Winslow v. Prison Health Servs., 406 F. App'x 671, 674 (3d Cir. 2011) (determining that allegation that doctor treated plaintiff with a hernia belt rather than surgery based on the cost of surgery was insufficient to state a claim of deliberate indifference because "the naked assertion that Defendants considered cost in treating [plaintiff's] hernia does not suffice to state a claim for deliberate indifference as prisoners do not have a constitutional right to limitless medical care, free of the cost constraints under which law-abiding citizens receive treatment" (citations omitted)).

---

[3] The DOC Defendants assert that the DOC has 5400 inmates who are infected with Hepatitis C, all of whom would like to be treated immediately with DAADs, and that the treatment of only one individual with DAADs would cost approximately $55,000. (DOC Defs.' Mem. at 9.) However, the cost of treating an inmate with DAADs is not alleged in the Amended Complaint and the DOC Defendants have not cited to any alternate source that supports this assertion. Consequently, we cannot consider the DOC Defendants' assertion that the treatment of a single individual with DAADs would cost $55,000.

The Amended Complaint, however, contains more than the mere assertion that Defendants considered costs in deciding whether patients with Chronic Hepatitis C infections will receive treatment with DAADs or some other appropriate medical treatment. The Amended Complaint alleges that the DOC has developed a policy regarding the treatment of inmates with Chronic Hepatitis C infections, pursuant to which Defendants refuse to provide medically necessary treatment that is mandated by prevailing community medical standards to 98% of inmates with Chronic Hepatitis C infections. (Am. Compl. ¶¶ 1-2, 29-30.) The Amended Complaint further alleges that the DOC has adopted the policy of denying DAADs to more than 98% of inmates with Chronic Hepatitis C infections solely because of costs, and not based on any medical justification. (Id. ¶¶ 1, 33.) The Amended Complaint also alleges that Chronic Hepatitis C infections cause cirrhosis (irreversible scarring of liver tissue), liver cancer, serious chronic liver disease, liver fibrosis (scarring of liver tissue), and other conditions. (Id. ¶ 19.) Moreover, "[f]or persons with chronic Hepatitis C, each day without treatment increases the likelihood of these conditions" and that by failing to provide medically necessary treatment with DAADs, the Defendants have increased the risks that Plaintiffs and other inmates with Chronic Hepatitis C will suffer irreparable harm stemming from their infections. (Id. ¶¶ 19, 22.) Medical treatment with DAADs cures 90-95% of patients treated and has relatively short treatment periods of 8-12 weeks. (Id. ¶ 26.) Furthermore, while the plaintiffs in Brown and Winslow could be treated with less expensive medical treatments than the surgery they sought[4]; the Amended Complaint alleges that DAADs are the only treatments that are presently recommended for Chronic Hepatitis C infections. (Id. ¶ 27.)

---

[4] See Brown, 445 F App'x at 456; Winslow, 406 F. App'x at 674.

We conclude, accordingly, that the Amended Complaint sufficiently alleges that the DOC's use of its Hepatitis C Protocol to ration medical treatment with DAADs based solely on cost, even though there is no other recommended medical treatment for Chronic Hepatitis C, disregards an excessive risk to the health of the infected inmates and thus constitutes deliberate indifference to a serious medical need. As the United States Court of Appeals for the Third Circuit has explained, "while 'administrative convenience and cost may be, in appropriate circumstances, *permissible factors* for correctional systems to consider in making treatment decisions, the Constitution is violated when they are considered to the *exclusion of reasonable medical judgment* about inmate health.'" Allah v. Thomas, 679 F App'x 216, 220 (3d Cir. 2017) (quoting Roe v. Elyea, 631 F.3d 843, 863 (7th Cir. 2011)) (concluding that complaint alleging that DOC denied plaintiff treatment with DAADs for his Hepatitis C infection based solely on cost, causing him to suffer medical complications, "plausibly alleged an Eighth Amendment violation"). Consequently, we deny the DOC Defendants' Motion to Dismiss Count I of the Amended Complaint as to this argument.

