## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SALVATORE CHIMENTI, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PA DOC, *et al.*, | : | NO. 15-03333 |
| | : | |
| Defendants | : | |

## BRIEF IN SUPPORT OF DOC DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## STATEMENT OF THE CASE

**A.     Identity of the Parties and Statement of Claim**

Plaintiffs are Salvatore Chimenti, Daniel Leyva, David Maldonado and other inmates with Chronic Hepatitis C viral infection (HCV).  Remaining Pennsylvania Department of Corrections (DOC) Defendants are Secretary John Wetzel and the Chief Medical Director Dr. Paul Noel.  This civil action arose from the advances in medicine for the treatment of hepatitis c (HCV).

Plaintiffs allege DOC Defendants refuse to provide necessary medical treatment for their HCV by denying them the latest FDA approved direct acting anti-viral drugs (DAADs).  Plaintiffs also filed a motion and memorandum requesting class certification for all current and future inmates with HCV and at least 3 months left on their sentences.  Plaintiffs seek declaratory relief that DOC

policy violates both the United States and Pennsylvania Constitutions. With the exception of Chimenti, Plaintiffs seek injunctive relief wherein the Court would order DOC to: (a) formulate and implement a Hepatitis C treatment policy that meets the community standards of care for patients with Hepatitis C, (b) that members of the Class be treated with medically necessary and the appropriate direct-acting antiviral drugs based on individual medical testing and medical evaluation regarding each individual's Hepatitis C status, and (c) that members of the class receive ongoing monitoring and medical care per the standard of care for their individual level of liver fibrosis and cirrhosis, including but not limited to appropriate access to and evaluation by a hepatologist and assessment regarding their need for partial or full liver transplant. Plaintiff Chimenti has filed a claim for medical malpractice and requests monetary damages as well.

**B.     Relevant Procedural History**

Plaintiffs initiated the present civil rights action through counsel on June 12, 2015. Plaintiffs filed a second amended complaint. DOC Defendants filed an answer with affirmative defenses. DOC Defendants are now filing a motion for summary judgment along with a supporting brief, statement of material facts and appendix with exhibits.

2

**C.     Statement of Facts**

The statement of material facts filed concurrently with this brief is incorporated by reference.  For convenience, the material facts are summarized as follows:

The DOC has an Inmate Grievance System, Policy (DC-ADM 804) that provides an administrative procedure through which inmates can seek resolution of problems, including compensation or other forms of legal relief.  DC-ADM 804 provides a three-step process for resolution of inmate grievances:   the initial grievance at the institutional level, an appeal to the Facility Manager (Superintendent) and an appeal for final review to the Secretary's Office of Inmate Grievances and Appeals (SOIGA).  There are only 7 inmates who completed the grievance process before the initiation of this lawsuit who are still incarcerated and have not received the desired DAADs.

Plaintiff Leyva did not complete the grievance process prior to the initiation of this lawsuit.  Plaintiff Maldonado was paroled from prison.  Plaintiff Chimenti received the requested DAADs.

The DOC treats all inmates in its custody on an individual basis who have chronic HCV in accordance with its Hepatitis C Protocol, the most recent version was issued and made effective on November 7, 2016.  Per policy, the DOC screens all inmates for HCV, keeps track of those inmates with HCV, educates inmates

3

regarding policy, enrolls inmates with chronic HCV into a chronic care clinic which provides periodic review, testing, monitoring and consultation. Inmates with chronic HCV are reviewed and prioritized for treatment with DAADs.

The DOC's prioritization protocol is modeled after the Federal Bureau of Prisons (FBOP) policy for treating all inmates with HCV. That means the sickest get treated first, based on their need. There is no medical need to treat all inmates with chronic HCV with DAADs right now or in the short term.

