IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| SALVATORE CHIMENTI, ET AL. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JOHN WETZEL, ET AL. | : | NO.  15-3333 |

## MEMORANDUM

**Padova, J.**                                                                                     **May 24, 2018**

Plaintiffs Salvatore Chimenti, Daniel Leyva, and David Maldonado have brought this lawsuit against John Wetzel, the Secretary of the Pennsylvania Department of Corrections (the "DOC"), and Paul Noel, the Chief Medical Director of the DOC (collectively the "DOC Defendants"), as well as two companies that have contracted to provide medical services for the DOC and officials and employees of those companies (collectively the "Medical Defendants"), asserting claims regarding the medical care provided to DOC inmates who have been diagnosed with Hepatitis C viral infections ("HCV").  Specifically, Plaintiffs contend that the DOC Defendants have violated their rights under the Eighth Amendment and the Pennsylvania Constitution by adopting a policy for the treatment of inmates with chronic HCV that fails to provide them with appropriate medical care.[1]  Plaintiffs seek injunctive relief requiring the DOC Defendants to formulate and implement a Hepatitis C treatment policy that (1) meets the community standards of care for patients with chronic HCV; (2) ensures that inmates with chronic HCV are treated with medically necessary and appropriate direct-acting antiviral drugs ("DAAs"); and (3) provides ongoing monitoring and medical care in accordance with the standard of care for such patients' liver fibrosis and cirrhosis.

---

[1] Plaintiff Chimenti has also brought personal claims for medical malpractice against all Defendants.

Plaintiffs seek to represent a class of similarly situated inmates of the DOC who have at least twelve weeks remaining to serve on their sentences. Before the Court is Plaintiffs' Renewed Motion for Class Certification, which is opposed by the DOC Defendants.[2] For the following reasons, the Motion is granted.

## I.  FACTUAL BACKGROUND

Plaintiffs Chimenti, Leyva, and Maldonado all suffer from chronic HCV and were, at the time of the filing of this action, incarcerated in correctional institutions that are part of the DOC. (See Compl. (Docket No. 1) ¶¶ 1-2; DOC Defs.' Ans. to Compl. (Docket No. 30) ¶¶ 1-2.) Beginning in 2011, the United States Food and Drug Administration ("FDA") approved DAAs for the treatment of Hepatitis C. (Trooskin Rpt., Pls.' Resp. to Mot. for Summ. J., Ex. A at 2.) These drugs, which include Harvoni, are capable of achieving a "sustained virologic response," which means "the elimination of the virus[,] for more than 90% of patients." (Id. at 2-3.) Prior to the development of DAAs, the standard of care "was a three-drug treatment containing boceprevir or telaprevir, interferon and ribavirin" that "provided, at best, a 70% cure rate, and was accompanied by significant adverse side effects such as anemia, insomnia, anxiety, depression, nausea, bone pain, muscle [pain], liver failure, joint pain, memory loss, and death." (Id. at 2.) Plaintiffs' expert, Dr. Stacey Trooskin, has opined that the use of DAAs is now "the standard of medical care for the treatment of all HCV individuals." (Id. at 3.)

When Chimenti, Leyva, and Maldonado first asked to be treated with DAAs, their applications were rejected by the DOC. Chimenti began requesting treatment with DAAs in late 2013, but Defendants denied his requests. (Pls.' Counterstatement of Add'l Facts ("PSAF") ¶¶

[2] The Medical Defendants do not oppose Plaintiffs' Renewed Motion for Class Certification.

225-30; DOC Defs.' Resp. to Pls.' Counterstatement of Add'l Facts ("DRPCAF") ¶¶ 225-30.) Chimenti filed grievances asking for treatment with DAAs in early 2014, but his grievances were denied because the DOC did not have a Hepatitis C protocol and had put all Hepatitis C treatment on hold. (PSAF ¶¶ 226-28; DRPCAF ¶¶ 226-28.) Chimenti has suffered from Stage 4 Cirrhosis since at least 2000. (Pls.' Resp. to Mot. for Summ. J., Ex. U at 5.) In October 2015, Chimenti was diagnosed with liver cancer. (PSAF ¶ 232; DRPCAF ¶ 232.) Chimenti was treated with DAAs beginning in October 2016. (PSAF ¶ 236; DRPCAF ¶ 236.)