### 2. Disagreement regarding treatment

The individual DOC Defendants also argue that the Amended Complaint does not allege a plausible claim of deliberate indifference because it merely asserts that Plaintiffs disagree with the type of treatment that the DOC is providing for their Chronic Hepatitis C. The DOC Defendants maintain that, although the Amended Complaint alleges that they have failed to adhere to community standards for treatment, they are not obligated to provide inmates with the same community standard of medical care that is provided to non-incarcerated citizens. They further assert that the law does not require them to provide inmates with their preferred medication.

The individual DOC Defendants rely on <u>Maggert v. Hanks,</u> 131 F.3d 670 (7th Cir. 1997), in which the United States Court of Appeals for the Seventh Circuit stated that "[a] prison is not required by the Eighth Amendment to give a prisoner medical care that is as good as he would receive if he were a free person, let alone an affluent free person. He is entitled only to minimum care." <u>Id.</u> at 671-72 (citations omitted). <u>See also</u> <u>Goff v. Bechtold</u>, 632 F. Supp. 697, 698 (S.D.W. Va. 1986) (stating that the medical care provided to inmates "need not be the best possible care; it only has to be 'reasonable' care" (citations omitted)); <u>Bruton v. Gillis</u>, Civ. A. No. 04-0083, 2008 WL 4453367, at *12 (M.D. Pa. Sept. 30, 2008) (stating that "the Eighth Amendment does not require that a prisoner receive every medical treatment that he requests or that is available elsewhere"). The DOC Defendants further rely on <u>Rozelle v. Rossi</u>, 307 F. App'x 640 (3d Cir. 2008), in which the Third Circuit rejected a prisoner's Eighth Amendment deliberate indifference claim based on a doctor's failure to prescribe Accutane for the prisoner's acne for safety reasons, and the alternative treatments prescribed by the doctor were successful. <u>Id.</u> at 642-43. The individual DOC Defendants also rely on many cases from this Circuit and others, in which courts rejected Eighth Amendment deliberate indifference claims brought by prisoners who challenged a prison's failure to treat their Hepatitis C infections with the prisoner's preferred drug. <u>See</u> <u>Lasko v. Watts</u>, 373 F. App'x 196, 203 (3d Cir. 2010) (affirming dismissal of prisoner's deliberate indifference claim where the prisoner's treatment with ribavirin and interferon was delayed until he had undergone medically recommended "physical and psychological examinations, extensive laboratory testing, and several counseling sessions"); <u>Hodge v. United States Dep't of Justice</u>, 372 F. App'x 264, 267-68 (3d Cir. 2010) (affirming order granting summary judgment to defendants on prisoner's Eighth Amendment deliberate indifference claim where the doctor did not prescribe all of the medications sought by the

prisoner, who had Hepatitis C, but the prisoner was treated with interferon, monitored, seen at the clinic for complications, and taken to a liver specialist); Neeley v. Carrillo, Civ. A. No. 14-0542, 2015 WL 7251544, at *3 (E.D. Pa. Nov. 17, 2015) (granting summary judgment in favor of defendants on Eighth Amendment deliberate indifference claim where plaintiff claimed that he had received no treatment for his Hepatitis C, but defendants supplied medical records to show that he had seen doctors, had tests, and received treatment); Watford v. New Jersey State Prison, Civ. A. No. 16-7878, 2016 WL 6841079, at *3 (D.N.J. Nov. 21, 2016) (dismissing prisoner's deliberate indifference claim based on prison's failure to treat him with DAADs because the complaint alleged that the prisoner "was provided treatment by both prison doctors and a specialist doctor, and that he received extensive testing 'with the promise' of eventual treatment with the medication he wishe[d] to receive" and "he was told that the doctors believed more testing was necessary before proceeding with treatment with Harvoni"); Murray v. Pa. Dep't of Corrs., Civ. A. No. 15-48, 2016 WL 7744449, at *8, *10 (W.D. Pa. Nov. 16, 2016), approved and adopted by 2017 WL 151636 (W.D. Pa. Jan. 13, 2017) (recommending that defendants' motion for summary judgment be granted where the inmate claimed deliberate indifference to his serious medical need for treatment of his Hepatitis C infection because defendants failed to treat him with Harvoni, but did not allege any specific actions taken by any individual defendant and the plaintiff's medical records showed that he had been "frequently seen, examined, and treated for his HCV condition by . . . members of SCI-Albion's medical staff . . .").