Defendant, Dr. Paul Noel is the Chief of Clinical Services for the DOC. DOC contracts with Correction Care Solutions (CCS) to provide medical services. Dr. Cowan is the State Medical Director of CCS for Pennsylvania. Dr. Cowan is a hepatologist with experience treating patients with liver disease. Dr. Noel and Dr. Cowan discuss different cases of inmates with HCV.

Chronic liver disease from HCV is measured by the degree of fibrosis. The most common scoring system to assess fibrosis is the METAVIR score which includes five levels. F0 (no fibrosis), F1 (mild fibrosis), F2 (moderate fibrosis), F3 (advanced fibrosis) and F4 (cirrhosis). An inmate's APRI score is used to assess the degree of fibrosis.

The DOC has treated the back log of eligible inmates with a fibrosis score of F4 (cirrhosis) and F3 (advanced fibrosis). The DOC is now approving for treatment with DAADs eligible inmates with a fibrosis score of F2 and anticipates

4

it will complete treatment of the back log of all eligible inmates in this group by the end of 2018. Once the DOC has treated the back log of eligible inmates with a fibrosis score of F2, while keeping current with treating eligible inmates with F4, F3 and F2, it is anticipated the back log of eligible inmates with a fibrosis score of F1 will be reviewed and prioritized for treatment.

A snapshot of DOC inmates with chronic HCV on September 20, 2017, indicates DOC has 13 inmates with a fibrosis level of F3 or F4, 208 inmates with a fibrosis level of F2, 4306 inmates with a fibrosis level of F0 or F1. The 6 inmates who have properly exhausted the grievance system prior to filing this lawsuit are either F0 or F1, no or mild fibrosis. The 7th inmate who properly exhausted the grievance system prior to filing this lawsuit has refused blood tests and therefore his APRI score and fibrosis level is unknown.

DOC's policy largely mirrors the FBOP guidelines and does not place inmates with HCV at a substantial and unnecessary risk for severe illness and death. The FBOP lists inmates with F0 or F1 as low priority in their HCV treatment guidelines. The Department of Veterans Affairs (DVA) states patients with a F0, F1 or F2 have less urgency for treatment in the short term. As of November 2016, 33 out of 43 states surveyed, required a fibrosis level of F2, F3 or F4 in order to be treated.

## QUESTIONS PRESENTED

1. Must DOC Defendants be granted summary judgment in their favor on Count 1, Deliberate Indifference, as to Plaintiff Maldonado where his claim is now moot?

   Suggested Answer:  Yes.

2. Must DOC Defendants be granted summary judgment in their favor on Count 1, Deliberate Indifference, as to Plaintiff Chimenti's claim for injunctive relief where it is now moot?

   Suggested Answer:  Yes.

3. Must DOC Defendants be granted summary judgment in their favor on Count 1, Deliberate Indifference, as to Plaintiff Leyva where he failed to properly exhaust available administrative remedies prior to initiating litigation?

   Suggested Answer:  Yes.

4. Must DOC Defendants be granted summary judgment in their favor on Count 1, Deliberate Indifference, as to all but 7 of the proposed Class Plaintiffs where they failed to properly exhaust available administrative remedies prior to initiating litigation or their claims are moot?

   Suggested Answer:  Yes.

5. Must DOC Defendants be granted summary judgment in their favor on Count 1, Deliberate Indifference, as to the proposed future Class Plaintiffs where they lack standing for injunctive relief?

   Suggested Answer:  Yes.

6. Must DOC Defendants be granted summary judgment in their favor on Count 1, Deliberate Indifference?

   Suggested Answer:  Yes.

7. Must DOC Defendants be granted summary judgment in their favor on Count 2, Pennsylvania Constitution where the Commonwealth has not waived this immunity with respect to equitable claims seeking affirmative action by way of injunctive relief?

Suggested Answer: Yes.

8. Must DOC Defendants be granted summary judgment in their favor on any damage claim where Plaintiff Chimenti is unable to sufficiently prove causation of injury?

Suggested Answer: Yes.