Leyva filed a grievance with the DOC on January 13, 2015, asking to be treated with the new Hepatitis C drugs. (Pls.' Resp. to Mot. for Summ. J., Ex. V at 2.) The DOC upheld his grievance, but told him that it was evaluating its treatment options and developing a new treatment protocol and, in the meantime, would only monitor patients with HCV. (Id. at 3.) On March 4, 2015, Leyva sent a letter to the DOC expressing his concern with having to wait for treatment while the DOC developed a new treatment protocol for Hepatitis. (See id. at 4.) The DOC responded that it was continuing to monitor inmates with HCV while it evaluated treatment options. (Id.) On April 7, 2015, Leyva filed a new grievance, asking to be treated with Harvoni. (Id. at 5.) That grievance was denied. (Id. at 7-19.) Leyva still has not received treatment with DAAs. (lst Am. Class Action Compl. ("1st Am. Compl." ¶ 68; DOC Defs.' Ans. to lst Am. Compl. ¶ 13.) Maldonado also filed a grievance asking to be treated with the latest DAAs, but his grievance was rejected because the DOC was developing a new treatment protocol. (1st Am. Compl. ¶¶ 73-74; DOC Defs.' Ans. to 1st Am. Compl. ¶ 16.) The DOC has not treated Maldonado with DAAs. (DOC Defs.' Ans. to 1st Am. Compl. ¶ 16.)

The DOC issued a new protocol for the treatment of HCV on November 7, 2016. (DOC Defs.' Statement of Material Facts ("SMF") ¶ 40; Pls.' Resp. to SMF ¶ 40.) The Hepatitis C

Treatment Protocol does not require the DOC to treat all inmates with HCV with DAAs. Instead, the Protocol requires the DOC to treat the sickest inmates first, and it bases its treatment decisions on an inmate's fibrosis score. (SMF ¶¶ 45, 53; Pls.' Resp. to SMF ¶¶ 45, 53.) Fewer than 10% of DOC inmates with chronic HCV have been treated with DAAs under the Protocol. (PSAF ¶ 178; DRPCAF ¶ 178.)

Plaintiffs seek to represent the following Class:

all persons who are currently incarcerated in a Pennsylvania Department of Corrections ("DOC") facility with a diagnosed condition of chronic Hepatitis C, and who have at least twelve (12) weeks or more remaining to serve on their sentences, and who have a life expectancy of over one year.

(Renewed Mot. for Class Cert. at 2.) As of September 20, 2017, the DOC held 7521 inmates who have been infected with Hepatitis C, 5265 of whom have chronic HCV. (Wenhold Decl., DOC Defs.' Mot. for Summ. J., Ex. F, ¶¶ 15-16.) The DOC has treated 297 of those inmates who have chronic HCV with DAAs. (Id. ¶ 17.)

The First Amended Complaint states four claims for relief. Count I asserts a claim pursuant to 42 U.S.C. § 1983 on behalf of the three named Plaintiffs and the Class for deliberate indifference to the serious medical needs of prisoners infected with HCV in violation of the Eighth Amendment to the United States Constitution. Count II asserts a claim on behalf of the three named Plaintiffs and the Class for violation of Article I, § 13 of the Pennsylvania Constitution. Count III asserts a claim for medical malpractice against all Defendants on behalf of Chimenti. Count IV asserts a claim against Correct Care Solutions and Wexford for medical malpractice on behalf of Chimenti. Plaintiffs seek an injunction on behalf of themselves and the Class ordering the DOC to:

(a) formulate and implement a Hepatitis C treatment policy that meets the community standards of care for patients with Hepatitis C, (b) that members of

the Class be treated with medically necessary and the appropriate direct-acting antiviral drugs based on individual medical testing and medical evaluation regarding each individual's Hepatitis C status, and (c) that members of the [C]lass receive ongoing monitoring and medical care per the standard of care for their individual level of liver fibrosis and cirrhosis, including but not limited to appropriate access to and evaluation by a hepatologist and assessment regarding their need for partial or full liver transplant.

(Id. ¶ 98.) Plaintiffs also seek compensatory and punitive damages for Chimenti, reasonable attorney's fees and costs, and such other relief as the Court deems just and equitable. (Id. ¶¶ 99-102.)

## II.    LEGAL STANDARD

In order to be certified, a class action "'must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3).'" In re Modafinil Antitrust Litig., 837 F.3d 238, 248 (3d Cir. 2016) (quoting Marcus v. BMW of N.A., LLC, 687 F.3d 583, 590 (3d Cir. 2012)). "The party seeking certification bears the burden of establishing each element of Rule 23 by a preponderance of the evidence." Marcus, 687 F.3d at 591 (citing In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 307 (3d Cir. 2009)). Thus, Plaintiffs must establish the following four elements:

(1) the class must be "so numerous that joinder of all members is impracticable" (numerosity); (2) there must be "questions of law or fact common to the class" (commonality); (3) "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class" (typicality); and (4) the named plaintiffs must "fairly and adequately protect the interests of the class" (adequacy of representation, or simply adequacy).

In re Cmty. Bank of N. Va., 622 F.3d 275, 291 (3d Cir. 2010) (quoting Fed. R. Civ. P. 23(a)(1)-(4)). If Plaintiffs are able to satisfy these requirements, "we consider whether the class meets the requirements of one of three categories of class actions in Rule 23(b)." In re Nat'l Football League Players Concussion Injury Litig., 821 F.3d 410, 426 (3d Cir.), cert. denied sub nom.