However, none of the authority on which the individual DOC Defendants rely considered the DOC's current Hepatitis C protocol, which was adopted by the DOC after most of the cases on which the individual DOC Defendants rely were decided. In two cases decided since the

DOC adopted the Hepatitis C Protocol, prisoners who brought claims similar to those raised in the instant case were found to have stated claims for deliberate indifference to their serious medical needs. In <u>Allah v. Thomas</u>, the plaintiff alleged that he had requested treatment with Harvoni for his Hepatitis C infection, but was informed "that he could not be given the treatment [be]cause it is expensive." <u>Allah</u>, 679 F. App'x at 220 (alteration in original) (quotation omitted). The plaintiff "argued that this constituted a deliberate indifference to [his] serious medical needs because he was in danger of developing fibrosis and cirrhosis, his liver [was] deteriorating and [he was] having pain in [his] liver area, and he was starting to get and feel tired all the time and [ ] getting yellowing of the skin." <u>Id.</u> (alterations in original) (quotations omitted). The Third Circuit concluded that these allegations were sufficient to allege a deliberate indifference claim, given that "Allah alleged that he did not receive any treatment for his Hepatitis C condition, that he was not placed on a newly developed Hepatitis C treatment regimen solely because it was cost-prohibitive, and that he was suffering medical complications as a result." <u>Id.</u> (citing <u>Roe</u>, 631 F.3d at 863).

In <u>Abu-Jamal v. Wetzel</u>, Civ. A. No. 16-2000, 2017 WL 34700 (M.D. Pa. Jan. 3, 2017), the plaintiff claimed that defendants were deliberately indifferent to his serious medical needs because they refused to treat his chronic Hepatitis C infection with DAADs. <u>Id.</u> at *14. He filed a motion for a preliminary injunction seeking an order requiring the defendants (including Wetzel and Noel) to treat him with DAADs. <u>Id.</u> at *1. The district court had previously held three days of evidentiary hearings in connection with an earlier motion, in which it heard evidence regarding the treatment of Hepatitis C with DAADs, the standard of care for Hepatitis C, and the DOC's Hepatitis C Protocol. <u>Id.</u> at *1-4. The district court reached the following conclusions of law regarding the DOC's Hepatitis C Protocol:

5. The Hepatitis C Protocol, in both how it is written and how it is implemented, bars those without vast fibrosis or cirrhosis from being approved for treatment with [DAAD] medications. As such, the Hepatitis C Protocol presents a conscious disregard of a known risk that inmates with fibrosis, like Plaintiff, will suffer from hepatitis C related complications, continued liver scarring and damage progressing into cirrhosis, and from cirrhosis related complications such as ascites, portal hypertension, hepatic encephalopathy, and esophageal varices.

6. The Hepatitis C Protocol deliberately delays treatment for hepatitis C through the administration of [DAAD] drugs such as Harvoni, Sovaldi, and Viekira Pak despite the knowledge of Defendants that sit on the Hepatitis C Treatment Committee: (1) that the aforesaid [DAAD] medications will effect a cure of Hepatitis C in 90 to 95 percent of the cases of that disease; and (2) that the substantial delay in treatment that is inherent in the current protocol is likely to reduce the efficacy of these medications and thereby prolong the suffering of those who have been diagnosed with chronic hepatitis C and allow the progression of the disease to accelerate so that it presents a greater threat of cirrhosis, hepatocellular carcinoma, and death of the inmate with such disease.

7. Plaintiff was denied the treatment with DAA medications pursuant to DOC policy, not because of any medical exclusions.

8. The named Defendants who sit on the Hepatitis C Treatment Committee deliberately denied administering DAA drugs to Plaintiff despite knowing that administering such drugs was the standard of care. In choosing a course of monitoring over treatment, they consciously disregarded the known risks of Plaintiff's serious medical needs, namely continued liver scarring, disease progression, and other hepatitis C complications.