## ARGUMENT

Summary Judgment is proper where the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(a)*. When deciding the existence of a genuine dispute of material fact, courts will award all reasonable inferences to the non-moving party. *Meyer v. Riegel Products Corp.*, 720 F.2d 303 (3d Cir. 1983). Material facts are those that could affect the outcome of the proceeding, and a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party. *Roth v. Norfalco*, 651 F.3d 367 (3d Cir. 2011). The moving party has the burden of showing the absence of a genuine issue of material fact, but the nonmoving party must present affirmative evidence from which a jury might return a verdict in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

7

1. **DOC Defendants must be granted summary judgment in their favor on Count 1, Deliberate Indifference, as to Plaintiff Maldonado where his claim is now moot.**

Federal Courts may not decide an issue unless it presents a live case or controversy. *Abdul-Akbar v. Watson*, 4 F.3d 195 (3d Cir. 1993). Generally, courts have held that an inmate's release from a correctional institution makes his or her claims for injunctive relief moot. *Sutton v. City of Philadelphia*, 21 F. Supp. 3d 474 (E.D. Pa. 2014). In the instant case, the record shows Plaintiff Maldonado was paroled from the state prison system. *Appendix at H, Plaintiff Maldonado Inmate Records*. Therefore, Maldonado's request for injunctive relief should be dismissed as moot. *Abdul-Akbar*, 4 F.3d at 206 (holding former inmate's claims for injunctive relief were moot because inmate was released from incarceration).

2. **DOC Defendants must be granted summary judgment in their favor on Count 1, Deliberate Indifference, as to Plaintiff Chimenti's claim for injunctive relief where it is now moot.**

Again, Federal Courts may not decide an issue unless it presents a live case or controversy. *Abdul-Akbar v. Watson*, 4 F.3d 195 (3d Cir. 1993). Providing requested medical care renders claim for injunctive relief moot. *Williamson v. Corr. Med. Servs.*, 304 Fed. Appx. 36 (3d Cir. 2008). In the instant case, the record shows Plaintiff Chimenti was provided the requested DAADS and continues to be monitored. *Appendix at G, Plaintiff Chimenti Medical Records*. Therefore, Chimenti's request for injunctive relief should be dismissed as moot.

*Hollihan v. Pa. Dep't of Corr.*, 159 F. Supp. 3d 502 (M.D. Pa. 2016)(As discussed *supra*, the fact of Hollihan's February 2015 cataract surgery moots his request for injunctive relief in this matter.).

### 3. DOC Defendants must be granted summary judgment in their favor on Count 1, Deliberate Indifference, as to Plaintiff Leyva where he failed to properly exhaust available administrative remedies prior to initiating litigation.

The Prison Litigation Reform Act (PLRA) provides, in pertinent part, as follows:   "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  *42 U.S.C. § 1997e(a)*.  Application of this section is mandatory.   *Porter v. Nussle*, 534 U.S. 516 (2002).   Exhaustion, for these purposes, requires "proper" exhaustion. *Woodford v. Ngo*, 548 U.S. 81 (2006).  In order to properly exhaust, prisoners must complete the administrative review process in accordance with the applicable procedural rules of the prison grievance process. *Jones v. Bock*, 549 U.S. 199 (2007).  Prison grievance procedures supply the yardstick for measuring procedural default.  *Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004).  Unexhausted claims may not be considered by the courts.  *Jones.*

To be sure, the United States Supreme Court reiterated the exhaustion requirement recently.  *Ross v. Blake*, 136 S.Ct. 1850 (2016).  In *Ross*, the Court

rejected a special circumstances exception created by the courts. *Id.* In doing so, the Court stated the PLRA foreclosed judicial discretion. *Id.* The only issue is whether an administrative remedy was available. *Id.* The Court stated available means capable of use to obtain some relief for the action complained. *Id.* Finally, when an administrative process is susceptible of multiple interpretations, an inmate should err on the side of exhaustion. *Id.*