Gilchrist v. Nat'l Football League, 137 S. Ct. 591 (2016), and cert. denied sub nom. Armstrong v. Nat'l Football League, 137 S. Ct. 607 (2016). Plaintiffs ask us to certify the Class under Rule 23(b)(2), which applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. (23)(b)(2).

The DOC Defendants oppose class certification on three grounds. They first argue that the Class is not sufficiently numerous to be certified. They next argue that the named Plaintiffs do not have claims that are typical of the claims of the absent Class members. They finally argue that, because the named Plaintiffs' claims are not typical, they would not be adequate representatives of the members of the Class.[3]

## III.   DISCUSSION

### A.   The Rule 23(a) Factors

#### 1.   Numerosity

The United States Court of Appeals for the Third Circuit has stated that there is "'[n]o minimum number of plaintiffs . . . required to maintain a suit as a class action.'" Modafinil, 837 F.3d at 249 (first alteration in original) (quoting Stewart v. Abraham, 275 F.3d 220, 226 (3d Cir. 2001)). However, in general, "'if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.'" Id. at 250 (quoting Stewart,

---

[3] The DOC Defendants also contend that we should deny the instant Motion because most of the Class members lack standing as "[f]uture inmates do not have standing to belong in this action where any future injury is not actual or imminent. Current inmates with a fibrosis level of zero lack requisite injury for standing." (DOC Defs.' Brief at 4.) The DOC Defendants, however, have not explained this argument or supported it with reference to evidence or legal authority. Accordingly, we do not consider this argument in the context of the instant Motion.

275 F.3d at 226-27, and citing Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993)). "At the other end of the spectrum, the Supreme Court has stated in *dicta* that a class of fifteen was 'too small to meet the numerosity requirement.'" Id. (quoting Gen. Tel. Co. of the Nw, Inc. v. EEOC, 446 U.S. 318, 331 (1980)).

The DOC Defendants argue that the class is not sufficiently numerous to support certification because only seven current DOC inmates had satisfied the Prison Litigation Reform Act's ("PLRA") exhaustion requirement with respect to the claims asserted in this action prior to the filing of the Complaint. The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The United States Court of Appeals for the Eleventh Circuit has held that "a class of prisoner-plaintiffs certified under Rule 23(b)(2) satisfies the PLRA's administrative exhaustion requirement through 'vicarious exhaustion,' i.e., when 'one or more class members ha[s] exhausted his administrative remedies with respect to each claim raised by the class.'" Chandler v. Crosby, 379 F.3d 1278, 1287 (11th Cir. 2004) (alteration in original) (quoting Jones 'El v. Berge, 172 F. Supp. 2d 1128, 1133 (W.D. Wis. 2001); and citing Hattie v. Hallock, 8 F. Supp. 2d 685, 689 (N.D. Ohio 1998)). The Eleventh Circuit explained that it reached this holding for two reasons. "First, this rule advances the purpose of administrative exhaustion, which, we have stated (albeit in the employment context), 'is to put the [administrative authority] on notice of all issues in contention and to allow the [authority] an opportunity to investigate those issues.'" Id. (alterations in original) (quoting Griffin v. Carlin, 755 F.2d 1516, 1531 (11th Cir. 1985)). "Second, a different rule, e.g., one requiring all class members to exhaust their administrative remedies, 'could impose an

intolerable burden upon the inmate complaint review system.'" Id. (quoting Jonas 'El, 172 F. Supp. 2d at 1131-32). "Moreover, in cases like this one, where the composition of the class is subject to constant change beyond the class members' control, it could be extraordinarily difficult for all class members to exhaust administrative remedies before filing suit." Id. (citing Jonas 'El, 172 F. Supp. 2d at 1131).

The United States Court of Appeals for the Third Circuit has not yet addressed "vicarious exhaustion," but other courts have permitted it in § 1983 class actions filed by inmates. See Hubbard v. Danberg, Civ. A. No. 07-745-GMS, 2010 WL 883776, at *6 n.9 (D. Del. Mar. 10, 2010) (citing Chandler, 379 F.3d 1278; and Meisberger v. Donahue, 245 F.R.D. 627 (S.D. Ind. 2007) (additional citation omitted)), aff'd, 408 F. App'x 553 (3d Cir. 2010). For example, the United States Court of Appeals for the Fifth Circuit, like the Eleventh Circuit, has determined that the exhaustion of administrative remedies by one class member is sufficient to satisfy the PLRA's exhaustion requirement for the entire class. See Gates v. Cook, 376 F.3d 323, 330 (5th Cir. 2004) (concluding that one plaintiff's satisfaction of the Mississippi Department of Corrections' Administrative Remedy Program was "enough to satisfy the requirement for the class" (citations omitted)). District Courts in other Circuits have also held that "the PLRA's exhaustion requirement is limited to the class representatives." Decoteau v. Raemisch, 304 F.R.D. 683, 687 (D. Col. 2014) (citing Chandler, 379 F.3d at 1287; Gates, 376 F.3d at 330; and Jackson v. District of Columbia, 254 F.3d 262, 269 (D.C. Cir. 2001)); see also Butler v. Suffolk Cty., 289 F.R.D. 80, 97 (E.D.N.Y. 2013) (finding that "whether the purported class members have exhausted their administrative remedies is irrelevant to the class certification analysis" where the class representatives have satisfied the PLRA exhaustion requirement); Scott v. Clarke, 64 F. Supp. 3d 813, 832 n.10 (W.D. Va. 2014) (concluding that the efforts of the named