Id. at *11. The district court concluded that the plaintiff had "established a reasonable likelihood of success of showing that Defendants were deliberately indifferent to his serious medical need" and granted the plaintiff's motion for a preliminary injunction. Id. at *20.

Like the complaints filed in Allah and Abu-Jamal, the Amended Complaint in this action specifically alleges that Plaintiffs have Chronic Hepatitis C infections, that they all currently suffer from, or are at risk of suffering from, serious medical conditions as a result of these infections, and that the DOC has delayed or denied their requests for treatment with DAADs. (See Am. Compl. ¶¶ 43, 47, 53-54, 56-57, 60, 64-66, 67, 70, 73-79.) The Amended Complaint also alleges that the DOC Defendants who participated in the DOC's Hepatitis C Treatment

Committee developed the DOC's Hepatitis C Protocol, which was issued in November 2016. (Id. ¶¶ 10-11, 29.)  The Hepatitis C Protocol rations treatment with DAADs to prisoners with Chronic Hepatitis C based on the prisoner's fibrosis level.  (Id. ¶¶ 29-31.)  The Hepatitis C Protocol prioritizes treatment with DAADs to inmates who already have cirrhosis or liver cancer, are candidates for liver transplants, or have other grave diseases.  (Hepatitis C Protocol at 20-7.) The next highest priority for treatment is patients who have advanced fibrosis, Hepatitis B or HIV coinfections, other liver diseases and chronic kidney disease.  (Id. at 20-89.)  Patients with stage 2 fibrosis are prioritized next, and the lowest priority for treatment is patients with stage 0 or 1 fibrosis.  (Id.)  However, the Amended Complaint alleges that even individuals with stage 0 to 1 fibrosis should be treated with DAADs because, of this group, "over 70%, if not treated with DAAD[s], will progress to serious fibrosis and, of that group, 30% will develop cirrhosis of the liver."  (Am. Compl. ¶ 31.)  Moreover, "[a]ll persons with Chronic Hepatitis C risk liver cancer, liver failure, diabetes, heart failure, kidney disease, and serious physical and mental pain and suffering."  (Id.)

We conclude that the Amended Complaint alleges that the DOC Defendants developed a Hepatitis C Protocol that denies or delays treatment with DAADs to the vast majority of prisoners with Chronic Hepatitis C infections, even though treatment with DAADs is the current standard of care for individuals with Chronic Hepatitis C infections such as the Plaintiffs.   The Amended Complaint further alleges that Plaintiffs have experienced a worsening of their serious medical conditions as a result of the denial or delay of their requests for treatment with DAADs. Moreover, the Amended Complaint also alleges that the individual DOC Defendants have denied or delayed treatment of Plaintiffs with DAADs solely because of the cost of those drugs, and not for any medical reasons.  We further conclude, accordingly, that the Amended Complaint alleges

more than a disagreement about Plaintiffs' medical treatment, or dissatisfaction with the DOC Defendants' denial of Plaintiffs' requests for treatment in favor of a different treatment with a possibility of success. Rather, the Amended Complaint alleges that Plaintiffs have serious medical needs for treatment for their Chronic Hepatitis C and that the DOC Defendants intentionally denied and/or delayed Plaintiffs' access to any medical care for their serious medical needs beginning in 2013. We further conclude, accordingly, that the Amended Complaint alleges facts that are sufficient to state a plausible claim for violation of Plaintiffs' rights under the Eighth Amendment pursuant to §1983 due to the DOC Defendants' deliberate indifference to their serious medical needs. See Rhines, 388 F. App'x at 227 (quotation omitted); Allah, 679 F. App'x at 220; Abu-Jamal, 2017 WL 34700, at *11, 20. Accordingly, we deny the DOC Defendants' Motion to Dismiss Count I of the Amended Complaint as to this argument.