The DOC's Grievance Process, DC-ADM 804, mandates that three procedures must be completed for an inmate to exhaust his administrative remedies. *37 Pa. Code § 93.9; DC-ADM 804.* First, the Grievance Officer must review the inmate's grievance. Second, the Facility Manager must review the inmate's appeal of the Grievance Officer's decision. Third, and finally, the Secretary's Office of Inmate Grievances and Appeals (SOIGA) must review the inmate's appeal of the Facility Manager's decision. Each of the procedures must be completed for an inmate to be considered to have exhausted his administrative remedies. There is no exception for alleged futility. *Nyhuis v. Reno*, 204 F.3d 65 (3d Cir. 2000).

Grievance records show Plaintiff Leyva failed to properly exhaust available administrative remedies prior to initiating litigation. *Appendix at C, Plaintiff Leyva Grievance Records.* This action was initiated on June 12, 2015. *Docket at 1.* Yet, SOIGA did not issue a decision at the third level on Leyva's grievance until

September 8, 2015. *Appendix at C.*

Thus, Leyva improperly sued before the final step to exhaustion was complete, a decision at final review. *Oriakhi v. United States*, 165 Fed. Appx. 991 (3d Cir. 2006)(a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court). It is of no matter that final review was completed before the amended complaint. *Green v. Dep't of Corr.*, 393 Fed. Appx. 20 (3d Cir. 2010). Therefore, DOC Defendants are entitled to summary judgment against Leyva for failure to properly exhaust prior to initiation of the lawsuit. *Johnson v. George W. Hill Corr. Facility*, 2008 U.S. Dist. LEXIS 67504 (E.D. Pa. August 29, 2008).

**4. DOC Defendants must be granted summary judgment in their favor on Count 1, Deliberate Indifference, as to all but 7 of the proposed Class Plaintiffs where they failed to properly exhaust available administrative remedies prior to initiating litigation or their claims are moot.**

Again, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *42 U.S.C. § 1997e(a).* Application of this section is mandatory. *Porter v. Nussle*, 534 U.S. 516 (2002). The Court in *Ross* rejected a special circumstances exception created by the courts. *Ross, supra.* In doing so, the Court stated the PLRA foreclosed judicial discretion. *Id.* Thus, any attempt to

11

argue only one member in a class action need exhaust must be rejected.  See, *Hubbard v. Danberg*, 2010 U.S. Dist. LEXIS 22313 (D. Del. March 10, 2010)(noting vicarious exhaustion in class action cases has not been addressed by the Third Circuit) affd. *Hubbard v. Danberg*, 408 Fed. Appx. 553 (3d Cir. 2010). Additionally, there is no exception for alleged futility. *Nyhuis*, supra.

The record shows DOC has a grievance system. *Appendix at A, Grievance Policy.*  Grievances relating to HCV treatment are tracked when SOIGA receives a final appeal and refers the final appeal to the Bureau of Health Care Services (BHCS).  *Appendix at B, E, F.*  The BHCS then keeps track of these grievances relating to HCV treatment that went to final appeal by putting certain data on an excel spreadsheet. *Appendix at B, E, F.*

Facially, this data shows only 23 inmates could have appealed a grievance relating to their HCV treatment to final review prior to the filing of this lawsuit. *Appendix at B.*  Of those 23, 3 are duplicative of that same inmate's prior grievance involving HCV treatment.  *Appendix at B.*  Of those 23, 6 inmate are no longer in prison and therefore, their claims are moot.  *Appendix at D.  Abdul-Akbar*, supra. A closer look at the grievance tracking system reveals 5 more of the 23 did not get a final response until after the filing of this lawsuit.  *Appendix at D.*  Finally, 2 of the 23 are moot where they received the requested DAADS.  *Appendix at P. Williamson*, supra.

In sum, only 7 inmates who are currently incarcerated within the DOC properly exhausted available administrative remedies by completing the grievance process through final review prior to the initiation of this lawsuit. Accordingly, summary judgment must be granted against all of the other Plaintiffs. *Oriakhi*; *Green*, supra.