plaintiffs and several other class members, who fully exhausted their prison medical grievances, "easily support[ed] a finding of PLRA exhaustion on behalf of the entire class").

We agree with the Eleventh Circuit's reasoning in <u>Chandler</u> and we conclude that, if any of the named Plaintiffs, Chimenti, Leyva, and Maldonado, have satisfied the PLRA's administrative exhaustion requirement, the exhaustion requirement is satisfied for all of the absent class members through vicarious exhaustion. <u>See</u> <u>Chandler</u>, 379 F.3d at 1287. As we discussed above, Chimenti, Leyva, and Maldonado all filed grievances with respect to the DOC's refusal to treat them with DAAs. The DOC contends that Leyva did not fully exhaust his administrative remedies in accordance with the PLRA before this suit was filed. However, the DOC Defendants do not suggest that either Chimenti or Maldonado has failed to satisfy the PLRA's exhaustion requirement. Consequently, we conclude that the PLRA's exhaustion requirement is satisfied through vicarious exhaustion and that the class is not limited to the seven prisoners with HCV who have personally exhausted their administrative remedies with respect to treatment with DAAs.

The DOC Defendants have submitted evidence that, as of September, 2017, the DOC held 4968 inmates who have chronic HCV and had not been treated with DAAs. (Wenhold Decl. ¶¶ 15-17.) We conclude that a class of 4968 inmates is sufficiently "'numerous that joinder of all members is impracticable,'" <u>In re Cmty. Bank</u>, 622 F.3d at 291 (quoting Fed. R. Civ. P. 23(a)(1)), and that the proposed class thus satisfies the numerosity requirement, <u>Modafinil</u>, 837 F.3d at 249-50 (quotation and citation omitted).

2.  <u>Commonality</u>

Commonality requires "'a plaintiff to show that 'there are questions of law or fact common to the class.'" <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 349 (2011) (quoting Fed.

R. Civ. P. 23(a)(2)).  Consequently, Plaintiffs' claims "must depend upon a common contention . . . [and] [t]hat common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Id.  "Rule 23(a)(2)'s commonality requirement 'does not require identical claims or facts among class member[s].'"  Marcus, 687 F.3d at 597 (alteration in original) (quoting Chiang v. Veneman, 385 F.3d 256, 265 (3d Cir. 2004), abrog. on other grounds by Hydrogen Peroxide, 552 F.3d at 318 n.18).  "'For purposes of Rule 23(a)(2), even a single common question will do.'"  Id. (quoting Dukes, 564 U.S. at 359; and citing In re Schering Plough Corp. ERISA Litig., 589 F.3d 585, 597 (3d Cir. 2009)).

Plaintiffs assert that the following two questions of fact are both central to their claims and common to all of the members of the proposed class:

1.   Whether the treatment regimens utilizing the DAA drugs are the proper, necessary, and standard course of treatment in the medical community; and

2.   Whether denial of treatment regimens utilizing the DAA drugs to the Proposed Class will cause injury to the class members, including unnecessary pain and suffering, chronic illness, and death.

(Pls.' Mem. at 13.)  Plaintiffs also maintain that this case presents a common question of law, i.e., "whether the DOC's current Hepatitis C Protocol violates the Eighth Amendment to the U.S. Constitution and Article I § 13 of the Pennsylvania Constitution in denying thousands of inmates necessary medical care."  (Id. at 14.)  Moreover, the injunctive relief that Plaintiffs seek on behalf of the class involves changing the DOC's policies with regard to treatment of all inmates with chronic HCV.