### 3. Qualified immunity

The individual DOC Defendants also argue that they are entitled to qualified immunity with respect to Chimenti's claim for damages in Count I. "'Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" Mirabella v. Villard, 853 F.3d 641, 648 (3d Cir. 2017) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)). As the Supreme Court explained in City and County of San Francisco v. Sheehan, -- U.S. --, 135 S. Ct. 1765 (2015), a public official "'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in [his] shoes would have understood that he was violating it,' meaning that 'existing precedent . . . placed the statutory or constitutional question

beyond debate.'" Id. at 1774 (alterations in original) (quoting Plumhoff v. Rickard, 134 S. Ct. 2012, 2023 (2014); and al–Kidd, 563 U.S. at 741). "This exacting standard 'gives government officials breathing room to make reasonable but mistaken judgments' by 'protect[ing] all but the plainly incompetent or those who knowingly violate the law.'" Id. (alteration in original) (quoting al-Kidd, 563 U.S. at 743). Consequently, our analysis of the DOC Defendants' qualified immunity argument requires a two-step analysis: (1) we decide whether the facts alleged in the Amended Complaint "'make out a violation of a constitutional right'" and (2) we decide whether that right "'was clearly established at the time of [the] defendant's alleged misconduct.'" Montanez v. Thompson, 603 F.3d 243, 250 (3d Cir. 2010) (quoting Pearson v. Callahan, 555 U.S. 223, 232 (2009)). These two steps do not have to be considered in this order. Id. (quoting Pearson, 555 U.S. at 236).

The individual DOC Defendants argue that, based on the allegations of the Amended Complaint, they could not have known that they were violating clearly established law. They rely on Maskelunas v. Wexford Health Source, Inc., Civ. A. No. 14-369, 2015 WL 6686709 (W.D. Pa. Oct. 8, 2015), approved and adopted by 2015 WL 6686719 (W.D. Pa. Oct. 29, 2015), where the district court granted Dr. Paul Noel's motion for summary judgement with respect to the plaintiff's § 1983 claim for damages arising from the DOC's failure to treat his Hepatitis C infection. See id., 2015 WL 6686719, at *1; approving and adopting 2015 WL 6686709, at *1. The magistrate judge recommended that Noel was protected by qualified immunity because Noel's decision to put a hold on the plaintiff's treatment for his Hepatitis C infection was the "result of a statewide directive from the [DOC]," which directive arose from "the rapid change in treatment methods for hepatitis C, including the introduction of Sovaldi as a treatment." Id., 2015 WL 6686709, at *3. The magistrate judge explained that "when the treatment protocols for

a serious medical condition . . . are in flux, it is impossible for a medical care provider to know what the 'contours,' to use the term from <u>Sheehan</u>, of an inmate's rights are." <u>Id.</u>

As we discussed above, the Amended Complaint alleges that the FDA approved the use of DAADs to treat Chronic Hepatitis C infections in 2013 and that the individual DOC Defendants denied Chimenti's requests to be treated with DAADs from late 2013 until October 2016. (Am. Compl. ¶¶ 28, 47-49, 52-54.) While the individual DOC Defendants were denying Chimenti's requests for treatment with DAADs, his medical condition worsened, until, in the fall of 2015, a mass was discovered in his liver. (<u>Id.</u> ¶ 51.) The individual Defendants then required Chimenti to undergo a medically unnecessary and dangerous liver biopsy before they would consider providing him with any further treatment for his Chronic Hepatitis C infection or referring him to a hepatologist. (<u>Id.</u>) Even after the DOC's medical staff, including Dr. Frommer, agreed in March 2016 that Chimenti should receive treatment with DAADs and be referred to a transplant hepatologist, the DOC refused to provide Chimenti with this recommended medical treatment. (<u>Id.</u> ¶ 52.) The Amended Complaint further alleges that, while the individual DOC Defendants delayed and denied Chimenti treatment with DAADs, Chimenti suffered from the symptoms of Chronic Hepatitis C, which include cirrhosis, a failing liver, hypertension, jaundice, and confusion. (<u>Id.</u> ¶ 53.) The DOC did not allow Chimenti, who has stage 4 cirrhosis (the most advanced stage), to be referred to a hepatologist for an evaluation until July 2016 and did not provide him with DAAD treatment until October 2016, causing Chimenti to continue to suffer from the symptoms Chronic Hepatitis C infection. (<u>Id.</u> ¶¶ 53-54, 56-57.)