### 5. DOC Defendants must be granted summary judgment in their favor on Count 1, Deliberate Indifference, as to the proposed future Class Plaintiffs where they lack standing for injunctive relief.

Courts have a continuing duty to satisfy their jurisdiction before proceeding to the merits of any case. See, *Packard v. Provident Nat. Bank,* 994 F.2d 1039 (3d Cir. 1993). To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling. *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013). Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes--that the injury is certainly impending. *Id.* Thus, the threatened injury must be certainly impending to constitute injury in fact, and that allegations of possible future injury are not sufficient. *Id.*

Plaintiffs' putative class definition includes future inmates who will be subject to DOC's HCV policy. Plaintiffs lack standing to bring this action on

13

behalf of future inmates.  See, *Shoffner v. Wenerowicz*, 2015 U.S. Dist. LEXIS 90288 (E.D. Pa. July 13, 2015).  Additionally, future inmates do not have standing to belong in this action where any future injury is not actual or imminent.  Finally, future inmates have yet to exhaust the grievance system. Therefore, these purported Plaintiffs should be dismissed.

## 6. DOC Defendants must be granted summary judgment in their favor on Count 1, Deliberate Indifference.

A prison official's deliberate indifference to an inmate's serious medical needs constitutes a violation of the Eighth Amendment and states a cause of action under § 1983. *Estelle v. Gamble* 429 U.S. 97 (1976).  The Eighth Amendment claim has objective and subjective components.  First, Plaintiff must show that his medical need is, objectively, "sufficiently serious." *Farmer v. Brennan* 511 U.S. 825 (1994).  Second, he must establish that Defendant acted with subjective deliberate indifference, that is, that she was aware of a substantial risk of serious harm to Plaintiff but disregarded that risk by failing to take reasonable measures to abate it. *Id.*

A medical need is serious if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention. *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326 (3d Cir. 1987).  Deliberate

indifference requires obduracy and wantonness, which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk. *Baez v. Falor*, 566 Fed. Appx. 155 (3d Cir. 2014). Disagreement with another doctor is not actionable under the Eighth Amendment. *Jetter v. Beard*, 130 Fed. Appx. 523 (3d Cir. 2005). Mere disagreement as to the proper medical treatment is also insufficient. *Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004). Simply prioritizing treatment so that those in the greatest need are treated first likely would not constitute a constitutional violation. *Abu-Jamal v. Wetzel*, 2017 U.S. Dist. LEXIS 368 (M.D. Pa. January 3, 2017). Finally, administrative convenience and cost may be, in appropriate circumstances, permissible factors for correctional systems to consider in making treatment decisions. *Allah v. Thomas*, 679 Fed. Appx. 216 (3d Cir. 2017).

The amended complaint claims DOC "by policy and practice, systemically denies necessary medical care for inmates diagnosed with Chronic Hepatitis C viral infections, thereby placing them at substantial and unnecessary risk for severe illness and death." Initially DOC Defendants note, because Chimenti received the desired medical care, Maldonado was paroled and Leyva failed to exhaust, the named Plaintiffs can no longer pursue their claims for deliberate indifference and obtain injunctive relief. In any event, as to the remaining 7 inmates who

exhausted, the record is without any evidence of deliberate indifference to serious medical needs.

Objectively, the back log of inmates with the fibrosis levels of F3 and F4 have been treated and the newly discovered F3 or F4 will be soon treated. Those with a fibrosis level of F2 are being approved for treatment and the back log will be treated by the end of 2018. That leaves inmates with a fibrosis level of F0 or F1 which is where the 6 inmates who have exhausted and have known APRI scores are.