Plaintiffs' claims for injunctive relief on behalf of the putative class are based on Defendants' policy regarding the treatment of inmates with chronic HCV. Thus, in connection with their Eighth Amendment and Pennsylvania constitution claims, "all class members share the common question of whether the [DOC] Defendants' policy or custom of withholding treatment with DAA drugs from individuals who have been or will be diagnosed with chronic HCV constitutes deliberate indifference to a serious medical need." Postawko v. Missouri Dep't of Corr., Civ. A. No. 16-4219, 2017 WL 3185155, at *7 (W.D. Mo. July 26, 2017) (finding that element of commonality is satisfied in class action asserting 8th Amendment claim against the Missouri Department of Corrections because "all class members share the common question of whether the Defendants' policy or custom of withholding treatment with DAA drugs from individuals who have been or will be diagnosed with chronic HCV constitutes deliberate indifference to a serious medical need") (appeal docketed Sept. 19, 2017). See also Graham v. Parker, Civ. A. No. 16-1954, 2017 WL 1737871, at *1, *4 (M.D. Tenn. May 4, 2017) (finding that element of commonality is met in class action challenging the constitutionality of "the State of Tennessee's policies and procedures for inmates with Hepatitis C" where the proposed class is made up of all inmates with Hepatitis C infections and Plaintiffs challenge "the official policies and practices applicable to all inmates with Hepatitis C"); Stafford v. Carter, Civ. A. No. 17-0289, 2018 WL 1140388, at *5-6 (S.D. Ind. Mar. 2, 2018) (concluding that the commonality requirement is satisfied in class action challenging the constitutionality of the Indiana Department of Corrections' treatment of prisoners who suffer from chronic HCV where the Defendants' policies regarding the treatment of HCV formed the basis of the common questions of fact and law). Moreover,

11

the relief Plaintiffs seek on behalf of the putative class is an injunction changing the DOC's Hepatitis C Protocol in a manner that will affect all DOC inmates with HCV. <u>See Hoffer v. Jones</u>, 323 F.R.D. 694, 697-98 (N.D. Fla. 2017) (concluding that plaintiffs satisfied the commonality requirement in class action challenging the constitutionality of medical care provided by Florida Department of Corrections to inmates with HCV where there were common questions involving the appropriate standard of care for persons with chronic HCV and whether a failure to meet that standard violates the Eighth Amendment, and the relief sought with respect to the class was "limited to changing Defendant's policies and practices"). We conclude, accordingly, that the commonality requirement is met in this case.

3.     <u>Typicality</u>

"The concepts of typicality and commonality are closely related and often tend to merge." <u>Marcus</u>, 687 F.3d at 597 (citing <u>Baby Neal v. Casey</u>, 43 F.3d 48, 56 (3d Cir. 1994)). "Typicality, however, derives its independent legal significance from its ability to 'screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present.'" <u>Id.</u> at 598 (quoting 7A Charles Alan Wright et al., <u>Federal Practice and Procedure</u> § 1764 (3d ed. 2005)). In order to "determine whether a plaintiff is markedly different from the class as a whole, we consider the attributes of the plaintiff, the class as a whole, and the similarity between the plaintiff and the class." <u>Id.</u> (citing <u>Schering Plough</u>, 589 F.3d at 597). In making our determination, we consider the following three factors:

> "(1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be

subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class."

Id. (quoting Schering Plough, 589 F.3d at 599). However, "[i]f a plaintiff's claim arises from the same event, practice or course of conduct that gives rises to the claims of the class members, factual differences will not render that claim atypical if it is based on the same legal theory as the claims of the class." Id. (citing Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 923 (3d Cir. 1992)). Indeed, the Third Circuit has "set a 'low threshold' for typicality." In re Nat'l Football League, 821 F.3d at 428 (quoting Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 183 (3d Cir. 2001)). "'Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct.'" Id. (quoting In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 311 (3d Cir. 1998)).

Plaintiffs contend that the typicality requirement is met in this case because the claims of Chimenti, Leyva, and Maldonado arise from the same policy as the claims of the members of the putative class, namely the DOC's customs and policies regarding the treatment of HCV. Specifically, they assert that all three of the named Plaintiffs suffer from chronic HCV and are presently, or have been, denied treatment with DAAs pursuant to the DOC's policies. Plaintiffs rely on Postawko, in which the court found that the typicality requirement was met because the claims of the named plaintiffs and the class they sought to represent all arose from the Missouri Department of Corrections' policies for treating inmates with chronic HCV, including their policy of denying treatment with DAAs to certain inmates based on the severity of their disease. Postawko, 2017 WL 3185155, at *11. The Postawko court found that the named plaintiffs'

claims that those policies violated their Eighth Amendment rights were "identical to the claims that could be raised by any member of the class."  Id.  The Postawko court further found that "all putative class members share a common injury of having these policies applied to them and as a result, suffering a significant risk of harm" and, therefore, the named plaintiffs were typical "because they, too, are exposed to the same risk.  Like the remainder of the class, they are HCV-positive inmates to which the alleged policy has been applied and who have not been treated with DAA drugs."  Id. (citing Alpern v. UtiliCorp. United, Inc., 84 F.3d 1525, 1540 (8th Cir. 1996)); see also Graham, 2017 WL 1737871, at *5 (concluding that "Plaintiffs' claims are typical of the claims of the class because they are seeking declaratory, injunctive class-wide relief only that may benefit the entire class").