We concluded above that the Amended Complaint alleges a violation of the Plaintiffs' Eighth Amendment rights. Consequently, we need only determine whether the Amended

Complaint sufficiently alleges that this right "was clearly established at the time of [the] defendant[s'] alleged misconduct." Montanez, 603 F.3d at 250. While the Amended Complaint does not allege the date on which use of DAADs to treat Chronic Hepatitis C became the standard of care in the community for the treatment of Chronic Hepatitis C infections, it does allege that the FDA approved the use of these drugs for treatment of Chronic Hepatitis C in 2013, that the DOC refused to allow Chimenti to be treated with these drugs after doctors employed by the DOC recommended that he receive that treatment, and that the DOC required that Chimenti undergo a dangerous and unnecessary medical procedure prior to receiving treatment with DAADs. We conclude that the allegations of the Amended Complaint do not describe a situation in which the "treatment protocols" for Chronic Hepatitis C were "in flux" for the entire period in which the DOC denied Chimenti's request for treatment with DAADs and required him to undergo an unnecessary and dangerous medical procedure. See Maskelunas, 2015 WL 6686709, at *3. We further conclude, accordingly, that the Amended Complaint does not allege a situation in which it was impossible for the DOC Defendants to know the "contours" of Chimenti's Eighth Amendment rights. See id.; Sheehan, 135 S. Ct. at 1774 (quotation omitted). Consequently, we will not dismiss Chimenti's claim for damages against the individual DOC Defendants pursuant to § 1983 at this stage of the litigation based on qualified immunity, and we deny the DOC Defendants' Motion to Dismiss as to this argument.

> B.     The Medical Defendants

>> 1.     Correct Care Solutions and Wexford

The Medical Defendants move to dismiss Count I as against Correct Care Solutions and Wexford because the Amended Complaint does not allege that either of these Defendants was involved in developing the DOC's Hepatitis C Policy. It is well settled that a municipal entity

cannot be sued under § 1983 for the constitutional torts of its employees.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).  This rule has been extended to private corporations operating under a contract with the state.  See Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).  Indeed, the Third Circuit has made it clear that a private company that provides medical services to inmates at state facilities "'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'"  Sims v. Wexford Health Sources, 635 F. App'x 16, 20 (3d Cir. 2015) (quoting Natale, 318 F.3d at 583). Therefore, in order to state a § 1983 claim against Correct Care Solutions and Wexford, the Amended Complaint must allege "facts to state a claim that [these Defendants] had a policy, custom, or practice, and that the policy, custom, or practice caused the constitutional violation at issue."  Id. (citing Natale, 318 F.3d at 583-84).  See also Stankowski v. Farley, 251 F. App'x 743, 748 (3d Cir. 2007) (stating that a private corporation providing medical care inside a prison may not be held liable for the "constitutional violations committed by its employees, unless [it] has adopted a policy, practice or custom that caused the constitutional violations alleged." (citing Monell, 436 U.S. at 690; and Woodward v. Corr. Med. Servs., 368 F.3d 917, 927 (7th Cir. 2004)); Ozoroski v. Maue, 460 F. App'x 94, 97-98 (3d Cir. 2011) ("To establish Eighth Amendment liability against a private employer . . . the prisoner must 'provide evidence that there was a relevant [corporate] policy or custom . . . that . . . caused the constitutional violation [he] allege[s].'" (second through sixth alterations in original) (quoting Natale 318 F.3d at 584)).