Inmates with F0 or F1 are not in need of treatment in the short term. By definition, F0 indicates no fibrosis or healthy liver and F1 indicates portal fibrosis or isolated without septa (very limited scarring). Chimenti's own expert states it takes 5 to 10 years for the patient to develop liver fibrosis and if you have a short sentence treatment can usually be done when you have been released. Dr. Cecil also states curing HCV allows healing from stage 1, 2 and 3 back to stage 0 or 1. Thus, Plaintiffs do not meet the objective element of deliberate indifference, that is, they are not in medical need in the short term.

Plaintiffs cannot meet the subjective element of deliberate indifference. DOC has a policy. DOC utilizes a hepatologist. DOC has treated hundreds of inmates who had a fibrosis level of F3 or F4 with DAADs. DOC will continue to

treat inmates with F3 or F4 and is starting to treat those inmates with a fibrosis level of F2.

The DVA states patients with a F0, F1 or F2 have less urgency for treatment in the short term. The FBOP considers the group of F0 and F1 a low priority. Dr. Kendig opines these inmates are not placed at a substantial and unnecessary risk for severe illness and death and are at low risk for rapid progression to severe liver disease and are not at imminent risk of physical injury without immediate treatment with DAADs. Many insurers do not cover treatment for patients with F0 or F1. Nor do the majority of State Medicaids cover F0 or F1. Thus, DOC Defendants are not obdurate or wantonly consciously disregarding a known serious risk.

Plaintiffs are unable to name any inmate with HCV that is currently in need of medical care. Plaintiffs' expert was unable to name any inmate with HCV that is currently in need of medical care. Plaintiffs are without any evidence of deliberate indifference where DOC has treated, is treating or will soon treat all inmates with fibrosis levels of F4, F3 and F2.

Plaintiffs' case is premised on the unsupported claim that inmates are suffering without DAADs. In support, Plaintiffs offered the opinion of a physician who pushes for universal treatment to achieve the goal of eliminating the virus.

Disagreement with another doctor is not actionable under the Eighth Amendment. *Jetter*, supra.

Plaintiffs also rely on national guidelines to establish a community standard. It is a false premise that inmates are constitutionally entitled to the same community medical standard of care as recommended for non-incarcerated citizens. Plaintiffs' ultimate request for relief is that the Court order DOC to provide the same treatment that they would get if outside the prison walls. The Eighth Amendment does not require the provision of medical care consistent with the outside community medical standard. *Bruton v. Gillis*, 2008 U.S. Dist. LEXIS 76819 (M.D. Pa. September 30, 2008)(The Eighth Amendment still does not require that a prisoner receive every medical treatment that he requests or that is available elsewhere.). Moreover, DOC policy and practice is consistent with the FBOP, DVA, many insurers and most state Medicaid systems.

Plaintiffs alleged inmates are being denied necessary treatment due to costs. Administrative convenience and cost may be, in appropriate circumstances, permissible factors for correctional systems to consider in making treatment decisions. *Allah,* supra; See also, *Brown v. Beard*, 445 Fed. Appx. 453 (3d Cir. 2011)(the mere assertion that defendants considered cost in treating Brown's hernia does not suffice to state a claim for deliberate indifference, as prisoners do not have a constitutional right to limitless medical care); *Winslow v. Prison Health*

*Servs. (PHS)*, 406 Fed. Appx. 671 (3d Cir. 2011)(("[I]t is not a constitutional violation for prison authorities to consider the cost implications of various procedures, which inevitably may result in various tests or procedures being deferred unless absolutely necessary."); *Brower v. Corizon Health Servs.*, 2016 U.S. Dist. LEXIS 128659 (E.D. Pa. September 20, 2016)(Because it is not a violation of federal law to consider costs, Brower must plead facts that meet the deliberate indifference standard); *Gannaway v. PrimeCare Med., Inc.*, 150 F. Supp. 3d 511 (E.D. Pa. 2015)(This claim also fails as a matter of law, because weighing costs when making decisions about a prisoner's medical treatment does not show deliberate indifference.).   Given the number of inmates involved, cost is not a factor in treating those inmates in medical need, a fibrosis level of F4, F3 and F2. But given the numbers involved, cost and other resources can be considered in deciding when to treat all of the inmates with a fibrosis level of F1 or F0.  Those inmates with a fibrosis level of F0 or F1 are not in immediate medical need of DAADs.