The DOC Defendants argue, however, that Chimenti, Leyva, and Maldonado are not typical of the class they seek to represent because they are subject to unique defenses. Specifically, the DOC Defendants argue that Chimenti is not a typical plaintiff because he has received treatment with DAAs and has brought individual claims against Defendants for medical malpractice.  The DOC Defendants also argue that Leyva is not a typical plaintiff because he is subject to the defense that he failed to exhaust his administrative remedies prior to filing suit. Finally, the DOC Defendants argue that Maldonado is not typical because he is subject to the defense that his claims are moot because he is no longer incarcerated by the DOC.

a.    Chimenti

Plaintiffs request certification of a class of individuals who seek injunctive relief.  As we discussed above, Plaintiffs seek an injunction that will require Defendants to do the following:

(a) formulate and implement a Hepatitis C treatment policy that meets the community standards of care for patients with Hepatitis C, (b) that members of the Class be treated with medically necessary and the appropriate direct-acting

14

> antiviral drugs based on individual medical testing and medical evaluation regarding each individual's Hepatitis C status, and (c) that members of the class receive ongoing monitoring and medical care per the standard of care for their individual level of liver fibrosis and cirrhosis, including but not limited to appropriate access to and evaluation by a hepatologist and assessment regarding their need for partial or full liver transplant.

(1st Am. Compl. ¶ 98.)  Chimenti has already received treatment with DAAs and, accordingly, no longer personally needs the second of the three items in the requested injunction.  (PSAF ¶ 232; DRPCAF ¶ 232.)  However, there is no basis on the record before us upon which we could determine that Chimenti has no interest in requiring the DOC Defendants to formulate and implement a policy for the treatment of Hepatitis C that meets community standards of care or that he no longer needs monitoring and medical care for Cirrhosis or liver fibrosis.  Furthermore, Chimenti's claims for monetary damages pursuant to § 1983 and his medical malpractice claims are based on the same basic facts as the claims for injunctive relief brought on behalf of the class pursuant to § 1983 and the Pennsylvania Constitution, i.e., Defendants' failure to develop a policy to treat all inmates who have chronic HCV in accordance with community standards, which involves the use of DAAs.  We conclude that the factual differences between Chimenti and the members of the putative class are not pronounced and that Chimenti satisfies the "low threshold" for typicality in this case, In re Nat'l Football League, 821 F.3d at 428 (quotation omitted), since his claims for monetary damages arise from the same policy and practice as the class's claim for injunctive relief.  We further conclude, accordingly, that Plaintiffs have satisfied the typicality requirement as to Chimenti.

b.      Leyva

The DOC Defendants contend that Leyva is not typical because he is subject to the defense that he failed to exhaust his administrative remedies in accordance with the PLRA prior

15

to filing the instant lawsuit.  Specifically, the DOC Defendants argue that Leyva did not exhaust his administrative remedies prior to filing suit because the DOC's Secretary's Office of Inmate Grievances and Appeals did not issue a decision at the third level on Leyva's grievance until September 8, 2015, nearly three months after this action was initiated on June 12, 2015.[4]  "If exhaustion is incomplete when an inmate files suit, dismissal is mandatory."  Turner v. Sec'y Pa. Dep't of Corr., 683 F. App'x 180, 182 n.1 (3d Cir. 2017) (citing Porter v. Nussle, 534 U.S. 516, 524 (2002); and Nyhuis v. Reno, 204 F.3d 65, 77 n.12 (3d Cir. 2000)).  Moreover, "[a]n inmate cannot cure non-compliance with [the PLRA] by exhausting remedies after filing his complaint."  Id. (citation omitted).

Leyva filed two grievances regarding the DOC's failure to treat his HCV with DAAs. The first was filed on January 13, 2015 and upheld on January 15, 2015.  (See Pls.' Resp. to Mot. for Summ. J., Ex. V at 2-3.[5])  However, even though Leyva's appeal was upheld, he did not receive treatment with DAAs, and he filed a second grievance on April 7, 2015.  (See id. at 5.) Leyva's second grievance was denied on April 17, 2015 and he appealed the denial of that grievance on April 25, 2015.  (Id. at 7-8.)  He filed his third level appeal on May 13, 2015, which was denied by the Secretary's Office of Inmate Grievances and Appeals on September 8, 2015.

---

[4] The DOC Defendants briefly refer to this argument in their Brief in Opposition to Renewed Motion to Class Certification, but do not discuss it in detail.  The DOC Defendants explain the basis of this argument in their Brief in Support of their Motion for Summary Judgment.  Since the Motion for Summary Judgment also forms part of the record before us, we have referred to that document to gain an understanding of the basis of their argument.