The Amended Complaint alleges that Correct Care Solutions "is the current health care provider for all DOC facilities" and that Wexford "was the previous health care provider for all DOC facilities."  (Am. Compl. ¶¶ 12, 16.)  The Amended Complaint does not allege that either Correct Care Solutions or Wexford established a corporate policy, or had a corporate practice or

custom with respect to the use of DAADs to treat inmates with Chronic Hepatitis C. Nor does it allege that any policy, custom, or practice of Correct Care Solutions or Wexford caused the violations of Plaintiffs' Eighth Amendment rights. We thus conclude that the Amended Complaint does not allege sufficient facts to state a plausible § 1983 claim against either Correct Care Solutions or Wexford for deliberate indifference to Plaintiffs' serious medical needs in violation of the Eighth Amendment. See Sims, 635 F. App'x at 20 (citing Natale, 318 F.3d at 583-84); Ozoroski, 460 F. App'x at 97-98 (quotation omitted)). We thus grant the Medical Defendants' Motion to Dismiss Count I of the Amended Complaint as against Correct Care Solutions and Wexford.

2. The individual medical defendants

The Medical Defendants argue that Count I should be dismissed as to Dr. Cowan because the Amended Complaint does not allege that he had any personal involvement in creating or implementing the Hepatitis C Protocol. "'A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.'" Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (alteration in original) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)); see also Argueta v. U.S. Immigration & Customs Enf't, 643 F.3d 60, 72 (3d Cir. 2011) (quoting Rode, 845 F.2d at 1207; and citing Santiago v. Warminster Twp., 629 F.3d 121, 129 (3d Cir. 2010)). Thus, a conclusory allegation that defendants were "directly involved" in the violations of the plaintiff's rights is not sufficient to allege personal involvement. Bush v. Dep't of Human Svcs., 614 F. App'x 616, 620 (3d Cir. 2015). See also Wright v. Warden, Forest SCI, 582 F. App'x 136, 137 (3d Cir. 2014) (dismissing § 1983 claim

against prison officials where the allegations that those officials "had a 'statutory duty to enforce policies' and govern the 'conduct of their subordinates' . . . fail[ed] to suggest that the Defendants were personally involved in creating or maintaining the dangerous condition" that led to plaintiff's injuries (citation omittied)); Gorrell v. Yost, 509 F. App'x 114, 118 (3d Cir. 2013) (determining that allegation that mailroom officers were "responsible for the daily operations of the mail room" was "insufficient to establish personal liability" with respect to plaintiff's claim that prison mailroom staff "interfered with his legal mail by either deliberately withholding it or opening it and failing to forward it to him").

The Amended Complaint alleges that Dr. Cowan, the statewide Medical Director for Correct Care Solutions, serves on the DOC Hepatitis C Treatment Committee. (Am. Compl. ¶ 13.) The Amended Complaint further alleges that the Hepatitis C Treatment Committee makes the final medical determinations for inmates with Hepatitis C. (Id. ¶ 10.) However, the Amended Complaint does not allege that Dr. Cowan was personally involved in the development of the Hepatitis C Protocol or decision making with respect to the medical treatment of any of the three Plaintiffs. We conclude, accordingly, that the Amended Complaint does not allege sufficient facts to state a plausible § 1983 claim against Dr. Cowan for deliberate indifference to Plaintiffs' serious medical needs in violation of the Eighth Amendment. We thus grant the Medical Defendants' Motion to Dismiss Count I of the Amended Complaint as against Dr. Cowan.

The Medical Defendants also argue that Count I should be dismissed as against Dr. Frommer and Dr. Kephart because the allegations of the Amended Complaint assert only that Chimenti is dissatisfied with the medical treatment he received, which is insufficient to support a claim for a violation of the Eighth Amendment. The Medical Defendants argue that, because

Chimenti received medical care for his Chronic Hepatitis C infection, his claims amount only to a disagreement about his care, and the Amended Complaint thus cannot allege a plausible Eighth Amendment deliberate indifference claim.