The only dispute that remains is the timing of treating inmates with a fibrosis level of F0 or F1.  Plaintiffs with this level lack standing to pursue a claim of deliberate indifference at this time.  In *Martin*, this Court dismissed the case for want of standing.  *Martin v. Vaughn*, 1995 U.S. Dist. LEXIS 10851 (E.D. Pa. July 27, 1995).  In *Martin*, inmates brought suit over defendants' failure to implement

19

adequate procedures to screen food handlers for the human immunodeficiency virus ("HIV") and other communicable diseases. *Id.* This Court found Plaintiffs failed to properly allege an actual injury, that is, an injury in fact, which is concrete in both a qualitative and temporal sense, an injury that is distinct and palpable. *Id.*

Facially, the amended complaint alleges a majority of Plaintiffs with F0 or F1 will progress to serious fibrosis. Such allegation is insufficient to constitute actual injury or injury that is imminent. Thus, all Plaintiffs with a fibrosis score of F0 or F1 should be dismissed for lack of standing. *Shoffner v. Wenerowicz*, 2015 U.S. Dist. LEXIS 90288 (E.D. Pa. July 13, 2015)(Plaintiffs lack standing to bring a claim for harm they may or may not suffer in the future)

For all of the above reasons, DOC Defendants should be granted summary judgment in their favor.

**7. DOC Defendants must be granted summary judgment in their favor on Count 2, Pennsylvania Constitution where the Commonwealth has not waived this immunity with respect to equitable claims seeking affirmative action by way of injunctive relief.**

Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct. *Pa. Const. Art. I, §  11.* Unless specifically waived, a Commonwealth party acting within the scope of

their duties cannot be held liable in a civil action. *1 Pa.C.S. § 2310.*[1] The specific waiver of sovereign immunity is expressly limited to certain provisions provided in the judicial code. *42 Pa.C.S. § 8521.* There are nine express instances where sovereign immunity has been waived. *42 Pa.C.S. § 8522.*[2] And they only apply to negligence suits for damages. *Id.*

Thus, Count 2's request for injunctive relief pursuant to the Pennsylvania Constitution is barred by sovereign immunity and must be dismissed. See, *Cornish v. City of Phila.*, 2015 U.S. Dist. LEXIS 67547 (E.D. Pa. May 26, 2015)(Moreover, the Commonwealth has not waived this immunity with respect to equitable claims seeking affirmative action by way of injunctive relief. … We will therefore dismiss in their entirety the state constitutional claims of Cornish against both DOC and the City which are pleaded in Count Five of his First Amended Complaint.); *Bonsavage v. Borough of Warrior Run*, 676 A.2d 1330 (Pa. Cmwlth. 1996)(Significantly, the General Assembly has not waived immunity for equitable

---

[1] Commonwealth Party is defined as "A Commonwealth agency and any employee thereof…" *42 Pa.C.S. § 8501.*

[2] (1) VEHICLE LIABILITY; (2) MEDICAL-PROFESSIONAL LIABILITY; (3) CARE, CUSTODY OR CONTROL OF PERSONAL PROPERTY; (4) COMMONWEALTH REAL ESTATE, HIGHWAYS AND SIDEWALKS; (5) POTHOLES AND OTHER DANGEROUS CONDITIONS; (6) CARE, CUSTODY OR CONTROL OF ANIMALS; (7) LIQUOR STORE SALES; (8) NATIONAL GUARD ACTIVITIES; (9) TOXOIDS AND VACCINES. *42 Pa.C.S. § 8522(b).*

claims seeking affirmative action by way of injunctive relief. Accordingly, we hold that the Bonsavages' claim for injunctive relief against the Department is also barred by sovereign immunity.); *Swift v. DOT*, 937 A.2d 1162 (Pa. Cmwlth. 2007)(The General Assembly has not waived immunity for equitable claims seeking affirmative action by way of injunctive relief.).