[5] Plaintiffs' Reply to the DOC's Answer to their Motion for Class Certification cross-references their discussion of this issue in their Response to the Motion for Summary Judgment, so we have considered the argument Plaintiffs make in their Summary Judgment Response and the evidence that they have submitted in connection with that Response.

(Id. at 10, 19.)  We therefore find that Leyva did not exhaust his second grievance regarding treatment of his HCV with DAAs prior to the filing of the instant lawsuit on June 12, 2015.

Consequently, Leyva is subject to the defense that he did not exhaust his administrative remedies prior to bringing suit.  This defense, however, is not unique to Leyva, as the DOC Defendants have asserted that it applies to nearly all members of the putative class.  Moreover, we have determined that vicarious exhaustion applies in this case.  See Chandler, 379 F.3d at 1287.  Since there is no question that Chimenti and Maldonado have properly exhausted their administrative remedies pursuant to the PLRA, the defense of failure to exhaust is not "likely to become a major focus of [this] litigation."  Marcus, 687 F.3d at 598 (quotation omitted). Consequently, we conclude that Leyva's failure to fully exhaust his administrative remedies with respect to his second grievance prior to filing suit does not destroy his typicality in this case.  We further conclude, accordingly, that Plaintiffs have satisfied the typicality requirement as to Leyva.

### c.    Maldonado

The DOC Defendants argue that Maldonado is not a typical plaintiff because he has been released from the custody of the DOC and his claim is now moot.[6]  Maldonado was paroled on May 15, 2017.  (DOC Defs.' Mot. for Summ. J. Ex. H at 2.)  Plaintiffs filed their initial Motion for Class Certification on June 12, 2015 and their Renewed Motion for Class Certification on October 2, 2017.  (See Docket Nos. 2, 94.)  The Supreme Court has held that "an action brought

---

[6] This is another argument that the DOC Defendants only briefly mention in their Brief in Opposition to Renewed Motion to Class Certification and discuss more extensively in their Motion for Summary Judgment.  See n.4, supra.

on behalf of a class does not become moot upon expiration of the named plaintiff's substantive claim." United States Parole Comm'n v. Geraghty, 445 U.S. 388, 404 (1980). Consequently, even if Maldonado's personal claim on the merits is now moot, because he is no longer in the custody of the DOC, "'he retains a "personal stake" in obtaining class certification sufficient to assure that Art. III values are not undermined.'" Williams v. Sec'y Pa. Dep't of Corr., 447 F. App'x 399, 403 (3d Cir. 2011) (quoting Geraghty, 445 U.S. at 404). Thus, "so long as a plaintiff files a motion to certify a class when he still has a live claim, the mooting of that claim while the motion is pending precludes the court from reaching the merits but does not preclude it from deciding the certification motion." Gayle v. Warden Monmouth Cty. Corr. Inst., 838 F.3d 297, 305 (3d Cir. 2016) (citing Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124, 135 (3d Cir. 2000); and Geraghty, 445 U.S. at 397). As the Third Circuit has explained, "a plaintiff's claim that he should represent the class is one that is 'presented . . . in a concrete factual setting and [with] self-interested parties vigorously advocating opposing positions,' and such a claim 'remains as a concrete, sharply presented issue' even if the plaintiff's individual claims expire." Id. at 305-06 (alterations in original) (quoting Geraghty, 445 U.S. at 403-04). Moreover, "Geraghty's relation-back doctrine encompasses successive, substantially similar motions to certify unless and until certification has been finally resolved on Rule 23 grounds. Id. at 307. We conclude that this "relation back" doctrine applies to Maldonado even though he was paroled prior to the filing of Plaintiffs' Renewed Class Certification Motion because the first Motion for Class Certification was not decided on the merits, but was withdrawn by agreement of the parties on August 31, 2015. (See August 31, 2015 Stipulation and Order, Docket No. 21.) Since Maldonado was in the custody of the DOC at the time the original Motion for Class Certification was filed, we conclude that, notwithstanding his subsequent parole, he has "a 'personal stake' in

obtaining class certification sufficient to assure that Art. III values are not undermined," Williams, 447 F. App'x at 403 (quotation omitted), and his claim for class certification is not moot. Plaintiffs have, therefore, satisfied the typicality requirement as to Maldonado. For the above stated reasons, we conclude that the typicality requirement is met as to all three named Plaintiffs in this case.