The Amended Complaint alleges that Chimenti began to request treatment with DAADs in late 2013 and that those requests were denied, even though the standard of care at that time was treatment with Sovaldi and ribavirin. (Am. Compl. ¶ 47.) In November 2014, Chimenti was notified that the DOC had not approved the use of Harvoni. (Id. ¶ 48.) In late 2014 and early 2015, "emails were exchanged between Dr. Noel, Dr. Dean Rieger . . . , and Dr. Kephart . . . . discussing Mr. Chimenti's medical treatment, and deciding that Mr. Chimenti should merely be monitored and that there was no urgency in providing the latest DAAD medication treatment." (Id. ¶ 49.) Dr. Kephart (as the former Medical Director of SCI Smithfield) and Dr. Frommer (as the current Medical Director of SCI Smithfield) received, reviewed, and approved all requests for referrals to outside providers and outside medical treatment for Chimenti, and received and reviewed reports from the outside medical providers that related to Chimenti's Chronic Hepatitis C infection and related conditions. (Id. ¶ 50.) In the fall of 2015, a mass was discovered in Chimenti's liver and Dr. Frommer insisted that Chimenti undergo a liver biopsy before providing any further treatment or referring Chimenti to a hepatologist, even though a biopsy is not recommended as part of the standard of care. (Id. ¶ 51.) In March 2016, Chimenti met with medical staff, including Dr. Frommer, regarding his Hepatitis C and related medical conditions, and the medical personnel agreed to treatment with DAADs and referral to a transplant hepatologist. (Id. ¶ 52.) This recommendation was denied by DOC's Central Office. (Id.) During the period from late 2013, until March 2016, during which Dr. Frommer and Dr. Kephart monitored Chimenti's condition but refused to recommend him for medical treatment for his

Chronic Hepatitis C, Chimenti developed a mass in his liver and suffered from other symptoms of Chronic Hepatitis C. (Id. ¶ 53.) We conclude that the Amended Complaint alleges more than mere disagreement and dissatisfaction with Chimenti's medical care; it alleges that Chimenti suffers from a serious medical condition, that Dr. Kephart and Dr. Frommer deliberately delayed treatment for that medical condition, and that Chimenti's condition worsened during the period of delay. The Amended Complaint further alleges that Dr. Frommer required Chimenti to undergo a dangerous and unnecessary medical procedure. We further conclude, accordingly, that Count I of the Amended Complaint states a plausible § 1983 claim for violation of Chimenti's Eighth Amendment rights against Dr. Kephart and Dr. Frommer. See Estelle, 429 U.S. at 104; Rhines, 388 F. App'x at 227 (quoting Estelle, 429 U.S. at 104-05).

## IV. CONCLUSION

For the reasons stated above, the DOC Defendants' Motion to Dismiss all claims raised in the Amended Complaint against the DOC and Rich Wenhold is granted by agreement of the parties and those Defendants are dismissed as defendants in this proceeding. The DOC Defendants' Motion to Dismiss is denied as to Count I as against the other DOC Defendants. The Medical Defendants' Motion to Dismiss as to Count I is granted as to the claims asserted against Correct Care Solutions, Wexford, and Dr. Cowan. By agreement of the parties, the Medical Defendants' Motion to Dismiss as to Count I is also granted as to the claims for injunctive relief against Dr. Kephart and Dr. Frommer (as of the time Dr. Frommer leaves his position as Medical Director of SCI Smithfield). The Medical Defendants' Motion to Dismiss as to Count I is denied as to the claims for monetary damages asserted in Count I against Dr. Kephart and Dr. Frommer. Count II is dismissed by agreement of the parties to the extent that it seeks an award of monetary damages and is also dismissed to the extent that it seeks injunctive

relief as against all Defendants except for Secretary Wetzel.  Count III is dismissed as against Secretary Wetzel by agreement of the parties.  Accordingly, Plaintiffs may pursue the § 1983 claim raised in Count I for both injunctive relief and damages against  Secretary Wetzel and Dr. Noel, and for monetary damages only against Dr. Kephart and Dr. Frommer.   Plaintiffs also may pursue Count II for injunctive relief against Secretary Wetzel; Count III as against Dr. Paul Noel, Correct Care Solutions, Dr. Cowan, Dr. Kephart, Dr. Frommer, and Wexford; and Count IV as against Correct Care Solutions and Wexford.  An appropriate order follows.

BY THE COURT:

/s/ John R. Padova

_____

John R. Padova, J.