### 8. DOC Defendants must be granted summary judgment in their favor on any damage claim where Plaintiff Chimenti is unable to sufficiently prove causation of injury.

To prevail in any negligence action, the plaintiff must establish the following elements: the defendant owed him or her a duty, the defendant breached the duty, the plaintiff suffered actual harm, and a causal relationship existed between the breach of duty and the harm. *Freed v. Geisinger Med. Ctr.*, 910 A.2d 68 (Pa. Super. 2006).   When the alleged negligence is rooted in professional malpractice, the determination of whether there was a breach of duty comprises two steps: first, a determination of the relevant standard of care, and second, a determination of whether the defendant's conduct met that standard.    *Id.* Furthermore, to establish the causation element in a professional malpractice action, the plaintiff must show that the defendant's failure to exercise the proper standard of care caused the plaintiff's injury. *Id.*   Expert testimony is generally required in a medical malpractice action to establish several of elements: the proper standard of care, the defendant's failure to exercise that standard of care,

and the causal relationship between the failure to exercise the standard of care and the plaintiff's injury. *Id.*

When a party must prove causation through expert testimony the expert must testify with reasonable certainty that in his professional opinion, the result in question did come from the cause alleged. *McCrosson v. Philadelphia Rapid Transit Co.*, 129 A. 568, 569 (Pa. 1925). An expert fails this standard of certainty if he testifies that the alleged cause possibly, or could have led to the result, that it could very properly account for the result, or even that it was very highly probable that it caused the result. *Niggel v. Sears, Roebuck & Co.*, 281 A.2d 718, 719 (Pa. Super. 1971); *Menarde v. Philadelphia Trans. Co.*, 103 A.2d 681 (Pa. 1954); *Vorbnoff v. Mesta Machine Co.*, 133 A. 256 (Pa. 1926); *Moyer v. Ford Motor Co.*, 209 A.2d 43 (Pa. Super.1965); *Albert v. Alter*, 381 A.2d 459, 470 (Pa. Super. 1977); *Kravinsky v. Glover*, 396 A.2d 1349, 1355-56 (Pa. Super. 1979).

Dr. Cecil's report and opinion fall short where he states the delay in treatment likely increased risk of death, cancer and liver failure. Moreover, Dr. Cecil does not specify Dr. Noel and what action or inaction is attributable to him and caused Chimenti injury. Therefore, DOC defendants should be granted summary judgment on any damage claim.

## CONCLUSION

**WHEREFORE**, in light of the foregoing, DOC Defendants respectfully request this Court to grant the motion for summary judgment.

Respectfully submitted,

By:   /s/ Vincent R. Mazeski
      Vincent R. Mazeski
      Assistant Counsel
      Attorney I.D. No. PA73795
      Pennsylvania Department of Corrections
      Office of Chief Counsel
      1920 Technology Parkway
      Mechanicsburg, PA  17050
      (717) 728-7763
      Fax No.:  (717) 728-0307
      Email: vmazeski@pa.gov

Dated:  October 2, 2017

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SALVATORE CHIMENTI, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PA DOC, *et al.*, | : | NO. 15-03333 |
| | : | |
| Defendants | : | |

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the within Motion has been filed electronically and is available for viewing and downloading from the ECF system by Counsel for Plaintiffs and Counsel for Medical Defendants and therefore satisfies the service requirements under *Fed.R.Civ.P. 5(b)(2)(E); L.R. 5.1.2 8(a).*

By:  /s/ Vincent R. Mazeski
Vincent R. Mazeski
Assistant Counsel
Attorney I.D. No. PA73795
Pennsylvania Department of Corrections
Office of Chief Counsel
1920 Technology Parkway
Mechanicsburg, PA  17050
(717) 728-7763

Dated:  October 2, 2017