4. Adequacy of representation

"Rule 23(a)(4) requires class representatives to 'fairly and adequately protect the interests of the class.'" In re Nat'l Football League, 821 F.3d at 428 (quoting Fed. R. Civ. P. 23(a)(4)). This requirement "tests the qualifications of class counsel and the class representatives. It also aims to root out conflicts of interest within the class to ensure that all class members are fairly represented in the negotiations." Id. With respect to class counsel, "the adequacy requirement assures that counsel possesses adequate experience, will vigorously prosecute the action, and will act at arm's length from the defendant." In re Cmty. Bank of N. Virginia Mortg. Lending Practices Litig., 795 F.3d 380, 389 (3d Cir. 2015) (citation omitted). We have reviewed the biographies of Plaintiffs' counsel that were submitted in connection with the instant Motion and we conclude that class counsel possess more than adequate experience in both representing prisoners and prosecuting class actions. Moreover, class counsel's representation of Plaintiffs over the more than two years that this case has been ongoing shows that they will vigorously prosecute this action and act at arm's length from Defendants. We further conclude that Plaintiffs' counsel are clearly qualified to represent the putative class in this action.

With respect to the class representatives, "'the linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class.'" Id. at 393 (quoting Dewey v. Volkswagen Aktiengesellschaft, 681 F.3d 170, 183 (3d

19

Cir. 2012).  The DOC Defendants argue that the named Plaintiffs will not be adequate representatives for the same reasons that their claims are not typical of the claims of the putative class.  We have already rejected these arguments.  We conclude that the interests of the named Plaintiffs are sufficiently aligned with the interests of the putative class that the named Plaintiffs will be adequate representatives.  Accordingly, we further conclude that Plaintiffs have satisfied the adequacy of representation requirement.

      B.    Rule 23(b)(2)

Plaintiffs seek certification of the class pursuant to Rule 23(b)(2), which provides that we may certify a class action if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  "The Third Circuit has held that Rule 23(b)(2) 'is almost automatically satisfied in actions primarily seeking injunctive relief' from systemic violations of basic rights."  P.V. ex rel. Valentin v. Sch. Dist. of Philadelphia, 289 F.R.D. 227, 235 (E.D. Pa. 2013) (quoting Baby Neal, 43 F.3d at 58, 64; and citing Weiss v. York Hosp., 745 F.2d 786, 811 (3d Cir. 1984)).  As the Third Circuit has explained, "the injunctive class provision was designed specifically for civil rights cases seeking broad declaratory or injunctive relief for a numerous and often unascertainable or amorphous class of persons."  Baby Neal, 43 F.3d at 59 (quotation omitted).  "What is important for purposes of satisfying Rule 23(b)(2) is that the relief sought by the named plaintiffs benefits the entire class."  P.V., 289 F.R.D. at 236 (citing Baby Neal, 43 F.3d at 59).

The First Amended Complaint alleges that the DOC's Hepatitis C Protocol "creates a rationing system for the treatment of inmates with" DAAs, resulting in the denial of treatment with DAAs "to over 98% of inmates with Chronic Hepatitis C, in direct conflict with community

health standards." (1st Am. Compl. ¶¶ 29-30.)  Plaintiffs seek injunctive relief on behalf of the class that would require the DOC to implement a new Hepatitis C treatment policy that meets community health standard and results in the treatment of patients with medically necessary and appropriate DAAs.  (Id. ¶ 98.)

We conclude that the class satisfies Rule 23(b)(2) because the DOC's Hepatitis C Protocol applies to all members of the class and the requested injunctive relief would provide relief to all class members.  See Postawko, 2017 WL 3185155, at *13 (finding that class of individuals in the custody of the Missouri Department of Corrections who have been diagnosed with chronic HCV and have not been provided treatment with DAAs satisfied Rule 23(b)(2) because the Missouri Department of Corrections had a policy of refusing to consider DAA treatment for an inmate who did not have sufficiently advanced symptoms of chronic HCV and the injunctive relief sought by the class would require defendants to formulate a new policy in accordance with the current standard of care).  See also Hoffer, 323 F.R.D. at 699 (concluding that "certification under Rule 23(b)(2) is appropriate because a single injunction or declaratory judgment would provide relief to each member of the proposed class.  Specifically, if this Court enters an injunction forcing Defendant to change FDC's policies and practices with respect to HCV treatment, then each member of the proposed class will be able to enjoy those changes."); Stafford, 2018 WL 1140388, at *8 (concluding that proposed class of inmates of the Indiana Department of Corrections diagnosed with chronic HCV satisfied the requirements for certification pursuant to Rule 23(b)(2) "[b]ecause this action seeks injunctive relief to prevent future allegedly illegal deprivations of civil rights" (quotation and citation omitted)).

## IV.    CONCLUSION

For the foregoing reasons, we conclude that Plaintiffs have satisfied their burden of "establishing each element of Rule 23 by a preponderance of the evidence." <u>Marcus</u>, 687 F.3d at 591. Accordingly, we certify the following class for the purpose of seeking injunctive relief pursuant to Rule 23(b)(2): all persons who are currently incarcerated in a Pennsylvania Department of Corrections facility with a diagnosed condition of Chronic Hepatitis C, and who have at least twelve (12) weeks or more remaining to serve on their sentences, and who have a life expectancy of over one year. An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova

_____

John R. Padova, J.